224 S.W. 92
St. Louis Court of Appeals, Missouri.

GIESKE
v.
REDEMEYER.

No. 16102.
|
June 29, 1920.

**Synopsis**
Appeal from St. Louis Circuit Court; John W. Calhoun, Judge.

"Not to be officially published."

Suit by Benno C. Gieske against William H. Redemeyer. Judgment for plaintiff, and defendant appeals. Affirmed.

West Headnotes (15)

[1] **Appeal and Error** Necessity of timely objection

In absence of timely objection a party cannot on appeal complain of rulings on evidence.

[2] **Appeal and Error** Objections to evidence in general

Statements, "I object to that," "I move that be stricken out," are no objections at all, and are insufficient to preserve for review the propriety of the admission of evidence.

1 Case that cites this headnote

[3] **Appeal and Error** Admission of Evidence

There was no prejudicial error in permitting a party to identify an exhibit which was not admissible in evidence, where its contents were not divulged to the jury.

1 Case that cites this headnote

[4] **Appeal and Error** Admissions, declarations, and hearsay

In an action for damages for assault, admission in evidence of an exclamation of plaintiff's wife, "Oh, he hit Ben!" was not prejudicial, where, under the evidence, there was no question but that plaintiff was hit, the main and only issue in the case being as to who was the aggressor.

[5] **Appeal and Error** Documentary evidence

In an action for damages for an assault, defendant cannot complain that an X-ray photograph introduced by plaintiff was unintelligible and showed no injury to plaintiff, since its admission could certainly not have done defendant any harm.

[6] **Assault and Battery** Character and physical condition of parties

In an action for damages for assault and battery, where issue was who was the aggressor, evidence that plaintiff's brother was a man of a violent disposition and character was no evidence tending to prove that plaintiff was a man of like character.

[7] **Assault and Battery** Punitive or Exemplary Damages

Where an assault is committed maliciously, the assaulted party may be allowed punitive damages.

[8] **Assault and Battery** Punitive or Exemplary Damages

An assault made intentionally, without just cause or excuse, was a "malicious assault," justifying punitive damages.

[9] **Assault and Battery** Punitive or Exemplary Damages

**Assault and Battery** Amount awarded

A verdict of $500 compensatory and $500 punitive damages was not excessive, in an action for damages for malicious assault and battery, to one whose nose was broken and who lost a considerable quantity of blood, had his face in a bandage for about a month, and two years after the assault still had severe pains in his head and a thickening of the tissue in the nose, which prevented him from breathing freely, a condition which would remain permanent unless removed by an operation.

[10]  **Assault and Battery**  Defenses and mitigating circumstances in general

An instruction for plaintiff in an action for damages for assault and battery, which required the jury to find that the plaintiff did not strike or injure the defendant, or attempt to strike or injure the defendant, or threaten to strike or injure the defendant, and that the acts of the defendant were not done in protecting himself, held to sufficiently take into account the question as to whether the plaintiff was the aggressor and whether the defendant acted in self-defense.

1 Case that cites this headnote

[11]  **Assault and Battery**  Damages

An instruction in an action for damages was not bad because it covered both the question of actual and punitive damages, the jury being plainly told that before they could assess damages by way of punishment they must find that the act of defendant was done willfully, intentionally, and maliciously.

[12]  **Assault and Battery**  Damages

In an action for damages for assault and battery, where defendant offered an instruction to the effect that the jury, before they could assess punitive damages, must find that the injury was wantonly inflicted without any circumstances of excuse or palliation, court did not err in modifying the instruction by inserting the word "maliciously" in place of "wantonly."

[13]  **Evidence**  Particular acts, statements, transactions, or events

An exclamation made at the time of an assault, "Oh, he hit Ben!" would be competent as a part of the res gestae if it was a spontaneous cry of a person other than plaintiff's wife, in an action by the assaulted person for damages.

1 Case that cites this headnote

[14]  **Evidence**  Statements by persons since deceased

In an action for damages for assault and battery, a written statement made by plaintiff's physician, who was dead at the time of the trial, was not admissible in evidence.

[15]  **Witnesses**  Nature of Evidence or Testimony

In an action by an assaulted person for damages, an exclamation of the wife, made at the time, which would have been competent as a part of the res gestae if uttered by any other person, was not admissible.

**Attorneys and Law Firms**

 *93  Foster H. Brown and Alphonso Howe, both of St. Louis, for appellant.

Sanders, Forgey & Verdier and Earl M. Pirkey, all of St. Louis, for respondent.

**Opinion**

BIGGS, C.

This suit for damages for personal injuries is based upon an alleged willful and malicious assault claimed to have been committed upon plaintiff by defendant on June 28, 1915.

Plaintiff charges that on that day the defendant did willfully, intentionally, wrongfully, unlawfully, and maliciously beat, strike, and assault plaintiff, whereby plaintiff's nose and face were bruised and made sore; that his nose and the parts

thereof were broken and crushed; that he suffered great loss of blood, and was greatly humiliated, and caused to sustain nervous injuries and shock; that the passages of his nose are permanently clogged and partly closed, and the bones and tissues thereof are permanently thickened and enlarged, and his said nose is permanently affected with pain, all to his damage in the sum of $2,500.

It is further alleged that the said acts of defendant were willful, intentional, wrongful, unlawful and malicious, and therefore plaintiff asks damages by way of punishment in a like sum of $2,500.

The answer was a general denial, coupled with a plea that plaintiff was the aggressor, and that defendant acted only in self–defense.

After a trial before a jury there was a verdict and judgment for the plaintiff for $500 compensatory damages and $500 punitive damages, making a total verdict and judgment of $1,000, from which judgment the defendant has duly perfected an appeal to this court.

In view of the errors assigned it will be unnecessary to state the entire evidence in the record. Suffice it to say, that the evidence of plaintiff and his witnesses tended to prove that on the day charged defendant, accompanied by one Quinn, went to the plaintiff's residence, in the city of St. Louis, for the purpose of having plaintiff testify for defendant in a suit then pending in behalf of defendant against the city of St. Louis; that upon the plaintiff informing the defendant that he knew nothing about the case, and could not aid the defendant as a witness, the defendant thereupon assaulted plaintiff without **\*94** just cause or excuse, causing the injuries complained of.

The errors specified consist in the admission of certain evidence; prejudicial misconduct on the part of plaintiff's counsel in getting before the jury a statement of a deceased doctor concerning plaintiff's injuries; the giving of improper instructions on behalf of plaintiff; error in submitting the question of exemplary damages to the jury; wrongfully modifying defendant's instruction on the question of punitive damages; error in refusing to permit defendant's counsel in his argument to the jury to make reference to certain facts in the case; and, lastly, that the damages awarded are excessive.

The evidence complained of consisted of that of one of plaintiff's witnesses, who testified to an exclamation she heard made at the time of the assault; and it appeared by another witness that this exclamation was made by the plaintiff's wife, who was inside of plaintiff's house, the assault taking place in plaintiff's front yard. The evidence consisted of an exclamation made at the time of the assault by plaintiff's wife, saying, "Oh, he hit Ben!" or, "My God, they hit Ben!" (meaning plaintiff).

[1] If the exclamation had been made by one other than the plaintiff's wife, it would have been clearly competent under the circumstances as being part of the res gestæ, as it was a spontaneous cry, made at the very time of the assault and at the place of the assault, and would therefore be admissible. State v. Kaiser, 124 Mo. 667, 28 S. W. 182.

[2] [3] [4] [5] Of course plaintiff's wife was not a competent witness in behalf of the plaintiff, and her exclamations made at the time should not be received in evidence. However, we rule that the admission of the evidence in this particular case did not constitute reversible error, for the following reasons: First, timely objection was not made by the defendant to the admission of the evidence, as it was first testified to by the witness without objection, and an objection was only made when the statement was repeated by the witness; second, furthermore the objection was not in proper form, inasmuch as defendant's counsel simply said after the testimony was given, "I ask that that be stricken out;" third, it was not prejudicial for the further reason that, under the evidence, there was no question but that plaintiff was hit in the encounter. In fact, defendant admitted striking and pushing the plaintiff, and attempted to justify his acts by showing that plaintiff was the aggressor, and that he acted in self–defense. The question presented was whether the plaintiff or the defendant was the aggressor. That was the main and only real issue in the case, and all of the evidence shows beyond controversy that the plaintiff received a blow at the time which resulted in his injuries.

[6] Complaint is made in admitting in evidence an X–ray photograph of the plaintiff's face, on the ground that the evidence failed to show that the photograph truly represented the object it is claimed to represent. This alleged error is clearly without merit, as the maker of the photograph identified it, and testified that it was an X–ray of the forepart of the plaintiff's face. Defendant says that the X–ray plate was unintelligible and showed no injury to plaintiff's nose. If such were the case, its admission could certainly not be said to have done the defendant any harm.

[7] [8] The plaintiff was treated by Dr. Pollman, who died prior to the trial. The plaintiff offered a written statement made by Dr. Pollman concerning the plaintiff's injuries. The court allowed the plaintiff to identify the statement, but

refused to admit it in evidence. This ruling was proper on the part of the lower court, as the statement, whatever it was, was clearly not admissible; but the defendant complains because the court permitted the plaintiff to identify it and exhibit it in court, although its contents was not divulged to the jury. There could be no prejudicial error involved in the matter, as the statement was not permitted to be read to the jury or its contents referred to, and the action of the court in merely permitting the plaintiff to identify the statement could not be said to be in any way prejudicial to the defendant's rights.

Defendant specifies error in the giving, on behalf of plaintiff, of the following instruction:
"The court instructs the jury that if they find from the evidence that on June 28, 1915, the defendant, in the city of St. Louis, Missouri, at the residence of plaintiff on Sacramento avenue, did there willfully, intentionally, and maliciously pull and jerk the plaintiff and violently strike him on the nose with his fist, and that thereby plaintiff sustained physical injuries mentioned in the evidence, and that plaintiff did not strike or injure the defendant, or attempt to strike or injure the defendant, or threaten to strike or injure the defendant, and that such acts of defendant were not done in protecting himself, then the plaintiff is entitled to recover such damages, not exceeding $2,500, as the jury may find from the evidence will be a fair pecuniary compensation to him for said injuries; and in determining the amount of the same the jury should take into consideration the nature, character, and extent of said injuries, the physical pain, if any, and mental anguish, if any, suffered by him and directly caused by said injuries, also the amount, if any, shown by the evidence to have been expended by plaintiff for necessary medical attention in treating said injuries to the reasonable value thereof and not exceeding ten dollars; and the jury may, if from all the evidence they think it proper, award further damages by way of punishment for such wrongful acts, if the jury find from the evidence such acts were committed, **\*95** such as the jury may believe will be fit punishment to defendant for such acts, if any, not exceeding $2,500, but the total verdict cannot exceed $5,000.

By the term 'maliciously' is not meant spite or ill will, but the intentional doing of a wrongful act without just cause or excuse.

If the jury, under the evidence and instructions of the court, find for the plaintiff for both actual and punitive damages, they should state in their verdict separately the amount awarded for the actual damages and the amount awarded as punitive damages, and assess the total in one sum."

[9] The complaint made against the instruction is that it covers the whole case, but fails to take into account the defenses set up by the defendant, namely, that the defendant acted upon just cause and excuse.

It will be noted that the instruction requires the jury to find that the plaintiff did not strike or injure the defendant, or attempt to strike or injure the defendant, or threaten to strike or injure the defendant, and that the acts of the defendant were not done in protecting himself. This we think clearly took into account the question as to whether the plaintiff was the aggressor and whether the defendant acted in self–defense, and these were the excuses that the defendant, both by his pleading and proof, contended for.

[10] It is further asserted by the defendant that the instruction is bad because it covers both the question of actual and punitive damages in one instruction. We see no objection to this, as the jury were plainly told that before they could assess damages by way of punishment they must find that the acts of the defendant were done willfully, intentionally, and maliciously.

The defendant further complains of the court's action in not permitting defendant's counsel to refer to certain evidence in his argument to the jury. The evidence referred to was first brought into the case by the defendant himself, and consisted of the fact that the plaintiff's brother had been sentenced to the penitentiary for a period of 10 years for killing another. It seems that the defendant had interceded for this brother of the plaintiff, and attempted to have him paroled, and the evidence was brought into the case by the defendant by way of a statement made by the defendant to the plaintiff at the time of the assault, and as being the reason why the plaintiff should now be a favorable witness for the defendant in his suit against the city. Defendant's statement was to the effect that plaintiff's brother had killed a man for a dollar and a quarter. The plaintiff, in rebuttal, was permitted to testify that the offense was committed by his brother in the defense of his mother.

[11] In his argument to the jury defendant's counsel stated that the plaintiff's brother went to the penitentiary for killing a man for a dollar and a quarter, evidently with the idea of showing that the plaintiff in the case was a man of violent disposition and was the aggressor in the difficulty. The court, upon objections made to the argument, stopped counsel, and charged the jury that the plaintiff was not responsible for his brother's acts, and that the jury should disregard the

statement of defendant's counsel. The question as to whether the plaintiff's brother was convicted of a crime, and, if so, whether rightly convicted, had no proper part in the trial of this cause. Even had the evidence conclusively shown that the plaintiff's brother was a man of violent disposition and character, we could not and would not say that this was any evidence tending to prove that the plaintiff was a man of like character. We agree with the statement of the lower court that plaintiff was not responsible for the acts of his brother, and such statement made to the jury was proper, and could not be said to be erroneous in any way. We rule the point against the defendant.

[12] [13] [14] Complaint is further made of the action of the court in modifying one of defendant's instructions by striking out the word "wantonly," and inserting in its place the word "maliciously," in referring to the character of assault alleged to have been committed upon the plaintiff, in order to permit punitive damages. The instruction as offered by the defendant required the jury, before they could assess punitive damages, to find that the injury was wantonly inflicted, without any circumstances of excuse or palliation. The court modified the instruction by inserting the word "maliciously" in place of the word "wantonly." The point made is clearly without merit. If the assault committed by the defendant was maliciously done, then clearly, under the law, the case could call for punitive damages. The plaintiff's evidence in the case, as heretofore stated, tended to prove that the assault made upon the plaintiff by the defendant was intentionally done, without just cause or excuse. That being true, it follows that the assault was malicious and unlawful, and could form the basis for a verdict and judgment for punitive damages.

[15] As to the question of excessive verdict of $500 compensatory and $500 as punitive damages, plaintiff's evidence tended to prove that the defendant pulled him down from off of his steps and struck him with his right hand, breaking his nose, and causing him to be unconscious for several seconds; that he lost a considerable quantity of blood; that one of the bones of his nose protruded through the flesh and skin; that he had his face in a bandage for about a month; that at the end of that time the pain left his nose, but since the nose healed he has severe pains **\*96** in his head, and that as a result of the break there is a thickening of the tissue in the nose, which prevents him from breathing freely; that this condition will remain permanent, unless removed by an operation. The pains in plaintiff's head and the condition of his nose existed at the time of the trial, which was some two years after the injuries. We hold that the amount of the award is by no means excessive.

We think the cause fairly tried upon proper instructions, and that the judgment should be affirmed.

PER CURIAM.

The foregoing opinion of BIGGS, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

REYNOLDS, P. J., and ALLEN and BECKER, JJ., concur.

**All Citations**

224 S.W. 92