IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANN ALTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25-cv-00017-SEP |
| | ) | |
| SAMUEL ALTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S COUNTERCLAIMS**

COMES NOW Plaintiff, Ann Altman, by and through her attorneys, Mahoney Law Firm, LLC, and respectfully submits this Memorandum of Law in Support of her Motion to Dismiss and/or Strike Defendant's Counterclaims. For the reasons to follow, Defendant's Counterclaims should be dismissed. In the alternative, Plaintiff requests that the Court strike certain allegations and prayers for relief within Defendant's Counterclaim.

**RELEVANT FACTS**

Plaintiff's Complaint sets forth allegations of childhood sexual abuse at the hands of her brother, Defendant, Sam Altman, from the time Ann Altman ("Annie") was approximately three years old to eleven or twelve years old. (Compl. at ¶¶ 5-11). The timing of Plaintiff filing her Complaint coincided with the looming statute of limitations deadline (i.e., her thirty-first birthday) by which to allege childhood sexual abuse claims without forever waiving her claims. Plaintiff merely pursued a lawful cause of action for childhood sexual abuse within the time authorized by Missouri law seeking financial compensation for the damage she suffered arising from Sam Altman's conduct.

In response to Plaintiff's Complaint, Defendant filed a Counterclaim alleging abuse of process and defamation claims, claiming Annie only filed her lawsuit to pressure Sam Altman for "unrestricted financial support" (Counterclaim at ¶¶12-13), rather than simply seeking justice for the roughly eight years of childhood sexual abuse she endured as a very young child. While the law does not support Sam Altman's Counterclaims, as outlined below, the facts also tell a different story.

Annie had been receiving regular payments from her late father's Trust for months preceding her lawsuit against Defendant. Sam Altman was not the Personal Representative of their late father's estate nor the appointed Trustee for their late father's Trust. (*See, In the Estate of Jerold D. Altman*, Case No. 18SL-PR01960, situated in the Circuit Court of St. Louis County, Missouri, Probate Division). Likewise, Ann Altman currently receives payments from her late father's Trust, which is managed by a corporate Trustee. These facts clash with Sam Altman's false allegation that he and other family members currently provide Annie with monthly financial support through their late father's estate and create little incentive for Annie to file a lawsuit for childhood sexual abuse just to achieve "more monthly financial support" when she is already receiving it. (Counterclaim at ¶¶7; 12-13).

While Missouri law addresses motive with respect to abuse of process claims, it matters little here, as Plaintiff has merely employed the judicial process to accomplish an end intended by law and which she is entitled to pursue and has made truthful statements of fact. For the reasons that follow, Defendant's Counterclaims fail as a matter of law and should be dismissed.

## **LEGAL STANDARD**

This Court should grant a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), when the allegations of a counterclaim fail to plead facts to state a claim plausible on its face. *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; however, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 557. A complaint "must contain facts with enough specificity to raise a right to relief above the speculative level." *Couzens v. Donohoe*, 854 F.3d 508, 515 (8th Cir. 2017) (applying *Twombly* standard to defamation claim).

Where a court, upon consideration of a Rule 12 motion, can infer no more than a "mere possibility of misconduct," the complaint must be dismissed. *Iqbal*, 556 U.S. at 679. When it is clear from the claim that there is some insuperable bar to relief, a court should grant a Rule 12(b)(6) motion. *Krentz v. Robinson*, 228 F.3d 897, 905 (8th Cir. 2000). A district court is also "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). Here, this governing pleading standard requires dismissal of Defendant's Counterclaims against the Plaintiff.

## ARGUMENT

### A. Defendant's Abuse of Process Claim Fails as a Matter of Law.

To establish an abuse of process claim, one must show "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*,

---

[1] Unless otherwise noted, all internal quotation marks and citations are omitted from case citations.

585 S.W.3d 269, 277 (Mo. 2019). An improper use cannot be inferred from an improper purpose. *Id*. In fact, if a party, such as Annie Altman, simply pursues an action to its legal conclusion, an abuse of process does not occur. *Id*. Therefore, liability for abuse of process arises *only* in very rare cases in which the allegedly improper action was instituted "to obtain a result which the process was not intended by law to effect." *Id*. (emphasis added).

Defendant incorrectly alleges that Annie's "improper purpose" in the filing of her lawsuit is itself an abuse of process. However, one of the requisite elements to support an abuse of process claim is that Plaintiff did something ***after the initiation of her lawsuit*** that was somehow abusive, or illegal. *Wells v. Orthwein*, 670 S.W.2d 529, 532 (Mo. App. 1984) (emphasis added). Plaintiff has done no such thing, and Defendant has not alleged any conduct whatsoever ***after*** the filing of her present suit. Instead, Defendant simply asserts, erroneously, that Annie "had an improper purpose in filing her lawsuit," based on alleged financial frustrations prior the filing of Plaintiff's claims in an attempt to undermine Annie's credibility in the public. (Counterclaim at ¶28). Defendant also fails to realize that any claimed ulterior motive for the pursuit of Annie's claims is not relevant and does not constitute an abuse of process. *Krakover v. Mazur,* 48 F.3d 341, 344 (8th Cir.1995). Moreover, "[e]ven a suit filed with bad intentions will not support an action for abuse of process. *Ulrich Med. USA, Inc. v. Dickman,* No. 4:15-CV-686-RWS, 2015 WL 5886109, at *3 (E.D. Mo. Oct. 8, 2015) (Sippel, J.) citing *Moffett v. Commerce Trust Co.,* 283 S.W.2d 591, 599 (Mo.1955).

In *Moffett v. Commerce Trust Company,* 283 S.W.2d 591, 599 (Mo.1955), the court held:

"Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the [plaintiff] has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions…The ulterior motive may be inferred from the wrongful use made by the process, but the use itself may not be inferred from the motive. *Id.* at 599. (Quoting from Prosser on Torts, 892, Sec. 98.)".

Here, Defendant fails to identify "any act or threat not authorized by the process" of bringing her lawsuit, as none exist. *See, Id*. What Defendant has actually done is attempt to present a malicious prosecution claim under the guise of an abuse of process claim, which is improper under Missouri law. In *Bigfoot on the Strip v. Winchester*, the defendant filed a counterclaim for abuse of process that the federal district court dismissed on summary judgment. 2019 WL 4144318, No. 18-3155-CV-S-BP (Aug. 30, 2019) (Phillips, J.). The district court's analysis of an abuse of process claim in *Winchester* is enlightening in the context of the present case:

> "The first element requires evidence 'that the process was used to accomplish an unlawful end or that it compelled the defendants to do something they could not be legally compelled to do. Evil motive alone is insufficient; 'no liability attaches where a party has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil a motive he possessed at the time.
>
> Significantly, the merits of a claim asserted are irrelevant to a subsequent abuse of process claim. This is true even if the party employing the process to assert the initial claim knows that the effort lacks merit. 'If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse even if the plaintiff…knowingly brought suit upon an unfounded claim. This is the key distinction between a claim for abuse of process and a claim for malicious prosecution. '***The difference between a claim for malicious prosecution and abuse of process is not the commencement of an action without justification but the misuse of process for an end other than that which it was designed to accomplish.***'"

*Winchester*, 2019 WL 4144318, *3 (emphasis added).

Defendant's primary allegation of his Counterclaims is that Plaintiff made a false allegation of childhood sexual abuse against Sam Altman, i.e., there is no basis for Plaintiff's Complaint. This is a malicious prosecution claim that is insufficient to establish an abuse of process claim and cannot be brought by Defendant at this time. As the district court pointed out in *Winchester,* if a defendant were allowed to file a counterclaim for abuse of process where they believed Plaintiff had no basis for their claim, coupled with their theory about a possible improper purpose, "the

difference between abuse of process and malicious prosecution would be eliminated." *Winchester*, 2019 WL 4144318, *4.

Plaintiff has merely employed the judicial process to accomplish an end intended by law and which she is entitled to pursue. Even if Plaintiff had bad intentions in filing her lawsuit, which Plaintiff denies, Missouri law makes clear that it will not support an action for abuse of process. Accordingly, the Court should dismiss Count I of Defendant's Counterclaim.

### B. **Defendant's Defamation Claim Fails as a Matter of Law.**

Defendant has failed to state a claim that Annie defamed him. "In a defamation action, a party must establish: '(1) publication, (2) of a defamatory statement, (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) damages the plaintiff's reputation.'" *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1050-51 (8th Cir. 2012) (quoting *Missouri ex rel. BP Prods. N. Am. Inc. v. Ross*, 163 S.W.3d 922, 929 (Mo. 2005)). "'[T]ruth is a complete defense to a suit for defamation.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990) (quoting Restatement (Second) of Torts § 566, Cmnt. a (1977); *Thomson v. Kansas City Star Co.*, 387 S.W.2d 493, 498 (Mo. 1965) ("no authority need be cited for the proposition that truth is a defense to alleged defamation"). Here, Defendant fails to establish the requisite elements to withstand dismissal, particularly that any statement published was defamatory, false, and specifically identifies the Defendant, or was published with the requisite degree of fault.

Courts frequently recognize that in defamation actions there is particular value in resolving deficient claims at the pleading stage to avoid prolonged litigation through discovery and trial, which could interfere with constitutionally protected freedoms guaranteed by the First Amendment. *See, e.g.*, *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 264 (S.D.N.Y. 2013); *see also Palin v. N.Y. Times Co.*, 264 F. Supp. 3d 527, 533 (S.D.N.Y. 2017) (describing applying 12(b)(6)

standards to defamation actions to protect against "meritless litigation"). Whether language is defamatory and actionable is a question of law, rather than fact. *Pape v. Reither*, 918 S.W.2d 376, 379 (Mo. App. E.D. 1996). "In order for the words to be actionable, they must refer to the plaintiff and to be understood by others as referring to the plaintiff." *May v. Greater Kansas City Dental Soc.,* 863 S.W.2d 941, 944 (Mo.Ct.App.1993); *Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.,* 354 S.W.3d 234, 240 (Mo.Ct.App.2011) (citing *Sterling v. Rust Communications,* 113 S.W.3d 279, 283 (Mo.Ct.App.2003) ("In order to be defamatory, a statement must be clear as to the person addressed.")).

To determine whether a statement is defamatory requires the Court to engage in a two-part analysis. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 314 (Mo. banc 1993). "First, in determining whether a statement of fact is defamatory, the words must be stripped of any pleaded innuendo and construed in their most innocent sense." *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 155 (Mo. Ct. App. 2005); *Langworthy v. Pulitzer Pub. Co*., 368 S.W.2d 385, 388 (Mo. 1963). Second, those words must be considered in the context, "giving them their plain and ordinarily understood meaning." *Nazeri*, 860 S.W.2d at 311, citing *Otto v. Kansas City Star Co*., 368 S.W.2d 494, 497 (Mo. 1963).

Here, Defendant cannot satisfy either prong of *Nazeri*. Defendant does not plead any facts which would show Annie's statements are false, cast disparagements on Defendant's reputation, or deterred third persons from associating with him, as Annie does not mention Defendant by name in any of the alleged posts or publications outside of a 2021 post that makes vague generalizations. Moreover, "[s]tatements of opinion are protected by an absolute privilege which is rooted in the First Amendment to the United States Constitution." *Pape*, 918 S.W.2d at380 (quoting *Diez v. Pearson*, 834 S.W.2d 250, 253 (Mo. App. E.D. 1992)). Therefore, Annie's published work of

poetry is entirely protected, as are any other statements that could be construed as opinion. *See, Totta v. CCSB Financial Corp.*, 695 S.W.3d 197, 204 (Mo. App. Ct. 2024) (terms that constitute "imaginative expression" or "rhetorical hyperbole" are not generally defamatory).

Moreover, "even statements which ostensibly accuse another of criminal conduct may constitute statements of opinion, since – when viewed in context – such statements may be merely an assertion 'that the defendant disagrees with the plaintiff's conduct and used pejorative statements or vituperative language to indicate his or her disapproval." *Id.* at 205. Defendant's Counterclaims acknowledge that the readers would have to jump through numerous hoops to understand not only that Annie was referring to Sam Altman, but that she was also referring to childhood sexual abuse or accusing him of specific criminal conduct, as her statements are vague and general in nature, lacking context. When viewed in context at the time the statements were made, the majority of the statements alleged to have been made by Annie in Count II of Defendant's Counterclaims were expressions of opinion that cannot form the basis of a defamation claim.

Defendant, Sam Altman, is also a well-known public figure with 3.6 million followers on X and a global presence in the field of artificial intelligence. Therefore, the requisite degree of fault required for Annie's published statements would be actual malice, i.e., knowledge of the statements' falsity or reckless disregard for their truth. In this case, nothing Annie stated is false and she stands by the truth of her allegations relating to the traumatic abuse she endured as a young girl. "To prove actual malice the plaintiff must show the statement was made with knowledge that it was false or with reckless disregard for the truth at a time when the defendant had serious doubts as to whether it was true." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 821 (8th Cir. 2010); *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000) ("'Actual malice' is defined

as a false statement made 'with knowledge that it was false, or in reckless disregard for whether it was true or false at a time when defendant had serious doubt as to whether it was true.'"). Defendant fails to make any such allegations, thus deeming dismissal appropriate.

"Moreover, "[i]n the law of defamation it is well settled that defamatory matter uttered or published in the due course of judicial proceedings by any of the participants, whether judge, party, attorney or witness, is absolutely privileged and will not support a civil action for defamation when connected with, or relevant or material to the cause at hand or subject of inquiry, although made maliciously and with knowledge of its falsity." *Wright v. Truman Rd. Enters., Inc.,* 443 S.W.2d 13, 15 (Mo. App. 1969). Thus, any statements published or asserted within Annie's childhood sexual abuse case are not actionable, nor can they be considered in connection with prior social media posts or published poetry to identify Defendant. In fact, stripped of innuendo, and taken in their plainest form, Annie's posts and publications discuss her truth and her experiences without naming Defendant, and in their most innocent sense do not give rise to a claim of defamation.

Accordingly, for the foregoing reasons, the Court should dismiss Count II of Defendant's Counterclaim in its entirety.

C. **In the Alternative, the Court Should Strike Certain Defamation Allegations from Count II of Defendant's Counterclaims.**

If the Court is not persuaded that dismissal of Defendant's Counterclaims is warranted at this time, Plaintiff respectfully requests that the Court strike all allegations of defamation that fail to satisfy the requisite elements to plead a defamation claim, including those allegations that fail to specifically identify Defendant, Sam Altman, by name. (Counterclaim at ¶¶16-24).

Pursuant to Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." As noted above, to bring a defamation claim under Missouri law, Defendant must show publication of a defamatory

statement, which *identifies the plaintiff*. See, *Ruzicka Elec. and Sons, Inc. v. Int'l Bhd. of Elec. Workers Local 1, AFL-CIO*, 427 F.3d 511, 522 (8th Cir. 2005), *citing Sterling v. Rust Commc'ns*, 113 S.W.3d 279, 281 (Mo.App. 2003) (emphasis added). To survive a Motion to Dismiss or Strike, Defendant must state facts supporting a claim of relief that rises above the speculative level. *Twombly*, 550 U.S. at 556. While the Court must accept the counterclaim's factual allegations as true, those factual allegations must "raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id*. In his Counterclaim, Defendant identified several posts or publications that do not name Defendant, Sam Altman, by name. (*See e.g.*, Counterclaim at ¶¶16-24). Regardless of discovery on this matter, the statements fail on their face to allege the necessary elements of defamation by failing to identify Defendant and/or falling under protected speech or opinion.

"In order to be defamatory, a statement must be clear as to the person addressed." *Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 240 (Mo. Ct. App. 2011); *See also, Pape*, 918 S.W.2d at 382 ("It is well established that for a statement to be defamatory, there can be no confusion as to the identity of the party defamed."). Statements about a matter related to Defendant, but not actually about the Defendant himself, cannot support a defamation claim. *See, e.g., Saffaf v. Ally Fin., Inc.,* No. 4:20-CV-276-SPM, 2021 WL 3089039, at *5 (E.D. Mo. July 22, 2021) (Padmore Mensah, J.). Accordingly, as more particularly set forth below, the Court should strike Paragraphs 16-24 of Defendant's Counterclaim as they do not identify Sam Altman by name.

Defendant also makes vague allegations of defamation, which he admits do not reference him by name, but instead require inferences or a web of posts and speculation to allegedly identify him. (Counterclaim at ¶20) ("Although Sam Altman is not mentioned explicitly by name in each

separate publication…"). For example, in Paragraphs 17-19 of Defendant's Counterclaim, he cites Twitter/X posts that do not mention Defendant, nor do they name him in any way. These alleged statements and posts fundamentally fail to identify Defendant and therefore do not defame him under Missouri law. *See also Pape*, 918 S.W.2d at 382 ("It is well established that for a statement to be defamatory, there can be no confusion as to the identity of the party defamed."). It is for this reason that Paragraphs 17-20 of Defendant's Counterclaim should be stricken in their entirety as they cannot meet the requisite elements for asserting a cause of action for defamation.

Additionally, in Paragraph 21, Defendant cites Annie's published book of poetry as a basis for defamation. Not only is this creative opinion work written by Annie that constitutes protected imaginative expression, but it, again, does not mention Defendant by name. *See, Totta,* 695 S.W.3d at 204. In fact, the alleged statements fundamentally fail to identify Sam Altman. Recognizing this fatal flaw, Defendant attempts to argue that the public was aware of Annie's allegations and readers "would have understood this to be a reference to Sam Altman." (Counterclaim at ¶21). This is pure speculation and does not satisfy the necessary elements for a defamation claim in Missouri. Consequently, Paragraph 21 of Defendant's Counterclaim should be stricken in its entirety.

Similarly, Defendant's allegation based upon an August 2024 Twitter/X post about Annie's residential burglary is also insufficient to establish defamation. In Paragraph 22, Defendant alleges that "Ann Altman posted on X that her "long term home was broken into one month after these tweets," and then included a screenshot of her prior November 2021 post. However, nothing in the August 2024 Twitter/X post specifically mentions Defendant, beyond the 2021 photo of her prior tweet, and she is stating a fact – that her home was broken into one month after the tweets. Defendant is simply grasping at straws to include the 2021 Tweet, as that is the only allegation

where Annie named the Defendant by name. Accordingly, Paragraph 22 of Defendant's Counterclaim should also be stricken in its entirety.

Defendant also alleges certain TikTok videos posted by Plaintiff defamed Defendant, despite never mentioning him by name. In Paragraphs 23 and 24, Defendant fails to identify any instance where the Defendant's name was mentioned. Defendant's allegations make vague references to the "little sibling" and "older siblings," but fail to identify anyone by name. (Counterclaim at ¶¶23-24). Defendant again speculates and attempts to argue that the public understood Annie's videos to be a reference to Sam Altman, but this argument fails as a matter of law. *See, e.g.*, *Sterling,* 113 S.W.3d at 283 ("In order to be defamatory, a statement must be clear as to the person addressed."); *Pape*, 918 S.W.2d at 382 ("It is well established that for a statement to be defamatory, there can be no confusion as to the identity of the party defamed."). In actuality, this could be any of Annie's older siblings as the word "siblings" is plural and she was the youngest in her family. It is for these reasons that Paragraphs 23 and 24 of Defendant's Counterclaim should be stricken in their entirety as deficient under the law.

In sum, the statements Defendant has alleged are defamatory fail to meet the required elements for defamation under the law. Accordingly, Plaintiff respectfully requests the Court strike Paragraphs 16-24 from Defendant's Counterclaim.

**D. Defendant's Prayer for Relief for Attorneys' Fees Should be Stricken.**

Finally, Defendant's Prayer for Relief requesting attorney's fees and costs should be stricken. Generally, Missouri courts follow the American Rule with regard to fees and costs in litigation. *See, e.g, Sierra Club v. City of Little Rock,* 351 F.3d 840, 844-45 (8th Cir. 2003) ("[u]nder the American Rule, parties to a lawsuit generally foot their own attorney fees absent explicit statutory authority to the contrary.")*; St. Louis Effort for AIDS v. Lindley-Myers*, 877 F.3d 1069,

1071 (8th Cir. 2017) (American rule applies whether a party wins or loses). ; *Lee v. Investors Title Co.*, 241 S.W.3d 366, 367 (Mo.App.E.D.2007) ("In Missouri, litigants generally bear the expense of their own attorneys' fees as provided in the American Rule."). Attorneys' fees are typically only recoverable "when a statute specifically authorizes recovery or when attorneys' fees are provided for by contract." *Essex Contracting, Inc. v. Jefferson Cnty.,* 277 S.W.3d 647, 657 (Mo. banc 2009).

Defendant has brought common law claims for abuse of process and defamation. There is no statute or contract that would authorize an award of attorneys' fees to Defendant in this matter, even if his claims had merit, which they do not. Therefore, the Court should strike from Defendant's Counterclaim Prayer for Relief, paragraph "3. That Sam Altman be awarded any costs, attorney fees, or other recoverable expenses," as Defendant's Prayer for Relief does not comply with applicable law. (Counterclaim at p. 19).

## SUMMARY

Defendant's Counterclaims are a tactic that is becoming more and more common in sexual assault and childhood sexual abuse cases where abusers attempt to intimidate and prevent survivors from coming forward and bringing just claims for their intended purpose. Sam Altman's Counterclaims are essentially a global denial of Annie's claims, alleging she has falsely accused him, so that he can improperly use the judicial process to manipulate the facts before the public. Counterclaims such as this should not be allowed where they are neither well taken, nor supported by applicable law, as is evident here. Even if Defendant's claims were to survive dismissal, the only way he prevails is for a jury to decide in his favor that he did not commit the heinous acts that Annie states he committed during her childhood – the same as if he had simply denied the allegations.

Missouri law is clear that Defendant cannot establish an abuse of process claim against Plaintiff and on its face, Defendant has really alleged a malicious prosecution action that is improper at this juncture. Similarly, Defendant cannot meet the required elements for a defamation claim against Plaintiff.

For these reasons, and those stated in the foregoing sections, Plaintiff, Ann Altman, respectfully requests that this Court grant her Motion to Dismiss Defendant's Counterclaims in its entirety and enter an order dismissing Counts I and Count II of Defendant's Counterclaim with prejudice, or in the alternative, strike portions of Count II in the manner set forth above, including that portion of Defendant's Prayer for Relief seeking attorneys' fees.

Respectfully submitted,

By: __/s/ Ryan J. Mahoney__
Ryan J. Mahoney #61489
Leigh M. Perica, #68780
MAHONEY LAW FIRM, LLC
2220 S. State Route 157, Suite 250
Glen Carbon, IL  62034
Telephone:     618-961-8288
Facsimile:      618-961-8289
ryan@themahoneylawfirm.com
leigh@themahoneylawfirm.com
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

I, Ryan J. Mahoney, hereby certify that on April 23, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

      /s/ *Ryan J. Mahoney*