**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ANN ALTMAN, | ) |
| | ) |
| Plaintiff/ | ) |
| Counterclaim-Defendant | ) |
| | ) |
| v. | )    Case No.: 4:25-cv-00017-SEP |
| | ) |
| SAMUEL ALTMAN, | ) |
| | ) |
| Defendant/ | |
| Counterclaim-Plaintiff | |

**<u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS</u>**
**<u>AND/OR STRIKE DEFENDANT'S COUNTERCLAIMS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENT ......................................................................................................2

        A.      Plaintiff's Challenge to the Abuse-of-Process Counterclaim Lacks Merit..............2

        B.      Plaintiff's Challenges to the Defamation Claim Fails ...............................6

                1.      Plaintiff's Motion Does Not Apply the Correct Law...................................6

                2.      Plaintiff's Motion to Dismiss the Defamation Counterclaim Is
                        Meritless................................................................................6

                3.      Plaintiff's Request in the Alternative to Strike Certain Defamation
                        Allegations Should Be Rejected ...........................................11

        C.      Defendant Agrees Not to Pursue Attorney Fees and Costs ...................12

III.    CONCLUSION..................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aurora World, Inc. v. Ty Inc.*,
    No. CV 09-08463 MMM (Ex), 2010 WL 11506546 (C.D. Cal. Aug. 24, 2010) ....................7

*Bigfoot on the Strip v. Winchester*,
    No. 18-3155-CV-S-BP, 2019 WL 4144318 (W.D. Mo. Aug. 30, 2019)..................................5

*Church of Scientology of Cal. v. Flynn*,
    744 F.2d 694 (9th Cir. 1984) ..............................................................................................7, 8

*Cochran v. NYP Holdings, Inc.*,
    58 F. Supp. 2d 1113 (C.D. Cal. 1998) .................................................................................7, 9

*Fuqua Homes, Inc. v. Beattie*,
    388 F.3d 618 (8th Cir. 2004) ...................................................................................................6

*Glasser v. Berzner*,
    No. SACV 21-661 JVS (DFMx), 2021 WL 4352809 (C.D. Cal. June 23, 2021) ...................9

*Jiang v. Porter*,
    No. 4:15-CV-1008 (CEJ), 2015 WL 9459943 (E.D. Mo. Dec. 28, 2015)................................8

*Nitcher v. Does*,
    956 F.2d 796 (8th Cir. 1992) ...................................................................................................5

*Norse v. Henry Holt & Co.*,
    991 F.2d 563 (9th Cir. 1993) ...................................................................................................7

*Process Controls Int'l, Inc. v. Emerson Process Mgmt.*,
    753 F. Supp. 2d 912 (E.D. Mo. 2010)......................................................................................8

*Saffaf v. Ally Financial, Inc.*,
    No. 4:20-CV-276-SPM, 2021 WL 3089039 (E.D. Mo. July 22, 2021)..................................12

*Turntine v. Peterson*,
    959 F.3d 873 (8th Cir. 2020) ...................................................................................................9

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990) .................................................................................................7

*Ventura v. Kyle*,
    825 F.3d 876 (8th Cir. 2016) .................................................................................................11

*Versatile Helicopters v. City of Columbus,*
    No. 2:10–cv–1110, 2014 WL 656460 (S.D. Ohio Feb. 19, 2014)...........................................6

*West v. West,*
    694 F.3d 904 (7th Cir. 2012) ......................................................................................5

**STATE CASES**

*Brown v. P.N. Hirsch & Co. Stores, Inc.,*
    661 S.W.2d 587 (Mo. Ct. App. 1983)......................................................................11

*Clinch v. Heartland Health,*
    187 S.W.3d 10 (Mo. Ct. App. 2006)........................................................................10

*Elmore v. Owens-Illinois, Inc.,*
    673 S.W.2d 434 (Mo. 1984) .......................................................................................6

*Forsher v. Bugliosi,*
    26 Cal.3d 792 (1980) ..................................................................................................7

*Good Gov't Grp. of Seal Beach, Inc. v. Superior Court,*
    22 Cal. 3d 672 (1978) .................................................................................................9

*Henry v. Halliburton,*
    690 S.W.2d 775 (Mo. 1985) .......................................................................................7

*John Doe 2 v. Superior Court,*
    1 Cal. App. 5th 1300 (2016) ...............................................................................6, 7, 10

*May v. Greater Kansas City Dental Soc'y,*
    863 S.W.2d 941 (Mo. Ct. App. 1993)........................................................................8

*McMann v. Wadler,*
    189 Cal. App. 2d 124 (1961) ....................................................................................11

*McNair v. Worldwide Church of God,*
    197 Cal. App. 3d 363 (1987) ....................................................................................10

*Moffett v. Commerce Trust Co,*
    283 S.W.2d 591 (Mo. 1955) ...................................................................................3, 4

*Montgomery GMC Trucks, Inc. v. Nunn,*
    657 S.W.2d 334 (Mo. Ct. App. 1983)........................................................................2

*Owen v. Owen,*
    642 S.W.2d 410 (Mo. Ct. App. 1982)........................................................................4

*Reed v. Gallagher*,
  248 Cal. App. 4th 841 (2016) ...................................................9

*Ritterbusch v. Holt*,
  789 S.W.2d 491 (Mo. 1990) ...................................................4

*Schafly v. Cori*,
  647 S.W.3d 570 (Mo. 2022) ......................................... *passim*

*Smith v. Human Soc'y of United States*,
  519 S.W.3d 789 (Mo. 2017) ...................................................9

*Sterling v. Rust Communications*,
  113 S.W.3d 279 (Mo. Ct. App. 2003)...................................12

*Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*,
  585 S.W.3d 269 (Mo. 2019) .............................................2, 3

*Vedovi v. Watson & Taylor*,
  104 Cal. App. 80 (1930) ...................................................8

*Warner v. Kansas City Star Co.*,
  726 S.W.2d 384 (Mo. Ct. App. 1987).................................11

*Weller v. Am. Broad. Co.*,
  232 Cal. App. 3d 991 (1991) ...........................................9, 10

*White v. Scarritt*,
  111 S.W.2d 18 (Mo. 1937) ...................................................4

## STATE STATUTES

Cal. Civ. Code § 47......................................................................6

Cal. Civ. Code § 47.1(a) .............................................................7

## TREATISES

5 Witkin, Summary of California Law § 623 (2024)...................7

Restatement (Second) of Torts § 559 (1977)...............................7

Restatement (Second) of Torts § 564 cmt.b..............................11

Restatement (Second) of Torts § 617...........................................7

I.        **INTRODUCTION**

Plaintiff Ann Altman's allegations that Defendant Sam Altman sexually abused her are false.  Her lawsuit bringing these allegations was filed in order to pressure her family to accede to her demands for unrestricted financial support.  And her pre-lawsuit public statements making these false allegations are defamatory.  Through his counterclaims, Mr. Altman seeks no monetary damages, but rather a verdict that Plaintiff's allegations are untrue and that her lawsuit was brought for an improper purpose.  Those counterclaims are adequately alleged, and Plaintiff's scattershot arguments to the contrary are without merit.

With respect to the abuse-of-process counterclaim, Plaintiff's contention that Mr. Altman must show some improper act beyond the filing of a lawsuit is wrong.  The Missouri Supreme Court has made clear that a party commits abuse of process by filing a lawsuit in order to pressure the victim to do something that is beyond the scope of the suit and would not be achievable directly through the litigation.  *See, e.g.*, *Schafly v. Cori*, 647 S.W.3d 570 (Mo. 2022).  That is precisely what Mr. Altman alleges here:  Plaintiff filed this suit to extort Mr. Altman and the Altman family into providing her with future support without the compassionate restrictions that the Altman family has insisted upon to protect Plaintiff.  *See* Counterclaims, ECF No. 18 ("Counterclaims") ¶¶ 1, 12, 14, 28.  That is beyond the scope of her lawsuit for sexual abuse damages, and not something that she can obtain from a favorable judgment.  Under *Schafly* and clearly established Missouri law, this is sufficient to ground an abuse-of-process claim.

As for Plaintiff's challenge to Mr. Altman's defamation counterclaim, her motion asserts a barrage of arguments that are clearly wrong, particularly at the pleading stage.  She relies heavily on the fact that some of the published statements at issue do not mention Mr. Altman's name expressly, but that is not the test.  The question is whether it is plausible that readers would understand her statements to involve Mr. Altman, and the counterclaim alleges more than enough to clear that hurdle.  Not only did she publish some posts that expressly identify him, but other statements she made offer specific descriptions that leave no doubt that Mr. Altman is the subject of her incendiary allegations (e.g., referring to her "13 year old brother" or "an almost

1

tech billionaire"). She then argues that her false statements were mere "opinion" and not factual, but that is also incorrect. Statements that are objectively capable of proof or disproof—such as whether an individual committed sexual abuse—are not opinions under defamation law. She argues that Mr. Altman is a public figure who must allege knowledge or reckless disregard of falsity, but Mr. Altman's complaint alleged precisely that. And she argues that her statements in this litigation are privileged and will not support a defamation claim, but Mr. Altman's counterclaim does not rely on any statement she makes in this litigation for precisely that reason. These arguments should be rejected. Plaintiff's motion to dismiss and/or strike should be denied.

## II.    ARGUMENT

### A.    Plaintiff's Challenge to the Abuse-of-Process Counterclaim Lacks Merit

Plaintiff has committed abuse of process by filing this lawsuit for the improper purpose of pressuring her family into providing her with unrestricted financial support. Plaintiff's contention that the abuse-of-process counterclaim alleges only an improper motivation in the filing of her lawsuit is thus wrong. Nor does Mr. Altman rely on the lawsuit's lack of factual merit. Rather, the counterclaim alleges that Plaintiff filed her lawsuit to accomplish a goal that is beyond the scope of this proceeding: to create pressure on Mr. Altman and his family to accede to future demands for medical, financial, and housing support without conditions. Counterclaims ¶¶ 1, 12, 14, 28. The "use of a legal claim to accomplish some end not envisioned by the legal process used" is the heartland of the abuse-of-process tort. *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 278 (Mo. 2019). A claim for abuse of process lies even "when a party 'employs legal process in a manner technically correct,'" if the party seeks "an unjustifiable end or an object' that the particular process is not meant to effectuate." *Id.* (quoting *Montgomery GMC Trucks, Inc. v. Nunn*, 657 S.W.2d 334, 336 (Mo. Ct. App. 1983)).

Two recent decisions from the Missouri Supreme Court demonstrate how this rule applies, and why Mr. Altman's allegations are clearly sufficient. In *Schafly v. Cori*, the Court sustained an abuse of process claim in a family dispute involving amendments to a trust that reduced a family member's interest. 647 S.W.3d 570 (Mo. 2022). The defendant (sister) filed a

lawsuit against the trustee (brother) seeking invalidation of the trust amendments, in order to force the brother to relinquish control of trust entities and give other "items of value" to the sister which were beyond the reach of the trust suit. *Id.* at 572–73. In other words, the sister filed the suit for "unlawful collateral ends and attempted to force [her brother] to act in a manner in which he could not be legally compelled." *Id.* at 573. This was sufficient to sustain an abuse-of-process claim, the Court held, because the alleged goal of the sister's action was to "obtain results outside of the scope of process" she instituted. *Id*. at 574. The Court rejected the sister's contention—which mirrors Plaintiff's argument in this case—that the brother was solely alleging an improper motivation, and held that the filing of a lawsuit to accomplish a collateral objective constitutes an "improper use" of process. *Id.* at 574–75.

By contrast, the Missouri Supreme Court in *Clayton Terrace* reversed an abuse-of-process verdict where the challenged lawsuit's goal would have been achieved by a favorable judgment, even if the suit was motivated by bad intentions. 585 S.W.3d 269. In *Clayton Terrace*, subdivision trustees filed an action against a seller challenging her sale of a lot for failure to comply with a procedural requirement in the subdivision indentures. *Id.* at 275. The seller counterclaimed for abuse of process and showed at trial that, after her sale of the lot, the buyer had filed an application with the city zoning commission to subdivide the lot, which the trustees did not want to succeed. *Id.* The seller proved that the trustees' suit against her was actually intended to get the lot buyer to withdraw its zoning request (by creating a threat that title would be invalidated). *Id. Clayton Terrace* held the abuse-of-process claim was not actionable because the alleged goal could have been achieved by the lawsuit itself. *Id.* at 279. After all, if the trustees successfully set aside the sale through their action, "the homeowner, who no longer had a right to the property, could not proceed with the subdivision." *Schlafly*, 647 S.W.3d at 577 (summarizing rule from *Clayton Terrace*).

The seventy-year-old case that Plaintiff block-quotes from the Missouri Supreme Court, *Moffett v. Commerce Trust Co*, 283 S.W.2d 591 (Mo. 1955), does not help Plaintiff, but instead confirms how longstanding this principle is in Missouri law. "The gravamen" of an abuse-of-

3

process claim, the Court held, "is the misuse of process, *no matter how properly obtained*, for any purpose other than that which it was designed to accomplish." *Id.* at 599 (emphasis added). *Moffett* found no abuse-of-process claim because the defendant was under a legal duty, as an authorized executor of an estate, to bring the challenged action "to have the matters in issue determined." *Id.* at 596–97, 600. *Moffett* distinguished another case that the Court held *did* properly allege abuse of process, because the defendants brought "suit for the purpose of extorting money from the property owners, which they did not owe and could not have legally been compelled to pay." *Id.* at 600 (citing *White v. Scarritt*, 111 S.W.2d 18 (Mo. 1937)). *Moffett* thus illustrates why the abuse of process counterclaim is properly pled here: Mr. Altman alleges that Plaintiff brought her lawsuit for a "purpose other than that which it was designed to accomplish," namely, to pressure her family into acceding to her demands for unconditional financial support. *Id.* at 599.

There is nothing in these cases that suggests an abuse-of-process plaintiff must allege an improper act "after the initiation" of a lawsuit, as Plaintiff contends. (Pl.'s Mem. of Law in Support of Motion to Dismiss and/or Strike Def.'s Counterclaims ("Mot.") at 4, ECF No. 23. Indeed, *Schlafly* rejected that argument, holding that a plaintiff need not prove anything "more than filing and litigating a lawsuit," such as a "definite act" like "an improper demand" or "a request for inappropriate relief." 647 S.W.3d at 575. And *Schlafly* cites cases holding that abuse of process may lie when a suit is filed to achieve improper ends. *Id.* at 576 (citing cases).

As these cases show, abuse-of-process claims often involve allegations that a wrongdoer invoked legal process to *pressure* the victim to take some action that would not be achievable through the lawsuit itself. *See, e.g.*, *Ritterbusch v. Holt*, 789 S.W.2d 491, 492 (Mo. 1990) (defendant tried to extort payment of a civil claim against the plaintiff by filing a criminal complaint against him); *Owen v. Owen*, 642 S.W.2d 410, 414 (Mo. Ct. App. 1982) (family dispute where defendant brought suit against plaintiff (sister-in-law) to coerce her to settle a separate marital dissolution action on terms dictated by defendant, which were outside the scope

4

of the suit and could not be compelled by the court); *see also Nitcher v. Does*, 956 F.2d 796, 799 n.5 (8th Cir. 1992) (describing "coercion" allegations as a pattern in abuse-of-process cases).

*Bigfoot on the Strip v. Winchester*, No. 18-3155-CV-S-BP, 2019 WL 4144318 (W.D. Mo. Aug. 30, 2019), the case on which Plaintiff principally relies, actually illustrates this point. That case applied Missouri law in granting summary judgment on an abuse-of-process claim by a reporter who, when sued for defamation based on an unfriendly TripAdvisor review, came forward with "no evidence" that the defendant sued her to "exert pressure" on her husband to remove the review. *Id.* at *3. *Bigfoot* did not require some alleged improper act beyond the filing of the lawsuit. Rather, the court affirmed the rule that a lawsuit to compel the defendant to do something beyond the scope of the suit can ground an abuse-of-process claim. *Id.*

In this case, Mr. Altman alleges precisely what *Bigfoot* held was lacking. His counterclaim thus resembles the paradigmatic abuse-of-process claim involving the use of a lawsuit to pressure the victim to do something that is beyond the reach of the litigation. Specifically, the counterclaim alleges that Mr. Altman and his family have provided Plaintiff with "financial support, as well as offers to assist with medical expenses, housing, and employment." Counterclaims ¶ 1. But the Altman family has been concerned about Plaintiff's mental health, so has been "deliberate and thoughtful about the support they provide." *Id.* Plaintiff has demanded "greater and unrestricted financial assistance," which the family has refused. *Id.* Mr. Altman alleges that Plaintiff brought this lawsuit to extort Mr. Altman and the other members of her family to provide unrestricted support in the future without the compassionate conditions that her family has previously insisted upon. *Id.*; *see also id.* ¶¶ 12, 14, 28. That is "outside the scope" of Plaintiff's lawsuit for damages, *Schafly*, 647 S.W.3d at 574–75, and Mr. Altman "could not be legally compelled" to accede to those demands if Plaintiff were to win her abuse claim, *id.* at 573.[1]

---

[1] Mr. Altman also alleges that Plaintiff filed her lawsuit to embarrass him in the eyes of the public. Counterclaims ¶¶ 14, 28. Courts have accepted similar allegations as sufficient to ground of an abuse-of-process claim. *See, e.g.*, *West v. West*, 694 F.3d 904, 906 (7th Cir. 2012)

## B.    Plaintiff's Challenges to the Defamation Claim Fails

### 1.    Plaintiff's Motion Does Not Apply the Correct Law

At the outset, Plaintiff's motion to dismiss applies the wrong forum's law.  Plaintiff cites exclusively to Missouri's defamation law, *see generally* Mot. at 6–11, but Missouri's choice-of-law rules make clear that it is *California's* law that applies to Mr. Altman's defamation counterclaim.  *See Fuqua Homes, Inc. v. Beattie*, 388 F.3d 618, 621 (8th Cir. 2004).  As the Eighth Circuit explained in *Fuqua*, "the most important consideration in choosing the applicable law is the residence of the party allegedly defamed."  *Id.* at 622 (citing *Elmore v. Owens-Illinois, Inc.*, 673 S.W.2d 434, 436–37 (Mo. 1984)).  Mr. Altman is a resident of California, Counterclaims ¶ 3, and there is no allegation that he lived outside of California during the period in which he was defamed.  Accordingly, there is a "presumption" that California substantive law governs Mr. Altman's defamation counterclaim, and the Court should apply California law in evaluating Plaintiff's motion to dismiss.[2]  That said, for the reasons discussed *infra*, Plaintiff's motion to dismiss fails under either California or Missouri law, and the Court should deny it.

### 2.    Plaintiff's Motion to Dismiss the Defamation Counterclaim Is Meritless

Mr. Altman alleged that Plaintiff defamed him by making false public statements stating that Mr. Altman sexually abused her.  Those allegations are sufficient to support defamation.  "The elements of a defamation claim [in California] are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or cause special damage."  *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312 (2016) (internal quotation marks omitted).  Plaintiff does not dispute that the counterclaim adequately alleges that she made a

---

(filing suit for the purpose of "destroying [plaintiff's] reputation or distracting him from his other pursuits or simply immiserating him" can suffice for abuse of process).

[2] Because Plaintiff's motion fails to make any argument grounded in the correct governing law for Mr. Altman's defamation counterclaim, the Court has the discretion to reject the motion on that basis.  *Cf. Versatile Helicopters v. City of Columbus*, No. 2:10–cv–1110, 2014 WL 656460, at *2 (S.D. Ohio Feb. 19, 2014) (denying motion for interest award brought under the wrong state's laws).

publication that has a natural tendency to injure or cause special damage. Nor does she argue that her statements were privileged under California law.[3]  *See* Cal. Civ. Code §§ 47, 47.1.  And while she insists throughout her motion that her statements are the "truth," Mot. at 8–9, falsity is a question of fact reserved for the jury and provides no basis for dismissal.  *See* Restatement (Second) of Torts § 617 ("[T]he question of whether the defamatory imputations are true . . . is ordinarily for the jury."); *see also Aurora World, Inc. v. Ty Inc.*, No. CV 09-08463 MMM (Ex), 2010 WL 11506546, at *13 (C.D. Cal. Aug. 24, 2010).

That leaves just the third element: the existence of a defamatory statement.  A statement is defamatory if "by reasonable implication a defamatory meaning may be found in the communication." *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984) (quoting *Forsher v. Bugliosi*, 26 Cal.3d 792, 803(Cal. 1980)).  "To discern whether a statement has a defamatory meaning, it is interpreted from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made." *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1120 (C.D. Cal. 1998) (quoting *Norse v. Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993) (cleaned up)).  While "[p]ure opinions" are protected by the First Amendment and nonactionable as defamation, statements that "imply facts capable of being proved true or false" are subject to no such immunity. *Id.* (quoting *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 n.2 (9th Cir. 1990)); *John Doe 2*, 1 Cal. App. 5th at 1313.  In both California and Missouri, a statement is capable of being defamatory if it has "a tendency to injury the reputation" of the defamed person.  5 Witkin, Summary of California Law § 623 (2024); *see also Henry v. Halliburton*, 690 S.W.2d 775, 779 (Mo. 1985); Restatement (Second) of Torts § 559 (1977).

---

[3] As of 2024, California, but not Missouri, applies a limited privilege in defamation cases to statements "regarding an incident of sexual assault" that were made "without malice."  Cal. Civ. Code § 47.1(a).  Plaintiff does not argue that this qualified privilege provides a basis for dismissal, which it does not.  As discussed *infra* at 10–11, Mr. Altman has alleged that Plaintiff made her false defamatory statements *with* malice.  Accepting those allegations as true, and assuming for the sake of argument that section 47.1 applies retroactively to statements made before 2024, any limited privilege plainly would not apply.

Here, the counterclaim alleges that Plaintiff published "knowingly false statements that Sam Altman sexually abused her when she was a child."  Counterclaims ¶ 15.  Such false allegations of sexual abuse are intrinsically defamatory and actionable.  *See, e.g.*, *Jiang v. Porter*, No. 4:15-CV-1008 (CEJ), 2015 WL 9459943, at *5 (E.D. Mo. Dec. 28, 2015) (statements "falsely accusing [plaintiff] of sexually abusing a child" sufficient to state a claim for defamation).  Plaintiff's arguments that she cannot be held liable for these plainly defamatory statements are without merit.

First, Plaintiff contends that her public allegations of sexual abuse against Mr. Altman are not actionable because she "does not mention Defendant by name in any of the alleged posts or publications outside of a 2021 post."  Mot. at 7.  That is incorrect.  In both California and Missouri, "[i]t is not necessary that plaintiff should be mentioned by name if the words used in describing the person meant can be shown to have referred to him and to have been so understood."  *Vedovi v. Watson & Taylor*, 104 Cal. App. 80, 83 (1930); *see also May v. Greater Kansas City Dental Soc'y*, 863 S.W.2d 941, 945 (Mo. Ct. App. 1993) ("[I]t is not necessary that the defamatory statements refer specifically to the plaintiff by name.").  All that is required to survive a motion to dismiss is that it be plausible that a reader would reasonably understand "the defamatory words to have been directed to plaintiff."  *May*, 863 S.W.2d at 945; *see also Church of Scientology*, 744 F.2d at 697 ("It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff or if the publication points to the plaintiff by description or circumstance tending to identify him.") (cleaned up) (internal quotation marks and citation omitted).  "If some question exists as to whether the offensive words are 'of and concerning' the plaintiff, the fact dispute is for the jury" and dismissal is not appropriate. *Process Controls Int'l, Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 932 (E.D. Mo. 2010) (quoting *May*, 863 S.W.2d at 945); *see also Church of Scientology*, 744 F.2d at 697–98.

Plaintiff's contention that the challenged statements "require inferences or a web of posts and speculation to allegedly identify" Mr. Altman, Mot. at 10, is wrong.  In addition to falsely stating on Twitter that she "experienced sexual, physical emotional, verbal, financial, and

technological abuse from my biological siblings, mostly Sam Altman," Counterclaims ¶ 16, Plaintiff's social media posts and videos repeatedly refer to Mr. Altman using unmistakable identifying characteristics. For example, Plaintiff's March 14, 2023 Twitter post falsely alleges sexual abuse by her "13 year old brother" when she was "not four years old." *Id.* ¶ 17. This is an unmistakable reference to Mr. Altman, Plaintiff's only brother who is nine years older than she is. Similarly, Plaintiff's October 4, 2023 X post falsely alleges that she was abused as a "little sister," *id.* ¶ 19, her April 17, 2024 book falsely alleges abuse by "brothers," *id.* ¶ 21, and her August 20, 2024 post falsely alleges abuse by "older siblings," *id.* ¶ 23. Finally, her October 8, 2024 TikTok video falsely alleges abuse by a sibling who is "an almost tech billionaire," *id.* ¶ 24, a clear reference to Mr. Altman's position as CEO of OpenAI.

Any reader would reasonably understand that these statements refer to Mr. Altman. That is especially so considering that all these posts were made subsequent to Plaintiff's post accusing Mr. Altman *by name*. That direct accusation provides necessary context for the later posts. *See Reed v. Gallagher*, 248 Cal. App. 4th 841, 856 (2016) ("This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed.") (internal quotation marks and citation omitted). Plaintiff's argument to the contrary is spurious.

Second, Plaintiff contends that her public statements alleging sexual abuse against Mr. Altman are non-actionable statements of opinion. That too is incorrect. While the First Amendment prohibits "liability under state defamation law for statements of opinion," *Turntine v. Peterson*, 959 F.3d 873, 882 (8th Cir. 2020) (quoting *Smith v. Human Soc'y of United States*, 519 S.W.3d 789, 799 (Mo. 2017)); *see also Cochran*, 58 F. Supp. 2d at 1121, this privilege does not apply to implied or express assertions of fact that are "objectively verifiable." *Weller v. Am. Broad. Co.*, 232 Cal. App. 3d 991, 1005 (1991); *see also Turntine*, 959 F.3d at 882. Under this standard, dismissal is not appropriate "if the court concludes the statement could reasonably be construed as either fact or opinion." *Glasser v. Berzner*, No. SACV 21-661 JVS (DFMx), 2021 WL 4352809, at *3 (C.D. Cal. June 23, 2021) (quoting *Good Gov't Grp. of Seal Beach, Inc. v.*

*Superior Court*, 22 Cal. 3d 672, 680 (1978)); *see also Turntine*, 959 F.3d at 882 (dismissal improper if "a reasonable factfinder could conclude that the statement implies an assertion of objective fact") (internal quotation marks & citation omitted).

　　None of the defamatory statements identified in Mr. Altman's counterclaim even remotely resembles a statement of opinion. To the contrary, each of the statements asserts an "objective fact" as true—that Mr. Altman "pimped" Plaintiff out to her brothers, Counterclaims ¶ 21, "sexually abused" her, *id.* ¶ 20, "crawled in[to]" her "bed," *id.* ¶ 19, and "repeatedly molested and physically abused her," *id.* ¶ 24. Each statement is "objectively verifiable"—either Mr. Altman committed the acts described in Plaintiffs' posts and videos, or he did not. *Weller*, 232 Cal. App. 3d at 1005. There is no in-between, and thus, no credible argument that Plaintiff's statements are inactionable "opinions" rather than actionable statements of objective facts. *See, e.g.*, *Clinch v. Heartland Health*, 187 S.W.3d 10, 18 (Mo. Ct. App. 2006) ("Opinions . . . become facts if they can be verified."); *John Doe 2*, 1 Cal. App. 5th at 1313 ("[T]o be actionable, an allegedly defamatory statement must make an assertion of fact that is provably false."). Indeed, Plaintiff herself admits that the statements she posted and which are the subject of Mr. Altman's counterclaim "discuss her *truth*." Mot. at 9 (emphasis added).[4]

　　Third, equally meritless is Plaintiff's argument that Mr. Altman has failed to allege actual malice to support his defamation counterclaim. Mot. at 8–9. Even assuming *arguendo* that Mr. Altman is a public figure for these purposes, the counterclaim adequately alleges actual malice. To satisfy actual malice, a complaint or counterclaim must allege that the defamatory statements were published "with knowledge that [the statements were] false, or with reckless disregard of whether [they were] false or not." *McNair v. Worldwide Church of God*, 197 Cal. App. 3d 363, 376 (1987); *see also Warner v. Kansas City Star Co.*, 726 S.W.2d 384, 385 (Mo. Ct. App. 1987)

---

[4] Plaintiff makes the strawman argument that any statements she makes in litigation is absolutely protected. Mot. at 9. As Mr. Altman's counterclaim makes clear, he is not relying on any statement made in litigation for his defamation counterclaim. *See generally* Counterclaims ¶¶ 15–17. Plaintiff's voluminous social media posts provide all the context a reader needs to understand that her accusations are against Mr. Altman.

(same). Mr. Altman has alleged that "Ann Altman knew these statements were false or had serious doubts about the truth of these statements." Counterclaims ¶ 34. That is sufficient to meet the actual malice standard at the pleading stage. *See McMann v. Wadler*, 189 Cal. App. 2d 124, 129 (1961) ("The existence or nonexistence of malice is a question of fact for the jury."); *Brown v. P.N. Hirsch & Co. Stores, Inc.*, 661 S.W.2d 587, 590–91 (Mo. Ct. App. 1983) ("The question of malice or of good faith in the publishing of the defamatory material is for the jury.").

Finally, Plaintiff advances the argument that any statements she made in her "published work of poetry" are "entirely protected" under the First Amendment as inactionable statements of opinion.[5] Mot. at 7–8. That argument mistakes the *content* of a statement for the *medium* in which the statement is made. The First Amendment does not *per se* bar defamation claims based on statements made in poetry books or any other medium of written expression. A poetry book, just like any other book, is capable of being autobiographical in nature—as Plaintiff clearly intended "her truth" to be, *id.* at 9—and therefore capable of making an actionable defamatory statement of objective fact, as Plaintiff did here. *See, e.g.*, *Ventura v. Kyle*, 825 F.3d 876, 879, 890–91 (8th Cir. 2016) (remanding defamation claim for new trial where claim involved statements made in autobiographical book and trial court erred in several evidentiary rulings).

### 3.    Plaintiff's Request in the Alternative to Strike Certain Defamation Allegations Should Be Rejected

Plaintiff's motion asks in the alternative for the Court to strike any allegations that fail to mention Mr. Altman by name. Mot. at 9. As discussed above, that is not the correct legal standard. Rather, an allegation of defamation is sufficient so long as a reader would reasonably understand the statement to refer to the defamed individual. *See* Restatement (Second) of Torts § 564 cmt.b ("It is not necessary that the plaintiff be designed by name; it is enough that there is such a description of or reference to him that those who hear or read reasonably understand the

---

[5] Plaintiff does not argue or explain why her online videos and statements should be treated as inactionable opinions under the First Amendment. *See* Mot. at 7–8. It is therefore undisputed that those statements support a claim for defamation.

plaintiff to be the person intended."). As discussed *supra*, at 8–9, each of the specific paragraphs cited by Plaintiff meets this standard.

Plaintiffs' cited cases are not to the contrary. In *Saffaf v. Ally Financial, Inc.*, No. 4:20-CV-276-SPM, 2021 WL 3089039, at *5 (E.D. Mo. July 22, 2021), the statements at issue were not about the plaintiffs at all but instead about the *vehicles* that the plaintiffs had sold. Similarly, in *Sterling v. Rust Communications*, 113 S.W.3d 279, 283 (Mo. Ct. App. 2003), the statements at issue were "general statements by a real estate professional regarding the problems inherent in the business of property rental" and referred, vaguely, to "deadbeats" and "professional delinquents." Here, by contrast, each of the statements identified in Mr. Altman's counterclaim clearly identifies *Mr. Altman* in all but name. Because the statements Plaintiff wrongly seeks to strike are statements a person could reasonably understand to refer to Mr. Altman, the Court should deny Plaintiff's request.

### C.    Defendant Agrees Not to Pursue Attorney Fees and Costs

Plaintiff asks the Court to strike Mr. Altman's request for attorney fees and costs. Mot. at 12–13. As stated in Mr. Altman's prayer for relief, Mr. Altman does not want to harm his sister financially but does want a judgment in his favor that her allegations of sexual abuse are not true. Mr. Altman therefore agrees to withdraw his requests for attorney fees and costs.

### III.    CONCLUSION

Plaintiff's motion to dismiss Mr. Altman's counterclaims should be denied. Mr. Altman agrees not to seek attorney fees or costs in this action.

DATED:  May 14, 2025

HEPLERBROOM LLC

By:      /s/ *Thomas J. Magee*
           Thomas J. Magee No. 32871
           701 Market St., Suite 1400
           St. Louis, MO 63101
           314-241-6160
           314-241-6116 Fax
           tmagee@heplerbroom.com

           *Attorneys for Defendant*

MUNGER, TOLLES & OLSON LLP

By:      /s/ *Jonathan I. Kravis*
           Jonathan I. Kavis (pro hac vice)
           Xiaonan April Hu (pro hac vice)
           601 Massachusetts Ave. NW, Suite 500E
           Washington, D.C. 20001-5369
           202-220-1100
           202-220-2300 Fax

           Hailyn J. Chen (pro hac vice)
           Cordell A. Brown (pro hac vice)
           350 South Grand Ave., 50th Floor
           Los Angeles, CA 90071-3426
           213-683-9100
           213-687-3702 Fax

           Dane P. Shikman (pro hac vice)
           560 Mission St., 27th Floor
           San Francisco, CA 94105
           415-512-4000
           415-512-4077 Fax

           *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 14, 2025, the foregoing was filed electronically with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon all counsel of record.

/s/ *Thomas J. Magee*