# Exhibit 1

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Cause No. 1116-CV09480 |
| | ) | Division No. 6 |
| SCOTT ALAN BRADSHAW, | ) | |
| Defendant. | ) | |

FILED-CIRCUIT COURT
JACKSON CO. MO-KC
DIV-6
2017 FEB 28 PM 1:50

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT**

On February 27th, 2017, having waived a trial by jury, this matter was tried to the Court by agreement of the parties. The plaintiff was represented by Randall L. Rhodes, with Douthit Frets Rouse Gentile & Rhodes. The defendant was represented by Kenny Hensley, with the Hensley Law Offices. After reviewing the evidence, the testimony of the plaintiff and entertaining the argument of counsel, the Court hereby issues its Finding of Facts, Conclusions of Law and Judgment.

**Findings of Fact**

The Court adopts the following facts.

1. This Court has personal jurisdiction and subject matter jurisdiction with respect to this matter.

2. Jackson County is a proper venue for this matter.

3. Plaintiff was born on May 1st, 1980.

4. Plaintiff alleges that he was provided with intoxicants, physically abused, sexually abused, mentally abused and emotionally abused by defendant from 1992 through and including 1997. Plaintiff was a minor child for most of the claimed abuse.

5. Defendant was an adult Scoutmaster during the time period of the alleged abuse.

6. Plaintiff claims this abuse occurred before, during and after Scouting events, at defendant's home, at facilities owned and/or operated by the Boy Scouts of America and/or the Heart of America Council, Boy Scouts of America ("BSA and HOA") and at other locations. Plaintiff alleges he was sexually abused as many as 2,000 times. He alleges he was physically, mentally and emotionally abused by defendant countless times. Plaintiff alleges he was provided with intoxicants by defendant multiple times.

7. As a result of defendant's alleged misconduct (both intentional and negligent) and the misconduct of BSA and HOA, plaintiff claims that he has endured pain and suffering, mental anguish, personal injury, PTSD and other physical, mental and emotional injuries.

8. Plaintiff brought this suit against defendant, BSA and HOA in the Circuit Court of Jackson County, Missouri. A host of claims were raised in the petition, including, but not limited to claims authorized by R.S.Mo. 537.046, common law battery claims and negligence claims for, *inter alia,* failure of HOA, BSA and others to supervise and monitor defendant's interactions with plaintiff. BSA and HOA have been dismissed from the lawsuit. Defendant and plaintiff are the sole remaining parties.

9. At the time this lawsuit was filed, defendant was covered by an insurance policy issued by Liberty Mutual Insurance Company, policy number H32-248-942141-000 3. Furthermore, at the time the above referenced lawsuit was filed, BSA and HOA represented they had at least $5 million in CGL insurance coverage plus excess or umbrella coverage.

10. The parties believe that, at all pertinent times, the premiums for all policies discussed in the preceding paragraph were current and further, the policies were applicable to some or all of the claims made by plaintiff in the above referenced lawsuit.

11. Defendant, by and through his counsel, made demands on Liberty Mutual, BSA and HOA, demanding a defense and indemnity in the above-referenced lawsuit. Those demands were denied in bad faith.

12. The parties mutually agree that this matter will be tried to the bench, rather than to a jury.

13. Defendant does not object to plaintiff's evidence. The parties agree plaintiff may present evidence by report, deposition, summary or affidavit.

14. The parties agree that the following exhibits shall be admitted into evidence.

| Number | Description |
|---|---|
| 1 | Plaintiff's Eagle Scout Project Report |
| 2 | Defendant's IV File |
| 3 | Plaintiff's Counseling File |
| 4 | Twila Hindery Summary Report |
| 5 | Handwritten Letter from Plaintiff to Defendant |
| 6 | Postcards from Plaintiff to Defendant |
| 7 | Valentine's Card from Plaintiff to Defendant |
| 8 | Holiday Card from Plaintiff to Defendant |
| 9 | Handwritten Note from Plaintiff to Defendant |
| 10 | Memoir of My Best Friend |
| 11 | Social Services Report (12/22/97) |
| 12 | Chris Cobb Records |
| 13 | Timeline Prepared by Plaintiff |

| | |
|---|---|
| 14 | Letter Written by Defendant |
| 15 | KCMO Police Documents |
| 16 | Eagle Scout Ceremony Brochure |
| 17 | SW Bell Agreement |
| 18 | Million Dollar Check |
| 19 | Collection of Cards/Letters |
| 20 | Collection of Photographs |

15. Defendant denies plaintiff's claims. Otherwise, defendant asserts his rights against self-incrimination guaranteed by the Missouri and United States Constitutions. Defendant would assert his rights against self-incrimination guaranteed by the Missouri and United States Constitutions in response to every question asked by counsel or the Court.

16. The parties stipulate and agree that defendant will not seek judgment as a matter of law, file any post-trial motions or appeal the verdict of this Court.

**Conclusions of Law**

A. The Court has personal jurisdiction over the parties. The Court has subject matter jurisdiction over this dispute. Venue is proper in this Court.

B. Count I of plaintiff's Petition for Damages is predicated upon R.S.Mo. § 537.046 [2004], the Childhood Sexual Abuse Statute.

*1. As used in this section, the following terms mean:*

> *(1) **"Childhood sexual abuse"**, any act committed by the defendant against the plaintiff which act occurred when the plaintiff was under the age of eighteen years and which act would have been a violation of*

> *section 566.030, 566.040, 566.050, 566.060, 566.070, 566.080, 566.090, 566.100, 566.110, or 566.120, RSMo, or section 568.020, RSMo;*
>
> *(2)* ***"Injury"*** *or* ***"illness"****, either a physical injury or illness or a psychological injury or illness. A psychological injury or illness need not be accompanied by physical injury or illness.*
>
> *2. Any action to recover damages from injury or illness caused by childhood sexual abuse in an action brought pursuant to this section shall be commenced within ten years of the plaintiff attaining the age of twenty-one or within three years of the date the plaintiff discovers, or reasonably should have discovered, that the injury or illness was caused by childhood sexual abuse, whichever later occurs.*
>
> *3. This section shall apply to any action commenced on or after August 28, 2004, including any action which would have been barred by the application of the statute of limitation applicable prior to that date.*

R.S.Mo. § 537.046 [2004] (bold in original). There are three enumerated paragraphs in this statute. The first paragraph is definitional, the second sets the statute of limitation and the third states the claims to which the statute applies.[1] There is no approved MAI instruction for the cause of action allowed by this statute.

C. A battery consists of intended, offensive bodily contact with another person. *Duvall v. Lawrence*, 86 S.W.3d 74, 80 (Mo.App. 2002). "Contact with the body is offensive if it offends a reasonable sense of personal dignity." *J.D. v. M.F.*, 758 S.W.2d 177, 178 (Mo.App.

---

[1] Specifically, subparagraph (1) of the statute defines "childhood sexual abuse" as: *§§ 566.030* (first-degree rape); *566.040* (second-degree rape) (transferred to *566.031, RSMo Supp. 2013*); *566.060* (first-degree sodomy); *566.070* (second-degree sodomy) (transferred to *566.061, RSMo Supp. 2013*); (second-degree sexual abuse) (transferred to *566.101, RSMo Supp. 2013*); *566.100* (first-degree sexual abuse); *568.200* (incest). Sections 566.050, .080, .110 and .120 were repealed effective January 1, 1995. *1994 Mo. Laws 1135–37.*

1988). The applicable jury instruction is MAI 23.02.

*Your verdict must be for plaintiff if you believe:*

*First, defendant intentionally raped, sodomized and/or sexually abused plaintiff,*

*Second, defendant thereby caused a contact with plaintiff which was offensive to plaintiff, and*

*Third, such contact would be offensive to a reasonable person.*

D. Under Missouri law, a plaintiff is entitled to recover an amount of damages that will "fairly and reasonably" compensate them for their past and present injuries and damages. *See Graeff v. Baptist Temple of Springfield,* 576 S.W.2d 291, 309 (Mo. 1978). Actual injury or damages is not a required element of proof in a battery case. *Van Eaton v. Thon,* 764 S.W.2d 674, 676 (Mo.App. 1988). Whether or not an injury is proven, a plaintiff is at least entitled to nominal damages upon a finding that a battery occurred. *Id.*

E. A party injured by battery may also recover compensatory damages for bodily pain, humiliation, mental anguish and other injuries that occur as a necessary and natural consequence of the tortious conduct. *K.G. v. R.T.R.*, 918 S.W.2d 795, 799–800 (Mo.banc 1996); *Prange v. Prange,* 755 S.W.2d 581, 592 (Mo.App. 1987). "There is no fixed measure or standard available to the trier of fact in determining the measure of damages for pain and suffering. The measure of damages is simply that which is fair and reasonable." *Prange,* 755 S.W.2d at 592 (citations omitted).

F. Punitive damages are recoverable if a defendant's conduct is outrageous by reason of evil motive or reckless indifference to the rights of others. As intentional torts, assault and battery actions warrant submission of a claim for punitive damages to the trier of fact. *See Daggs v. St. Louis-San Francisco Ry. Co.*, 51 S.W.2d 164 (Mo.App. 1932).

G. The Litigation Reform Act of 2005 attempted to impose statutory caps on punitive awards in actions filed after its effective date. V.A.M.S. § 510.265. Section 510.265 was held unconstitutional as infringing the right to trial by jury in any common law action existing as of 1820, when the Missouri guaranty of trial by jury was adopted. *Lewellen v. Franklin*, 441 S.W.3d 136 (Mo. 2014); *see also Watts v. Lester E. Cox Medical Centers*, 376 S.W.3d 633 (Mo. 2012) (striking down limitations on noneconomic damages in medical malpractice actions). The tort of battery existed before 1820. Accordingly, § 510.265 cannot be applied to any verdict in this case.

H. The plaintiff testified that, from the age of 12 until he was an adult, he was repeatedly abused by the defendant. He alleges that this abuse included physical abuse, sexual abuse, rape and sodomy. The plaintiff's testimony is unrefuted.

I. In his answer and discovery responses, defendant denies plaintiff's claims. Otherwise, defendant asserts his rights against self-incrimination guaranteed by the Missouri and United States Constitutions. Defendant would assert his rights against self-incrimination guaranteed by the Missouri and United States Constitutions in response to every question asked by counsel or the Court.

J. The Fifth Amendment privilege against self-incrimination has long been held to be properly asserted by parties in civil cases.[2] "A witness' privilege against self-incrimination 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him

[2] *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924).

in future criminal proceedings.'"[3] "The normal rule in a criminal case is that no negative inference from the defendant's failure to testify is permitted."[4] However, "the courts have never held that a Fifth Amendment claimant *in a civil proceeding* must be shielded from all possible negative consequences that may attend his invocation of the privilege. In fact, civil claimants have been denied certain benefits and exposed to negative consequences as a result of having invoked the privilege."[5] Deciding whether to assert one's Fifth Amendment rights is a matter of personal choice.[6] A litigant making this choice must weigh "the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts . . . ."[7] Accordingly, a "party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence."[8] In the civil context, one of the potential results of such a "lack of evidence" has been described thusly: "In some cases if a party claims the privilege and does not give his or her own evidence there will be nothing to support his or her view of the case and an adverse finding or even a directed verdict or grant of summary judgment will be proper."[9] Another potential negative consequence was discussed by the United States Supreme Court in *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976), in which the court held that reliance on the Fifth Amendment in civil cases may give rise to an

---

[3] *State ex rel. Munn v. McKelvey,* 733 S.W.2d 765, 768 (Mo.banc 1987) [quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973)].

[4] *Mitchell v. United States,* 526 U.S. 314, 327–28, 119 S.Ct. 1307, 1314–15, 143 L.Ed.2d 424 (1999); *see also State v. Kinder,* 942 S.W.2d 313, 328 (Mo.banc 1996), *cert. denied,* 522 U.S. 854, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997).

[5] *In re Moses,* 792 F.Supp. 529, 536 (E.D. Mich.1992) (emphasis added); *see also Cruce v. Auto–Owners Mut. Ins. Co.,* 851 S.W.2d 10, 14 (Mo.App. 1993).

[6] *Freeman v. Kansas City Pub. Serv. Co.,* 30 S.W.2d 176, 182 (Mo.App. 1930).

[7] *Brown v. United States,* 356 U.S. 148, 155, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958).

[8] *United States v. Taylor,* 975 F.2d 402, 404 (7th Cir. 1992).

[9] 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2018 at 288 (2d ed.1994).

adverse inference against the party claiming its benefits: "[T]he prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence against them: the Amendment 'does not preclude the inference where the privilege is claimed by a *party to a civil cause*.'"[10] Moreover, this adverse inference may be drawn by the fact finder at either the summary judgment stage or at trial.[11]

An important reason for permitting the adverse inference approved in *Baxter* to be drawn in the civil context was explained in *Sparks v. Sparks*, 768 S.W.2d 563, 567 (Mo.App. en banc), *cert. denied*, 493 U.S. 957, 110 S.Ct. 372, 107 L.Ed.2d 358 (1989):

> [F]undamental fairness requires that a plaintiff be afforded some remedy lest a defendant defeat the claim by concealment. The balance inherent in our adversary system is distorted if one party to a civil action is permitted by invocation of the privilege against self-incrimination to unilaterally control full presentation to the fact finder of all of the evidence pertaining to all of the issues. Thus, whether asserted by a plaintiff or a defendant, invocation of the privilege will, in most cases, require some form of judicial response of a remedial nature to eliminate any undue advantage which might flow from the ability to conceal pertinent evidence.

Invocation of the Fifth Amendment poses substantial problems for the opposing party, who is deprived of a source of information that could conceivably be determinative at trial. Moreover, because the privilege may be initially invoked by one party during discovery and then later waived at a time when the other party can no longer secure the benefits of discovery, the potential for unfair advantage or exploitation is apparent.[12] In Missouri, it is well-settled that several judicially-sanctioned remedial responses are available to deal with these difficult issues. For example, "Missouri courts have long approved the dismissal of a claim by someone who was

---

[10] *Id.* [quoting 8 J. Wigmore, *Evidence* § 2272 at 439 (McNaughton rev. 1961)] (U.S. Supreme Court's emphasis).

[11] *Young Sik Woo v. Glantz*, 99 F.R.D. 651 *passim* (D.R.I. 1983).

[12] *Graystone Nash*, 25 F.3d at 190.

seeking affirmative relief but refused, on the basis of the Fifth Amendment, to reveal relevant information in discovery."[13] In *Hagenbuch v. Hagenbuch*, 730 S.W.2d 269, 271 (Mo.App. 1987), the Eastern District observed that this doctrine was developed not to punish the Fifth Amendment claimant, but to promote fairness and to prevent the claimant from obtaining an undue advantage. As explained by the Ninth Circuit in *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir.1969), *cert. denied*, 397 U.S. 1027, 90 S.Ct. 1273, 25 L.Ed.2d 538 (1970):

> The scales of justice would hardly remain equal in these respects, if a party can assert a claim against another and then be able to block all discovery attempts against him by asserting a Fifth Amendment privilege to any interrogation whatsoever upon his claim. If any prejudice is to come from such a situation, it must, as a matter of basic fairness in the purposes and concepts on which the right of litigation rests, be to the party asserting the claim and not to the one who has been subjected to its assertion. It is the former who has made the election to create an imbalance in the pans of the scales.

Moreover, once a civil defendant has invoked the privilege to preclude discovery, a trial court may, in the exercise of its discretion, preclude the defendant from later changing his or her position and voluntarily testifying at trial to his benefit regarding the subject matter of the discovery originally sought.[14]

K. Defendant's refusal to answer pertinent questions on Fifth Amendment grounds justifies an inference that: (i) if he had answered truthfully, the answers would have been unfavorable to him;[15] or (ii) would have corroborated testimony given by plaintiff on the subject

---

[13] *Williams v. Gary Breedlove Constr. Co.*, 950 S.W.2d 557, 561 (Mo.App. 1997) (citations omitted); *see also In re Marriage of Fellers*, 789 S.W.2d 153, 155 (Mo.App. 1990); *Geldback Transport, Inc. v. Delay*, 443 S.W.2d 120, 121 (Mo.banc 1969).

[14] *Dodson v. Dodson*, 904 S.W.2d 3, 5 (Mo.App. 1995); *State ex rel. Pulliam v. Swink*, 514 S.W.2d 559, 561 (Mo. banc 1974); *see also Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 575-77 (1st Cir. 1989); *Meyer v. Second Judicial Dist. Court*, 95 Nev. 176, 591 P.2d 259, 262 (1979).

[15] *Green v. Miller*, 851 S.W.2d 553, 555 (Mo.App. 1993); *Lappe & Assoc., Inc. v. Palmen*, 811 S.W.2d 468, 471 (Mo.App. 1991); *In re Monnig*, 638 S.W.2d 782, 788 (Mo.App. 1982).

matter of the questions.[16]

L. The evidence and testimony in the record justifies the conclusion that, more likely than not, defendant committed "childhood sexual abuse" against plaintiff, as that term is defined by R.S.Mo. § 537.046.

M. The evidence and testimony in the record justifies the conclusion that, more likely than not, defendant committed hundreds, if not thousands of batteries against plaintiff.

N. While damages are presumed in a battery, the Court acknowledges that plaintiff has submitted both evidence and testimony establishing causation and damages. Plaintiff has incurred medical expenses for counseling and plaintiff has suffered pain, humiliation, mental anguish and PTSD. All of these injuries and damages were directly caused or directly contributed to be caused by defendant's actions as described herein.

O. The evidence and testimony establishes, clearly and convincingly, that defendant's abuse of plaintiff was outrageous by reason of evil motive and/or was committed with reckless indifference to the rights of others.

---

[16] *Bull v. Bull*, 634 S.W.2d 228, 230 n. 1 (Mo.App. 1982); *Ortiz v. Ortiz*, 465 S.W.2d 662, 663 (Mo.App. 1971); *Harwell v. Harwell*, 355 S.W.2d 137, 141 (Mo.App. 1962).

**Judgment**

The Court hereby finds in favor of the plaintiff and awards plaintiff $25,000,000 in compensatory damages and further, $75,000,000 in punitive damages, to punish defendant and to deter defendant and others from sexually abusing minors. Costs are assessed against the defendant.

IT IS SO ORDERED.

2/28/17
Date

The Honorable J. Dale Youngs
Jackson County Circuit Court Judge
Division 6