UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANN ALTMAN,                              )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        Case No. 4:25-CV-17-ZMB
                                         )
SAMUEL ALTMAN,                           )
                                         )
        Defendant.                       )

## MEMORANDUM AND ORDER

This matter is before the Court on dueling motions to dismiss. First is Defendant Samuel Altman's ("Sam") motion to dismiss or strike common-law claims and punitive damages. Doc. 16. Second is Plaintiff Ann Altman's ("Annie") motion to dismiss or strike counterclaims. Doc. 22. Because Annie's Complaint asserts only common-law tort claims, she cannot benefit from the longer statute of limitations that applies to Missouri's statutory cause of action for childhood sexual abuse. As such, the Court grants Sam's motion to dismiss these claims as untimely but with leave for Annie to file an amended complaint. Further, the Court denies the bulk of Annie's motion, as Sam sufficiently pleads claims for abuse of process and defamation, but it grants the motion in part in light of Sam's agreement to withdraw his prayer for costs and attorney fees.

### BACKGROUND

I.      **Annie's Suit**

        *a. Factual Background*

One of the only points of agreement in this case is that the claims are disturbing—particularly so if they prove true but nonetheless unfortunate if not. At this stage, however, the Court must accept the well-pled allegations and draw all reasonable inferences in favor of the non-moving party. *See Zutz v. Nelson*, 628 F.3d 451, 459 (8th Cir. 2010) (citation omitted).

Annie and Sam are biological siblings who once lived together at their family home in Clayton, Missouri. Doc. 1 ¶¶ 3–5. Annie asserts that Sam sexually abused her from 1997 to 2006. *Id.* ¶¶ 4, 6–12. The exploitation began when Annie was only 3 years old and Sam was 12. *Id.* ¶¶ 5–6. Sam started with forcible touching and oral sex but escalated to acts including battery, molestation, sodomy, and rape. *Id.* ¶ 7–12. The abuse ended around 2006, when Annie was approximately 12 years old and Sam was an adult. *Id.* ¶¶ 4, 11–12.

### b. Procedural Background

Annie filed suit against Sam on January 6, 2025, asserting claims for sexual assault and sexual battery. *Id.* at 3–6. The Complaint also refers to Missouri's Childhood Sexual Abuse ("CSA") statute, which permits "any action to recover damages from injury or illness caused by childhood sexual abuse . . . pursuant to [that] section . . . within ten years of the plaintiff attaining the age of twenty-one." *Id.* at 3 (citing MO. REV. STAT. § 537.046.2 (2004)). Additionally, Annie seeks "actual damages[,] . . . punitive damages, . . . [and] costs." *Id.* at 4, 6.

Sam simultaneously filed a motion to dismiss, Doc. 16, and an answer denying the allegations, Doc. 18 at 1–12. In his motion to dismiss, Sam asserts that Annie's claims are "time-barred on the face of the Complaint" and that "[p]unitive damages are unavailable as a matter of law." Doc. 16 ¶¶ 1–2. Alternatively, he asks the Court to at least "dismiss the request for punitive damages for any alleged conduct while [Sam] was a child." *Id.* ¶ 3. Annie filed a response, Doc. 21, and Sam replied, Doc. 30, making that motion ripe for adjudication. Annie also received leave to file a sur-reply, *see* Docs. 31–33, and Sam filed a corresponding sur-response, Doc. 34.

## II. Sam's Counterclaim

### a. Factual Background

Sam also has asserted counterclaims against Annie. *See* Doc. 18 at 12–19. Similar to Annie's claims, the Court "assumes all facts alleged in [Sam's] counterclaim are true and construes

2

the counterclaim liberally in the light most favorable to [him]." *N. Valley Commc'ns v. Sprint Commc'ns Ltd.*, 618 F. Supp. 2d 1076, 1079 (D.S.D. 2009) (citations omitted).

For years, Sam and his family have provided Annie with financial support through their late father's estate, as well as offering to help with medical expenses, housing, and employment. Doc. 18 at 12, 14. However, due to Annie's "serious mental health issues" and "harmful behavior," Sam and his family "have felt the need to be deliberate and thoughtful about the support they provide." *Id.* at 14. As a result, they have rejected Annie's demands for financial autonomy. *Id.*

Annie retaliated by engaging in a smear campaign against her brothers, falsely claiming they sexually abused her. *See id.* at 15–17. Beginning in 2021, Annie claimed on Twitter that she "experienced sexual, physical emotional, verbal, financial, and technological abuse from my biological siblings, mostly Sam Altman and some from Jack Altman." *Id.* at 15. Annie then posted "a continuous stream of false sexual abuse allegations against Sam Altman" on various platforms. *Id.* For example, in March 2023, she said, "I'm not four years old with a 13 year old 'brother' climbing into my bed non-consensually anymore. (You're welcome for helping you figure out your sexuality.)." *Id.* Annie also wrote that she "experienced every single form of abuse with him – sexual, physical, verbal, pharmacological . . . , and technological." *Id.* at 16. The recriminations continued through 2024, including in a work of poetry. *Id.* Annie also posted videos on TikTok with accusations that she was "touched by older siblings" and "that 'an almost tech billionaire' was 'terrified of the little sibling' that he 'repeatedly molested and physically abused.'" *Id.* at 17.

Sam claims that even the statements that omitted his name would be understood to refer to him, causing him pain and reputational damage. *Id.* Additionally, Sam avers that the instant action was filed by Annie to "embarrass [him]" and "to retaliate against him and the Altman family for their failure to provide greater and unrestricted support in the past." *Id.* at 15. In particular, the

3

lawsuit is designed to "pressure [the family] to relent to [Annie's] demands for greater and unrestricted financial support going forward." *Id.*

### b. Procedural History

Sam brings two counterclaims: (1) abuse of process, because Annie "fil[ed] a baseless lawsuit against [him]" with the "improper purpose" of attaining "unrestricted financial support," *id.* at 17–18; and (2) defamation for the false statements, *id.* at 18. Sam seeks nominal damages and an award of costs, fees, or "other recoverable expenses." *Id.* at 19.

Annie then moved to dismiss or strike the Counterclaim. Doc. 22. Annie argues that Sam's abuse-of-process claim should be dismissed because she "pursued a lawful cause of action" to recover for her sexual abuse. *Id.* ¶ 5. In support, she insists she "had no ulterior motive or improper purpose in bringing her claim," and even if she did, motive "is irrelevant under Missouri law because she brought a cause of action she is entitled to pursue." *Id.* Annie also asks the Court to either dismiss Sam's defamation claim as "fail[ing] to satisfy the necessary elements for pleading and proving a defamation claim" or strike the counterclaim's allegations for any statements that "fail to identify [Sam] specifically by name." *Id.* ¶¶ 6–7. Finally, Annie seeks to strike Sam's prayer for attorney fees and costs as non-recoverable. *Id.* ¶ 8. Sam timely filed a response agreeing to withdraw his request for attorney fees and costs but otherwise opposing Annie's motion. Doc. 29. Annie never filed a reply, so this motion is also ripe for adjudication.

**LEGAL STANDARD**

### I.    Motion to Dismiss Standard

A defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The purpose of a motion to dismiss "is to test the legal sufficiency of [a pleading]." *See Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 697 (E.D. Mo. 2021). To survive a Rule 12(b)(6) motion, the pleading must include "a short and plain

4

statement of the claim showing that the pleader is entitled to relief" and provide notice of the grounds on which the claim rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Additionally, the pleading must include sufficient detail to make a claim "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although "[s]pecific facts are not necessary," the party must include "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quotations omitted). The question is not whether the party will ultimately prevail, but whether the party is entitled to present evidence in support of the claim or counterclaim. *Id.*

At the motion-to-dismiss stage, the Court must accept as true the factual allegations in the pleading and draw all reasonable inferences in the non-movant's favor. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025) (citation omitted). However, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (citation omitted); *see also Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017) ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."). Ultimately, this analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## II.     Motion to Strike Standard

A party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "A prayer for relief not available under the applicable law, or which asserts a damage claim in excess of the maximum recovery permitted by law, is properly subject to a motion to strike." *Haynes v. BIS Frucon Eng'g*, No. 4:08-CV-701-CAS, 2008 WL 4561462, at *1 (E.D. Mo. Oct. 10, 2008) (collecting cases).

"Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted). "Striking a party's pleading, however, is an extreme and disfavored measure." *Id.* (citation omitted). Further, "courts generally will not grant even a well-founded motion to strike absent a showing of prejudice to the moving party." *FTC v. BF Labs Inc.*, 2015 WL 12806580, at *1 (W.D. Mo. Aug. 28, 2015) (citation omitted).

**DISCUSSION**

**I.      Sam's Motion to Dismiss or Strike**

Sam makes three arguments in favor of dismissing or striking portions of Annie's Complaint: (1) Annie's claims are time barred (2) she cannot recover punitive damages; and (3) alternatively, punitive damages are unrecoverable for Sam's childhood conduct. Sam is correct that the common-law claims are time-barred, so the Court will not address the issue of CSA punitive damages at this time.

### a.   Annie's common-law claims are time barred, but she can proceed under the CSA.

Sam first argues that Annie's tort claims are untimely and should be dismissed as such. He contends that the Complaint alleges "claims . . . equivalent to the common-law torts of assault and battery," meaning Annie would have needed to file suit by 2008. Doc. 17 at 4 (citing MO. REV. STAT. § 516.140). Sam also asserts that the CSA "*does not extend* the statute of limitations for [these] common law claims." *Id.* Annie counters that the Complaint "specifically incorporates [the CSA]" and that her claims are "the exact offenses contemplated within the statute." Doc. 21 at 6 (citing Doc. 1 ¶¶ 5–12). While binding precedent indicates that the current tort claims are no longer in play, the parties agree that Annie can proceed under the CSA.

The Complaint lacks clarity as to the precise contours of Annie's claims; she couches her allegations under two counts for common-law torts while also invoking Missouri's CSA under the header of "General Allegations." However, her response to Sam's motion to dismiss makes clear that she views the CSA as a special statute of limitations rather than a stand-alone cause of action. Doc. 21 at 4. Her confusion is understandable, as it appears the original version of the statute broadly extended the limitations period for claims "*[i]n any civil action* for recovery of damages

6

suffered as a result of childhood sexual abuse." *Harris v. Hollingsworth*, 150 S.W.3d 85, 87 (Mo. Ct. App. 2004) (quoting MO. REV. STAT. § 537.046.2 (1990) (emphasis added)). But Missouri revised the CSA in 2004[1] and, in doing so, restricted the generous limitations period to "an action brought pursuant to this section." MO. REV. STAT. § 516.046.2 (2004). Indeed, the Missouri Supreme Court emphasized this language in concluding both that the 2004 CSA created a new statutory cause of action and that it did not extend the limitations period for related tort claims. *See State ex rel. Heart of Am. Council v. McKenzie*, 484 S.W.3d 320, 326–27 (Mo. banc 2016).

Annie's contrary arguments are unavailing. As an initial matter, the Missouri Court of Appeals cases she cites analyzed the 1990 CSA, and neither of her federal cases grapple with the operative language in the 2004 version of the statute. *See* Doc. 21 at 4–5. More importantly, the Missouri Supreme Court's decision in *McKenzie* trumps this inapplicable precedent to the extent the cases are inconsistent. *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 534 (8th Cir. 2006) ("In interpreting state law, we are bound by the decisions of the state's highest court."). Annie's effort to distinguish *McKenzie* is particularly feeble—it is true that Court found "that a non-perpetrator could not be vicariously liable for [CSA] claims," but it expressly held that the statute could not save even tort claims based on the same underlying conduct. *See* 484 S.W.3d at 326–27. Finally, if any question remained, the Eighth Circuit has indicated that "Section 537.046 provides for a distinct cause of action . . . [and] does not apply to entire cases that involve allegations of childhood sexual abuse," *Walker v. Barrett*, 650 F.3d 1198, 1204 n.3 (8th Cir. 2011) (citation omitted). Thus, Annie is simply wrong that the applicable version of the CSA saves her assault and battery claims.

---

[1] Neither party addresses the peculiar timing of Annie's claims, which straddle both versions of the statute. *See* Doc. 1 ¶ 4 (identifying the relevant timeframe as 1997 through 2006). But given that the instant case is an "action commenced on or after August 28, 2004," MO. REV. STAT. § 537.046 (2004), and prior to a recent revision, the 2004 statute controls. In any event, while the 1990 CSA likely provides a special limitations period for her tort claims, it extended only to "five years [after] the date that [she] attain[ed] the age of 18," *see Harris*, 150 S.W.3d at 87 (quoting MO. REV. STAT. § 537.046.3 (1990)), which was years before Annie filed her Complaint. Thus, her only viable path forward at this point is an independent claim under the 2004 CSA.

To his credit, Sam appears to acknowledge that all is not lost for Annie. *See* Doc. 17 at 4–5; Doc. 33 at 3 n.2. If fact, the Complaint may well state a CSA claim despite formally asserting only tort counts. *See Gierer v. Rehab Med.*, No. 4:14-CV-1382 CAS, 2016 WL 6126373, \*2 (E.D. Mo. Oct. 20, 2016) ("As the Eighth Circuit has stated, '[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.'" (citation omitted)). Nonetheless, Annie sought leave to amended her complaint if the tort claims are untimely, Doc. 21 at 6, and the Court grants this unopposed request in case she elects to add CSA-specific allegations,[2] *see* Doc. 33 at 3 n.2; *see also Avey v. Bird*, 2005 WL 8159100, at \*2 (W.D. Mo. June 24, 2005) (inviting amended complaint despite denying dismissal of CSA claim).

### b.   *The Court declines to speculate as to potential punitive damages.*

As Annie's claims are dismissed, the Court will not opine on the availability of punitive damages at this time.[3] *See Johnson v. Special Sch. Dist.*, No. 4:17-CV-2802-SNLJ, 2018 WL 2298822, at \*4 (E.D. Mo. May 21, 2018) ("Because the Court will dismiss the underlying claims on which any punitive damages claim is based, her claim for punitive damages must also be dismissed.").

---

[2] In particular, Annie may wish to specify under which of the predicate offenses she wishes to proceed, *see McKenzie*, 484 S.W.3d at 326 n.6 (summarizing the criminal statutes referenced in MO. REV. STAT. § 537.046.1(1) (2004)). And both parties should consider the elements of a CSA claim given that it lacks a specific Missouri Approved Instruction.

[3] Although Sam cites an example of this Court dismissing a claim for damages, *see* Doc. Doc. 17 at 3 (citation omitted), that case does not explicitly analyze why a motion to dismiss, instead of a motion to strike, is procedurally proper. *Contra R. L. Mlazgar Assocs. v. Focal Point*, 2024 WL 4544097, at \*8 (D. Minn. June 4, 2024) ("Damages are a form of relief and thus not a claim subject to a Rule 12(b)(6) motion to dismiss."). If Sam moves to dismiss any future prayer for punitive damages, he should explain why that is the proper mechanism for his request.

## II.   Annie's Motion to Dismiss or Strike

Annie likewise advances three grounds for dismissing or striking Sam's Counterclaim. While her arguments regarding the abuse-of-process and defamation claims fall short, the parties agree to strike certain prayers for relief from the Counterclaim. The Court addresses each issue in turn.

### a.   *Sam sufficiently pled an abuse-of-process counterclaim.*

Annie first seeks to dismiss Sam's counterclaim for abuse of process. Under Missouri law, this claim requires "(1) an illegal, improper, perverted use of process, (2) done for an improper purpose, (3) resulting in damage." *Impey v. Hart*, 471 S.W.3d 776, 780 (Mo. Ct. App. 2015). A litigant must establish that "the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do." *Trs. of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 278 (Mo. banc 2019). "The ulterior motive may be inferred from the wrongful use made of the process, but the [improper] use itself may not be inferred from the motive." *Id.* (citation omitted). Thus, "if one simply pursues an action to its authorized conclusion, an abuse of process does not occur, regardless of evil motive." *Schlafly v. Cori*, 647 S.W.3d 570, 574 (Mo. banc 2022). But there will be liability in the "rare cases in which the allegedly improper action was instituted to obtain a result which the process was not intended by law to effect." *Id.* (quotation omitted).

Annie argues that the abuse-of-process claim fails because she "merely employed the judicial process to accomplish an end intended by law." Doc. 22 ¶ 2. Specifically, she avers that "any claimed ulterior motive" for bringing the lawsuit is irrelevant and that Sam has not alleged "any act or threat not authorized by the process." Doc. 23 at 4–5 (citation omitted). Annie also claims that "one of the requisite elements to support an abuse of process claim is that Plaintiff did something after the initiation of her lawsuit," which Sam failed to plead. *Id.* at 4 (citing *Wells v. Orthwein*, 670 S.W.2d 529, 532 (Mo. Ct. App. 1984)).

9

Sam sees things differently. In defending his counterclaim, he contends that Annie "filed her lawsuit to accomplish a goal that is beyond the scope of this proceeding: to create pressure on [him] and his family to accede to future demands for medical, financial, and housing support without conditions." Doc. 29 at 2 (citing Doc. 18 at 12, 14, 17). Sam argues that "filing of a lawsuit to accomplish a collateral objective constitutes an 'improper use' of process," *id.* at 3 (citing *Schlafly*, 647 S.W.3d at 574–75), and that no case suggests a party "must allege an improper act 'after the initiation' of a lawsuit, as [Annie] contends," *id.* at 4 (citation omitted). Instead, "abuse-of-process claims often involve allegations that a wrongdoer invoked legal process to *pressure* the victim to take some action that would not be achievable through the lawsuit itself." *Id.* at 4–5 (collecting cases). Because he has pled that Annie seeks "greater and unrestricted financial assistance" through her lawsuit and that this result is "outside of the scope of [her] lawsuit," Sam argues he has pled a valid abuse of process claim. *Id.* at 5.

Annie is correct that the mere filing of a malicious lawsuit cannot establish an abuse of process. *See Schlafly*, 647 S.W.3d at 574. But while she insists the "facts tell a different story," Doc. 23 at 2, Sam has alleged that she filed a baseless lawsuit driven by improper motive. According to the Counterclaim, Annie brought this case to "escalate the pressure against her family [and Sam]" to give in to her demand for financial autonomy. *See* Doc. 18 at 14. In other words, Sam claims Annie instituted this lawsuit "to obtain a result which the process was not intended by law to effect," which she agrees is all that is required. Doc. 23 at 4 (quoting *Clayton Terrace*, 585 S.W.3d at 277). And even if that were not enough, Sam alleges another extrajudicial end: to embarrass him and retaliate for his refusal to provide greater support. *Id.* at 15; Doc. 29 at 5 n.1. While Annie may ultimately prove otherwise, Sam has alleged enough facts, when construed in the light most favorable to him, to survive a motion to dismiss.

Annie also suggests that "one of the requisite elements to support an abuse of process claim is that [she] did something *after the initiation of her lawsuit* that was somehow abusive, or illegal." Doc. 23 at 4. She is incorrect. In fact, Annie's citation to *Wells* proves just the opposite. As the *Wells* Court recognized, "if [a] suit is brought for a collateral purpose, there is abuse of process." 670 S.W.2d at 532. Although overlapping with a malicious-prosecution claim, the initiation of a lawsuit can serve as a basis for an abuse-of-process claim. As such, Sam has pled every element necessary to maintain his abuse of process claim.

### b. Sam sufficiently alleges a defamation counterclaim.

Annie next moves to dismiss Sam's defamation claim. She argues that Sam fails to establish that any of the statements: (1) identified him, (2) were false, or (3) were published with the requisite degree of fault. Doc. 23 at 6. After addressing Annie's oversight with respect to her choice-of-law determination, the Court will address each point under applicable California law.

### 1. Applicable Law

Sam correctly notes that Annie's motion fails to conduct a choice-of-law inquiry before applying Missouri law. Doc. 29 at 6. For his part, Sam argues that Missouri's choice-of-law test means that California law applies to his claim. *Id.* Annie never explains why Missouri law applies. Nor did she dispute Sam's assertion that California law applies. In any event, it appears Sam is correct.

For its choice-of-law analysis, Missouri employs the "most significant relationship test," which focuses on certain factors such as: "the place where the injury occurred; the place where the conduct causing the injury occurred; the domicil[e], residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered." *Fuqua Homes v. Beattie*, 388 F.3d 618, 621 (8th Cir. 2004) (citations omitted). In a defamation suit, "the most important consideration in choosing the applicable law is the residence of the party allegedly defamed." *Id.* at 622 (citing *Elmore v. Owens–Illinois*, 673 S.W.2d 434, 436–37 (Mo. banc 1984)). Although the alleged defamation here appears to be widely disseminated,

11

the statements would have their greatest impacts at Sam's domicile because "defamation produces a special kind of injury that has its principal effect among one's friends, acquaintances, neighbors and business associates in the place of one's residence." *Id.* (citation omitted). Considering the impact the alleged defamatory statement has on Sam's life, and particularly given Annie's failure to respond to Sam's choice-of-law analysis, the Court will apply California law to Sam's counterclaim and attempt to graft Annie's argument onto that body of law.

To plead a defamation claim under California law, a litigant must allege that a statement is "[1] a publication that is [2] false, [3] defamatory, and [4] unprivileged, and that [5] has a natural tendency to injure or that causes special damage." *Hoffman v. West*, 2025 WL 2376705, at *5 (C.D. Cal. June 23, 2025) (citing *Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007)). "[F]or a statement to be defamatory it must contain a provable falsehood—statements of opinion are not actionable." *Greenberg v. W. CPE*, 2013 WL 1628905, at *4 (C.D. Cal. Apr. 15, 2013) (citing *Okun v. Superior Court*, 629 P.2d 1369, 1374 (Cal. 1981)). When the defamation claimant is a public figure, they must plead and prove that the statements were made with "actual malice," requiring some proof that the statement was "made with knowledge of [its] falsity or with reckless disregard of [its] truth or falsity." *Roe v. Doe*, 2009 WL 1883752, at *13 (N.D. Cal. June 30, 2009) (citation omitted). Annie takes issue with the elements of a defamatory publication, falsity, and actual malice, but each of these contentions fail under California law.

### 2.    *Defamatory Statements*

As to the first point, the parties dispute whether the statements sufficiently identify Sam to be defamatory. Annie asserts that the statements fall short because "readers would have to jump through numerous hoops to understand" that she was referring Sam, as the allegations "are vague and general in nature." Doc. 23 at 8. Sam disagrees. In addition to the mentions of him by name, Sam argues that the defamatory statements included "unmistakable identifying characteristics,"

12

such as referring to the age gap between the sibling, particularly given that she previously accused Sam by name. Doc. 29 at 8–9. Thus, given the whole context of the statements made by Annie, "[a]ny reader would reasonably understand that [Annie's] statements refer to [him]." *Id.* at 9.

A defamatory statement must "specifically refer to, or be of and concerning, the plaintiff in some way." *Brill v. Postle*, 2020 WL 2936688, at *7 (E.D. Cal. June 3, 2020) (citation omitted). "In order to satisfy this requirement, the plaintiff must effectively plead that the statement at issue either expressly mentions [him] or refers to [him] by reasonable implication." *Mahoney v. Meta Platforms*, 710 F. Supp. 3d 771, 778 (N.D. Cal. 2024) (quotation omitted). For reference by reasonable implication, "a defamatory statement . . . must be capable of being understood to refer to the plaintiff, [and] also must be shown actually to have been so understood by a third party." *Id.*

Sam is correct that these statements did not need to directly identify him. Taking all inferences in his favor, Annie's statements either explicitly or implicitly refer to him. Her first post in 2021 mentions Sam by name and accuses him of being the primary perpetrator of her sexual assault. Doc. 18 at 15. She also alleges sexual assault by a brother, distinguishes which brother by his age, reposts old publications identifying Sam as the perpetrator, and states in new posts that she was "touched by older siblings." *See id.* at 15–17. Thus, even the statements that do not explicitly refer to Sam require only a reasonable inference and survive at least at the pleading stage.[4]

---

[4] Annie's arguments are geared toward whether the defamatory statements are *capable* of being understood by the public. *See* Doc. 23 at 8. Given the context of the statements as alleged and the liberal pleading standard, at least this much must be inferred. Annie does not, however, argue that Sam failed to allege that the statements were *actually* understood by the public. *See SDV/ACCI v. AT & T Corp.*, 522 F.3d 955, 960 (9th Cir. 2008) (requiring actual proof that a defamatory statement was understood by the public as referring to the plaintiff). Because the moving party bears the burden to show entitlement to dismissal, the Court will not address this argument sua sponte. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("While the text does not discuss the burden of proof, every circuit court to address this issue . . . has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal." (citations omitted)); *see also Viking Supply v. Nat'l Cart Co.*, 310 F.3d 1092, 1099 (8th Cir. 2002) ("[I]t is not this court's job to research the law to support an [litigant's] argument.").

13

### 3.     *False Statement*

The parties further dispute if Sam has sufficiently alleged falsity of a publication. Annie claims he "does not plead any facts which would show [her] statements are false." Doc. 23 at 7. Sam succinctly responds that, "while [Annie] insists throughout her motion that her statements are the 'truth,' . . . falsity is a question of fact reserved for the jury and provides no basis for dismissal." Doc. 29 at 7 (citations omitted). Further, Sam repeatedly asserts that the statements were published despite Annie's knowledge that they were false. *See, e.g.*, Doc. 18 ¶ 15 ("When it became clear that [Annie] was not getting the unrestricted financial support she demanded from the Altman family, she began publishing knowingly false statements that Sam Altman sexually abused her when she was a child.").

A claim for "defamation under California law . . . must allege a statement was false." *Hoffman*, 2025 WL 2376705 at *6 (citation omitted). "Falsehood is analyzed by looking at whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Sanchez v. Am. Media*, 2020 WL 8816343, at *7 (C.D. Cal. Dec. 29, 2020) (quotation omitted). While a "court must consider the totality of the circumstances when making this inquiry," if the "statement appears substantially true, or the 'gist' or 'sting' of the remark is justified even if the details are inaccurate, the statement is not defamation." *Id.* (citations omitted). "On a motion to dismiss, therefore, the court asks only whether a reasonable jury could find that the statement was not substantially true." *Hoffman*, 2025 WL 2376705 at *6 (citation omitted).

Given the totality of the circumstances, a reasonable jury could find that the statements were not substantially true. Although Annie vigorously defends the veracity of her statements, that assertion is not enough to warrant dismissal. It should require no explanation that a jury could conclude that statements accusing Sam of sexual abuse were falsely made to injure his reputation. Though a factfinder might also conclude that Annie's statements were true, it is not for the Court

14

to make that finding at this juncture. Thus, construing the Counterclaim in a light most favorable to Sam, he has sufficiently pled that the statements were false to survive a motion to dismiss.

Even less compelling is Annie's related contention that her statements were merely opinion. Annie asserts that "the majority of the statements" allegedly made "were expressions of opinion that cannot form the basis of a defamation claim." Doc. 23 at 8. Sam counters that "each of the statements [made by Annie] asserts an 'objective fact' as true." Doc. 29[5] at 10. Each of the facts alleged in the Counterclaim, Sam argues, are "objectively verifiable—either [Sam] committed the acts described in [Annie's] posts . . . or he did not." *Id.* On that basis, Sam concludes there is no room to argue that the statements were just Annie's opinions. *Id.* It is true that "statements of opinion are constitutionally protected." *Line One Lab'ys Inc. v. Wingpow Int'l Ltd.*, 2025 WL 1114018, at *3 (C.D. Cal. Feb. 28, 2025) (citation omitted). Yet "[t]he dispositive question is not whether a statement is fact or opinion, but whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Id.* (citation omitted). "If [a statement] can be proved false, then a statement is not protected as opinion." *Glasser v. Berzner*, 2021 WL 4352809, at *3 (C.D. Cal. June 23, 2021) (citation omitted). As discussed above, the statements are provable as either true or false.[6] Because a reasonable jury could conclude that the statements are false, the Court will not dismiss Sam's defamation claim.

---

[5] It appears that Document 29 violates the Court's formatting rules. "All filings, unless otherwise permitted by leave of Court, shall be in 12- point or larger font, [and] double spaced." E.D. Mo. L.R. 2.01(A)(1). It is clear that this filing is less than double spaced, potentially to avoid the 15-page limit on memoranda. If Sam's counsel files any other paper that fails to comply with the Local Rules, the Court will strike the paper without further notice.

[6] Annie also asserts that her work of poetry "is entirely protected." Doc. 23 at 7–8. But under California law, "a fictional work does not insulate [a defendant] from liability for defamation if all the elements of defamation are otherwise present." *Gaprindashvili v. Netflix*, 2022 WL 363537, at *5 (C.D. Cal. Jan. 27, 2022) (citations omitted). That rule makes good sense; otherwise, a would-be defamer could insulate themselves by holding out their statements as art.

4.      *Requisite Degree of Fault (Actual Malice)*

As one final line of attack, Annie argues that Sam has not pled the required degree of fault. She notes that, because Sam "is a well-known public figure with" millions of followers on social media and "a global presence in the field of artificial intelligence," Sam must plead actual malice. Doc. 23 at 8. Annie asserts that he "fails to make" any assertion that she made the statement either with "knowledge of the statements' falsity or reckless disregard for [the] truth." *Id.* at 8–9. Sam counters that his "[C]ounterclaim adequately alleges actual malice." Doc. 29 at 10. Specifically, he notes that he pled sufficient facts to meet the standard, including that Annie "knew these statements were false or had serious doubts about the truth of these statements." *Id.* at 11 (citing Doc. 18 at 18).

Sam has the better of the arguments. When a plaintiff to a defamation action is a public figure, the litigant must prove that the defamatory statement was made with "actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *McNair v. Worldwide Church of God*, 197 Cal. App. 3d 363, 376 (Cal. Ct. App. 1987) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 257, 279–80 (1964)). Throughout his Counterclaim, Sam claims Annie made the statement either with knowledge of its falsity or disregard for the truth. *See* Doc. 18 ¶¶ 1, 15–16, 20, 22, 34. Whether he ultimately can prove that contention is another matter. But Sam by no means fails to make "any such allegations" of knowledge of falsity or reckless disregard for the truth. *See* Doc. 23 at 9.

Because Sam has sufficiently pled a case to establish defamation, Annie's motion to dismiss must be denied. [7]

---

[7] Annie also asks the Court to strike the paragraphs in the Counterclaim alleging the defamatory statements because Sam "does not satisfy the necessary elements for a defamation claim." *See* Doc. 23 at 9–12. Because Sam has sufficiently pled a defamation claim, the Court will deny the motion to strike those allegations as they are pertinent to the defamation claim. *Cf.* FED. R. CIV. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

*c. In light of the parties' agreement, the Court strikes Sam's prayer for fees and costs.*

Finally, Annie asks the Court to strike as unrecoverable Sam's prayer for attorney fees and costs associated with this lawsuit. Doc. 23 at 12–13. Sam does not oppose the motion and instead says that he "agrees to withdraw his requests for attorney fees and costs." Doc. 29 at 12. Given this development, the Court grants this portion of Annie's motion as unopposed and strikes Sam's prayer for attorney fees and costs, *see* Doc. 18 at 19.

### CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Sam Altman's [16] Motion to Dismiss Plaintiff's Common-Law Claims and Plaintiff's Prayer for Punitive Damages, dismissing Plaintiff Annie Altman's common-law claims as time barred, granting her request for leave to file an amended complaint, and denying as moot Sam's request to dismiss or strike punitive damages. No later than April 3, 2026, Annie must file her amended complaint. Doc. 43 at I(b). Further the Court **GRANTS IN PART** and **DENIES IN PART** Annie Altman's [22] Motion to Dismiss and/or Strike Defendant's Counterclaims, striking without opposition the portion of Sam's Counterclaim seeking attorney's fees and costs but otherwise declining to dismiss or strike his claims.

So ordered this 20th day of March 2026.

_____
ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE

17