**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **JANE DOE**[1]**,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 1:22-cv-00381-LEW** |
| | ) | |
| **MISSIONARY OBLATES OF MARY IMMACULATE EASTERN PROVINCE et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

**ORDER ON MOTION TO CONDUCT MENTAL EXAMINATION**

Jane Doe alleges that she was sexually abused by Missionary Oblates of Mary Immaculate[2] priests when she visited Maine as a young child in the 1950s. In her complaint against the Oblates, Doe alleges that she suffered—and continues to suffer—severe mental and emotional injuries from the abuse. The Oblates move for an order permitting their expert to conduct an independent mental examination of Doe, citing the nature of her claims and her designation of her treating psychiatrist as an expert witness. Because I conclude that the Oblates have made the requisite showing under Fed. R. Civ. P. 35, I will grant their motion.

## I. Background

Doe's first amended complaint contains the following allegations.

[1] Jane Doe is a pseudonym. *See* ECF Nos. 6, 10.

[2] In her first amended complaint, Doe names three related Oblates entities as defendants: Missionary Oblates of Mary Immaculate Eastern Province, Missionary Oblates of Mary Immaculate, Inc., and U.S. Province of the Missionary of Oblates of Mary Immaculate, Inc. The instant motion was filed by the first of these entities, but all three are represented by the same counsel. For the sake of simplicity, I will refer to them individually and collectively as the Oblates.

Doe was placed in Saint Joseph's Orphanage in Fall River, Massachusetts, when she was four years old in 1955. First Amended Complaint (FAC) (ECF No. 39) ¶¶ 1, 6. While at the orphanage between 1955 and 1959, Doe was taken to Oblates-owned properties in Augusta, Bucksport, and Bar Harbor, Maine, where Oblates-affiliated priests sexually abused her on at least ten separate occasions. *Id.* ¶¶ 1-2, 12, 15, 17, 22. As a result of the abuse, Doe

> sustained both physical and emotional injuries, including[ ] humiliation, embarrassment, loss of self-esteem, disgrace, guilt and shame; loss of faith and mistrust of the education system, figures of authority, and the Roman Catholic Church's spiritual guides; injuries suffered at the time of the sexual abuse including physical pain and shock to the nervous system and emotional distress; severe mental anguish and trauma, necessitating psychiatric and medical care and treatment in the past, present and future; physical ailments, including, but not limited to grievous bodily pain and suffering, bleeding, headaches, nausea, mental anguish, anxiety and loss of sleep; and loss of earnings and earnings capacity during those periods [she] was unable to work due to traumatization, and may in the future be unable to work.

*Id.* ¶ 114, 130, 141.

Based on these allegations, Doe asserts the following claims against the Oblates: negligent training, retention, and supervision (Count I); vicarious liability for sexual assault (Count II); intentional infliction of emotional distress (IIED) (Count III); punitive damages (Count IV)[3]; and premises liability (Count V). *Id.* ¶¶ 85-161.

Doe has designated Paula Eagle, M.D.—her treating psychiatrist and psychotherapist—as an expert witness. *See* ECF No. 32-3 at 1-2. Dr. Eagle diagnosed

[3] I note that punitive damages are a remedy under Maine law, not a distinct cause of action. *See, e.g.*, *Frank v. L.L. Bean, Inc.*, 352 F. Supp. 2d 8, 13-14 (D. Me. 2005).

Doe with post-traumatic stress disorder (PTSD) stemming primarily from the sexual abuse she suffered as a young child. *See id.* at 3, 7. According to Doe's designation, Dr. Eagle is expected to testify that Doe "credibly recounts her abuse in a fashion that is consistent with other child sexual abuse survivors and indicates that she did, in fact, suffer from horrific sexual abuse by clergy affiliated with the Catholic Church as a child." *Id.* at 3. Dr. Eagle will also testify about "the physical and psychological effects of trauma," including Doe's ongoing anxiety, depression, sense of detachment, intrusive thoughts, hypervigilance, and "memory abnormalities." *Id.* at 4-5. Finally, Dr. Eagle will testify that Doe "is likely to continue suffering from PTSD and other psychological consequences of child sexual abuse into the future, and that she will require counseling to treat these symptoms indefinitely." *Id.* at 8.

## II. Legal Standard

Pursuant to Fed. R. Civ. P. 35(a), a court may, upon a showing of good cause, "order a party whose mental . . . condition . . . is in controversy to submit to a . . . mental examination by a suitably licensed or certified examiner." Any such order "must specify the time, place, manner, conditions, and scope of the examination, as well the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B).

"Rule 35 . . . requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental . . . examination . . . has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements . . . are necessarily related." *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). This

analysis is highly contextual: "what may be good cause for one type of examination may not be so for another." *Id.* at 118.

### III. Discussion

The Oblates seek an order permitting their expert, James I. Hudson, M.D., Sc.D., S.M., "a board-certified psychiatrist with expertise in PTSD, childhood sexual abuse, and memory, among other things," to conduct a mental examination of Doe. Motion (ECF No. 32) at 9. They assert that there "is no plausible argument that [Doe's] mental health is not 'in controversy'" given her allegations and claim for IIED as well as her designation of Dr. Eagle as an expert witness. *Id.* at 7. They also point to the same factors to show good cause and further argue that a mental examination by Dr. Hudson "is required to assess any causal relationship between the alleged abuse and [Doe's] subjective mental health concerns, the accuracy and reliability of Dr. Eagle's PTSD diagnosis, and any facts or clinical data that might support, or call into question, Dr. Eagle's professional opinion that" Doe's memory abnormalities are consistent with the alleged abuse. *Id.* at 8; *see also id.* at 7-8 (raising concerns, based on Doe's deposition, that her memories were affected by an "array of photographs" shown to her by her attorneys).

Doe vehemently opposes the Oblates' motion, arguing that they have failed to show good cause for such a highly intrusive and burdensome examination. *See* Opposition (ECF No. 40). She contends that the Oblates have not shown that less intrusive methods would be insufficient where they have not yet reviewed her medical records or deposed Dr. Eagle. *See id.* at 4. She also faults the Oblates for not

providing greater details about the scope of Dr. Hudson's proposed examination.[4] *See id.* at 5-8.

In their reply, the Oblates assert that, in the time since they filed their original motion, Dr. Hudson has reviewed Doe's medical records—which consist of a handful of mostly handwritten notes from her treatment with a counselor and Dr. Eagle—and found them to be largely unhelpful. *See* Reply (ECF No. 49) at 6. They argue that Dr. Hudson should not "be constrained to use a deposition transcript (whether of [Doe] or Dr. Eagle)" and should be allowed to examine Doe "to test the veracity of [Dr. Eagle's] opinions." *Id.* at 7-8. They also provide an affidavit from Dr. Hudson indicating that he intends to conduct a standard "interview-based" "psychiatric examination that involves an assessment of [Doe's] past and present mental health" by gathering information about her personal, psychiatric, and medical history and assessing whether she has psychiatric symptoms that impact her functioning. ECF No. 49-1. Dr. Hudson further notes that he does "not intend to use any written psychological tests" and that the proposed format of his examination "is considered routine." *Id.* at 2.

After considering the parties' arguments, I am persuaded that the Oblates have satisfied the requirements for an order under Rule 35. There can be no question that Doe's mental condition is "in controversy"— indeed, Doe all but concedes the

[4] To the extent that Doe also challenges Dr. Hudson's status as "a suitably licensed or certified examiner," Fed. R. Civ. P. 35(a)(1), by suggesting that his curriculum vitae (CV) "indicates he does not actively counsel or provide mental examinations for patients and is employed by a firm that provides expert testimony," Opposition at 5, that argument fails for two reasons. First, it is underdeveloped. Second, Dr. Hudson's CV—which reflects that he is a board-certified psychiatrist with more than forty-years of clinical experience at well-regarded institutions—convinces me that he is qualified to conduct a mental examination under Rule 35. *See* ECF No. 32-5.

point. That leaves the separate but related question of whether the Oblates have established good cause.

I conclude that Oblates have established good cause for a mental examination. Doe maintains that she has suffered and continues to suffer severe mental and emotional injuries as a direct result of the alleged sexual abuse perpetrated on her by Oblates-affiliated priests; she presses negligence and IIED claim against the Oblates; she seeks damages for pain and suffering, medical expenses, and economic losses; and she has designated Dr. Eagle as an expert to testify in complex detail about her mental health diagnoses, symptomology, and prognosis. *See Baron v. United States*, No. 1:12-cv-00334-DBH, 2013 WL 3197134, at *2 (D. Me. June 21, 2013) (concluding that a defendant established good cause to conduct a mental examination of the plaintiff where the "plaintiff, based on the examination of his own expert, maintain[ed] that he suffer[ed] from extreme mental distress and that [the] distress was substantially exacerbated by the negligence alleged in [the] lawsuit").

Although I take no pleasure in ordering Doe to undergo a mental examination against her will, I am not persuaded that a less intrusive alternative—such as relying on medical records or depositions—will suffice given the nature of her pleadings and Dr. Eagle's expected testimony.[5] *See Schlagenhauf*, 379 U.S. at 118-19 (noting that although the ability of a Rule 35 "movant to obtain the desired information by other means is . . . relevant" to the good cause analysis, "there are situations where the

---

[5] For these same reasons, I am unpersuaded by Doe's attempt to characterize the Oblates' request for a mental examination as some sort of bad faith tactic. *See* Opposition at 3.

pleadings alone are sufficient to" establish "good cause for an examination to determine the existence and extent of" an asserted mental injury). It would be unfair and contrary to the purposes of discovery if Dr. Eagle were the only expert allowed to examine Doe. Accordingly, Dr. Hudson's proposed mental examination "is a reasonable approach to ensuring that" the Oblates have "a balanced opportunity to assess" Doe's "allegations and proof concerning" her mental injuries. *Baron*, 2013 WL 3197134, at *2.

I informed the parties of these conclusions at a hearing on October 19, 2023, and encouraged them to work out the precise parameters of the mental examination by agreement. In a status report filed on October 25, 2023, however, the parties reported that they were unable to come to an agreement. *See* ECF No. 57.

The Oblates seek an order compelling Doe to undergo a mental examination conducted by Dr. Hudson at his office in Boston on November 16, 2023, at 10:00 a.m. *See id.* at 2. They press for a seven-hour examination exclusive of periodic breaks. *See id.* They consent to Doe bringing an emotional support person to the examination but argue that the person should not be allowed in the examination room and should not be one of Doe's attorneys or someone affiliated with Doe's attorneys. *See id.* Finally, they want Doe to bear the costs of her travel and lodging. *See id.*

Doe does not object to the Oblates' proposed date and time, but she presses for a four-hour examination to be conducted by Zoom or, alternatively, in Portland, Oregon, where she currently resides. *See id.*; FAC ¶ 39. She also wants the examination to be video recorded and to be allowed to bring an emotional support

person of her choosing.[6] *See id.*

Beginning with the length of the examination, I conclude that four hours would be insufficient given the complex nature of Doe's allegations and the almost seventy-year timeframe at issue. Nevertheless, to ensure that Doe has time to take periodic breaks and does not have to endure an overly long examination, I will limit the examination to six hours in length exclusive of any breaks.

Turning to the location of the examination, I conclude that the complexity of Doe's alleged mental injuries justifies an in-person examination. Given that the usual location of such an examination would be in this District, *see Six v. City of Seattle*, No. 2:21-cv-00658-RSL-JRC, 2022 WL 11229094, at *3 (W.D. Wash. Oct. 19, 2022) ("Courts have developed a general rule that plaintiffs should submit to a medical examination in the forum which they chose to bring suit." (cleaned up)), I am not going to require Dr. Hudson to travel to Portland, Oregon. If Doe had pressed the issue, I would have required Dr. Hudson to travel to Portland, *Maine*, but it will be just as easy—probably easier, considering the availability of direct flights—for her to travel to Boston for the examination. In such circumstances, I do not feel compelled to order the Oblates to pay for Doe's travel and lodging.

As for recording, I will not allow Doe to record the examination because she has not established a special need to do so and such a recording could affect the integrity of the examination. *See, e.g.*, *Mager v. Wis. Cent. Ltd.*, 924 F.3d 831, 839

[6] Doe also wants the Oblates to depose Dr. Eagle before Dr. Hudson conducts the examination. *See* ECF No. 57 at 2. But I agree with the Oblates that Dr. Eagle's deposition by the Oblates' attorneys will have little bearing on Dr. Hudson's examination of Doe. *See id.*

(6th Cir. 2019) (noting that federal courts generally do not allow independent medical examinations to be recorded absent a demonstrated special need); *Holland v. United States*, 182 F.R.D. 493, 496 (D.S.C. 1998) (finding that recording an examination could influence the plaintiff "to exaggerate or diminish his reactions" or "fail to respond in a forthright manner"). Moreover, Dr. Eagle's sessions with Doe were not recorded. *See Holland*, 182 F.R.D. at 496 ("[T]he videotape would give Plaintiffs an evidentiary tool unavailable to Defendant, who has not been privy to the physical examinations made of [Plaintiff] by either his treating physician or any experts he may have retained. Such a result undermines the purpose of Rule 35.").

Finally, although I would encourage Doe to bring someone to comfort and support her during breaks in the examination, her emotional support person should not be one of her attorneys or experts or someone associated with her attorneys or experts. *See* 8B Richard L. Marcus, *Federal Practice & Procedure* § 2236, Westlaw (database updated Apr. 2023) ("[T]he presence of, and possible interference by, an attorney or other representative of the examined party might disrupt, or defeat the purpose of, the examination. This concern may be heightened during a psychiatric examination." (footnotes omitted)); *Baron*, 2013 WL 3197134, at *3 (allowing a support person to be nearby during a psychiatric examination and communicate with the examinee during breaks but not allowing the support person to be present in the examination room).

## IV. Conclusion

For the foregoing reasons, the Oblates' motion is ***GRANTED***. Doe shall submit to a mental examination by Dr. James I. Hudson on November 16, 2023, at 10:00 a.m. at his office in Boston, Massachusetts. The examination shall be limited to the interview-based assessment described in Dr. Hudson's affidavit (ECF No. 49-1). The examination shall be a maximum of six hours exclusive of any breaks; Doe may take periodic short breaks as necessary. Doe may bring an emotional support person to support and comfort her during breaks, but the emotional support person must always remain outside of the examination room and must not be one of Doe's attorneys or experts or someone affiliated with her attorneys or experts. The examination shall not be recorded. Doe shall bear her own costs of travel and lodging.

***SO ORDERED***.

***<u>NOTICE</u>***

***In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.***

***Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.***

Dated: November 3, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge