**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANN ALTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:25-cv-00017 |
| | ) | |
| SAMUEL ALTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

**PUBLIC-REDACTED VERSION**

## I. INTRODUCTION

Plaintiff has placed her mental condition at the center of this case. She attributes a broad range of psychological and medical injuries—including PTSD, anxiety, severe emotional distress, mental anguish, depression, [redacted] and more—to purported childhood sexual abuse by Defendant Sam Altman. And Plaintiff asserts that [redacted] Yet, having made both her psychological condition and the circumstances surrounding her recovered memories central to her claims, Plaintiff now contends in her overlength motion[1] that her independent medical examination should be limited to a diagnosis of PTSD and that as to all other mental health issues, Plaintiff's medical records suffice.

Plaintiff's position cannot be squared with established standards governing psychiatric examinations. Under Federal Rule of Civil Procedure 35, a party seeking an examination need show only that the particular condition to be examined is genuinely "in controversy" and that "good cause" exists for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 117–19 (1964). Those requirements are easily met here, and Plaintiff does not dispute that an IME in this case is warranted. Once a plaintiff's medical condition is at issue, courts disfavor narrowing the scope of the Rule 35 examination. *See Shannon v. Ellisa*, No. 4:18-CV-00506 JAR, 2018 WL 4698783, at *2–3 (E.D. Mo. Oct. 1, 2018) ("Questions the physician must ask during an examination . . . cannot be determined in advance and therefore cannot be restricted by the Court."); *Aubuchon v. Tate Trucking, LLC*, No. 4:24CV189 HEA, 2025 WL 3012997, at *2 (E.D. Mo. Oct. 28, 2025) ("[F]or

[1] During the Court's discovery conference held on August 21, 2026, the Court instructed the parties to limit their briefing to ten double-spaced pages. Plaintiff's fifteen-page motion does not comply with that limit.

the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze [a] plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations." (internal quotation marks and citation omitted)). For good reason—"[o]ne of the purposes of Rule 35 is to provide a level playing field as between the parties" by granting Defendant the ability to adequately appraise Plaintiff's claimed mental state and theory of causation. *See Anderson v. United States*, No. 21-cv-2088 (JMB/LIB), 2024 WL 6881507, at *5 (D. Minn. July 8, 2024); *Silbernagel v. Westfield Ins. Co.*, No. 22-CV-1979 (JRT/JFD), 2023 WL 2264277, at *5 (D. Minn. Feb. 28, 2023).

As Defendant's expert clinical psychiatrist Dr. James Hudson explains in his attached declaration, his proposed examination is directed specifically at Plaintiff's mental condition and the reliability of her purported recovered memories, and therefore bears on conditions genuinely in controversy and for which good cause exists under Rule 35. As Dr. Hudson explains, the type of piecemeal inquiry Plaintiff proposes is unworkable and does not adhere to professional standards for clinical psychiatric evaluations.

There is likewise no merit to Plaintiff's suggestion that, as to all conditions other than PTSD, Defendant's expert must simply make do with medical records produced by Plaintiff's various providers. The very point of a Rule 35 examination is to prevent factfinders from relying "solely on the testimony of a plaintiff's own doctors, who may be biased towards the interests of their patients." *Silbernagel*, 2023 WL 2264277, at *5. That is especially true here, where, as Dr. Hudson explains, the medical records received from the period after Plaintiff claims to have recovered these memories are limited and lack important information. They are no substitute for a Rule 35 examination.

Equally meritless is Plaintiff's last-ditch attempt to disqualify Dr. Hudson from conducting the examination by manufacturing a conflict of interest. As the defense has repeatedly explained to Plaintiff—and as Dr. Hudson has reaffirmed in his declaration—Dr. Hudson has never communicated with Park Dietz and Associates, its principals or employees, Plaintiff, or Plaintiff's counsel about this case or about Plaintiff. Similarly, Dr. Hudson is not—and never has been—an employee of Park Dietz and Associates. Under these circumstances, the law is clear that no conflict of interest exists.

## II. <u>ARGUMENT</u>

A medical examination under Rule 35 "requires an affirmative showing by the movant that the mental or physical condition or injury as to which the examination is sought is genuinely in controversy, and that good cause exists for ordering the examination." *Gierer v. Rehab Medical, Inc.*, No. 4:14-CV-1382 CAS, 2016 WL 3346568, at *3 (E.D. Mo. June 16, 2016). The standard psychiatric evaluation proposed by Dr. Hudson easily meets both requirements, and Plaintiff's request for a Court order limiting the scope of the examination has no legal or factual basis.

### A. <u>Plaintiff Has Placed a Variety of Psychological Issues "In Controversy"</u>

Plaintiff argues that the Court should narrow the scope of Dr. Hudson's examination because the only dispute regarding her mental condition is her claimed PTSD. *See generally* Mot. at 6–9. That is not so. To identify the issues that a party has placed "in controversy," courts examine the pleadings and the evidentiary record. *Young v. City of Cambridge*, No. 2:09-cv-0038, 2010 WL 546361, at *1 (S.D. Ohio Feb. 10, 2010). In this case, both show that Plaintiff has placed far more than PTSD in controversy.

The Amended Complaint alleges that Plaintiff "suffered great . . . psychological injury," including "PTSD, anxiety, severe emotional distress, mental anguish, and depression" attributable

to purported childhood sexual abuse. Dkt. No. 53 ¶ 26 (emphasis omitted). [redacted] These broad-ranging assertions of purported harms dispel any notion that the only condition Plaintiff has placed at issue is "PTSD."

[redacted]

[redacted]

Under these circumstances, there is no basis for restricting Dr. Hudson's inquiry to PTSD. As Dr. Hudson explains in detail, the sort of piecemeal examination proposed by Plaintiff would countermand established psychiatric standards, Mot. at 11−14, particularly given the sweeping nature of her claims. Ex. 3, Declaration of Dr. James I. Hudson ("Hudson Decl.") ¶¶ 4, 8−10, 13. Having conducted hundreds of clinical exams and dozens of Rule 35 examinations, *id.* ¶ 13, Dr. Hudson—not Plaintiff's counsel—is best positioned to understand what questions are necessary to understand and assess Plaintiff's mental condition. *See Ren v. Phoenix Satellite Television (US), Inc.*, 309 F.R.D. 34, 37 (D.D.C. 2015) (collecting cases, finding that "the majority of cases defer to the expertise of the examiner and permit 'routine' examinations").

Notably, Plaintiff does not cite a single case where a court has restricted the scope of a Rule 35 exam under similar circumstances. *See generally* Mot. at 3–4 (citing cases that stand for the general proposition that Rule 35 examinations should relate to the issues in controversy). Instead, Plaintiff's principal authority remains *George-Sexton v. Lewis*, No. 06–6120–CV–W–HFS, 2009 WL 804070 (W.D. Mo. Mar. 25, 2009), the same case she previously cited in her motion requesting a conference, Dkt. No. 85 at 2.[2] That case does not support Plaintiff's argument;

[2] The absence of any such citation is telling, given that the Court specifically addressed *George-Sexton* during the parties' August 21 discovery conference and requested that Plaintiff provide the Court with on-point authority that would support Plaintiff's position.

to the contrary, it undermines it. The court in *George-Sexton* specifically declined to prohibit use of a "medical/psychological history assessment and forensic, clinical and medical examination to include personality and/or multi axial inventory and/or SIRS/TSI tests," as the plaintiff had requested, and merely reminded the examining party to "ensure that the examination is strictly limited to" information relevant to all of the injuries "as expressed by plaintiff" *without* predetermining which questions or tests would be appropriate. *George-Sexton*, 2009 WL 804070, at *11.

That outcome is unsurprising. Courts overwhelmingly give medical professionals broad latitude to ask questions and conduct exams when, as here, the plaintiff has placed a wide range of conditions at issue. *See, e.g.*, *Shannon*, 2018 WL 4698783, at *2 (declining to prevent examiner from asking questions regarding "previous treatment, other body parts, or facts unrelated to [the plaintiff's] neck, back and arms" where plaintiff may have preexisting injuries to other areas of the body that may affect his neck, back, and arms); *Delvecchia v. Frontier Airlines, Inc.*, No. 2:19-cv-01322-KJD-DJA, 2023 WL 1963162, at *2–3 (D. Nev. Feb. 13, 2023) (rejecting argument that plaintiff's IME should be limited only to tests assessing plaintiff's PTSD diagnosis); *Doe v. Provident Life & Acc. Ins. Co.*, 247 F.R.D. 218, 222 (D.D.C. 2008) (declining to limit IME to just psychiatric assessment where plaintiff claimed PTSD); *Abdulwali v. WMATA*, 193 F.R.D. 10, 14–15 (D.D.C. 2000) (authorizing range of psychological tests, gathering of past history, assessment of feelings and relationships, mental status examination, and more as part of IME given plaintiff's claim of serious emotional damage). The Court should afford Dr. Hudson the same latitude here.[3]

[3] Plaintiff's own brief cites to a case (*Doe v. Missionary Oblates of Mary Immaculate E. Province*, No. 1:22-CV-00381-LEW, 2023 WL 7282683, at *5 (D. Me. Nov. 3, 2023)) in which the court authorized Dr. Hudson to conduct an unrestricted Rule 35 examination under similar circumstances that included questioning into the plaintiff's "lifetime psychiatric history, including prior disorders, conditions, and treatment"; "developmental, familial, academic, social, and

### B. <u>There Is "Good Cause" for the Proposed Psychological Examination</u>

Good cause also exists to support Dr. Hudson's proposed examination. To show "good cause," the moving party "generally must offer specific facts showing the examination is necessary and relevant to the case." *Nguyen v. Qualcomm Inc.*, No. CIV. 09-1925-MMA WVG, 2013 WL 3353840, at *8 (S.D. Cal. July 3, 2013). Defendant has amply made such a showing here.

Dr. Hudson is an experienced psychiatrist and Professor of Psychiatry at Harvard Medical School whose research and publications have addressed childhood sexual abuse, the discredited theory of "repressed and recovered memories," dissociative amnesia, and trauma-related psychiatric conditions. Hudson Decl. ¶ 1. The SCID is a well-established, semi-structured diagnostic tool used to assess a broad range of psychiatric disorders, including PTSD, and provides an organizing framework for diagnostic assessment. Hudson Decl. ¶¶ 2–3. As Dr. Hudson explains, a psychiatric interview using questions derived from the SCID, as well as questions in a similar format covering other psychiatric and medical disorders, together with additional clinically appropriate questions based on Plaintiff's history, reported symptoms, and responses during the examination is a clinically necessary and standard means of evaluating the full range of psychiatric conditions implicated by Plaintiff's broad and encompassing allegations. Hudson Decl. ¶¶ 4–9.

In addition to assessing Plaintiff's past and present psychological state, Dr. Hudson's proposed questioning will allow him to determine any alternative causes for Plaintiff's present symptoms. Hudson Decl. ¶¶ 4, 8. Plaintiff's assertion that the IME should be narrowed because "the factual evidence clearly depicts the onset of PTSD stemming from abuse (e.g. not

---

occupational history;" "entire history of trauma or abuse and memories concerning those events"; "medical and medication history"; and "historical and present psychiatric symptoms and their effect upon her social, occupational, and other functioning." Mot. at 4–5 (citing Dkt. No. 92-12, Affidavit of Dr. Hudson, *Doe*, No. 1 :22-cv-00381-LEW (D. Me. Sept. 18, 2023)).

congenital)," Mot. at 9 (emphasis omitted), entirely misses the point. The purpose of Rule 35 is to allow the Defendant a fair and level opportunity to *test* Plaintiff's claims rather than presume their validity. To that end, as Dr. Hudson explains, his proposed questioning is necessary to explore (i) whether Plaintiff in fact suffers from any of the conditions she claims to suffer from, and (ii) whether some underlying disorder—rather than the alleged conduct in the Amended Complaint—may explain Plaintiff's belief that she suffers from these conditions and/or that she forgot then recovered these purported memories of sexual abuse. Hudson Decl. ¶¶ 4, 8. As the courts have recognized, "[a]ny potential pre-existing causes to Plaintiff's current, or past, conditions are relevant to Defendant's determination of the extent of Plaintiff's alleged damages." *Nguyen*, 2013 WL 3353840, at *8; *see also Batts v. Cnty. of Santa Clara*, No. C08–00286 JW (HRL), 2009 WL 2706397, at *2 (N.D. Cal. Aug. 25, 2009) ("[Defendant] is entitled to discover what other causes, if any, there are for plaintiff's claimed mental distress and psychological injuries.").

Preventing Dr. Hudson from conducting a broader inquiry would materially impair his ability to assess Plaintiff's current and past psychiatric conditions, identify any co-occurring disorders, determine the nature and severity of her symptoms, and evaluate whether causes other than the events alleged in this action may account for or contribute to those symptoms. Hudson Decl. ¶¶ 8, 13. Indeed, "without [this] psychological evaluation, [Defendant] would have no alternative method available to determine Plaintiff's past and present psychological state." *Rose v. Microchip Tech., Inc.*, No. CV 22-4352, 2023 WL 6164555, at *3 (E.D. Pa. Sept. 21, 2023).

Plaintiff's suggestion that the IME can be limited because Defendant has subpoenaed medical records from Plaintiff's providers is meritless. Mot. at 9−11. It is well established that medical records and depositions are not an adequate substitute for a Rule 35 examination. *See,*

*e.g.*, *Doe v. Dist. of Columbia*, 229 F.R.D. 24, 27–28 (D.D.C. 2005) (medical records and depositions insufficient "for defendant to ascertain the nature and extent of the injuries that resulted from the incidents alleged in this litigation"); *Funez v. Wal-Mart Stores E., LP*, No. 1:12–cv–0259–WSD, 2013 WL 123566, at *7 (N.D. Ga. Jan. 9, 2013) (Rule 35 examinations "are often necessary, even when the plaintiff's medical records are available, because there are few, if any, acceptable substitutes for a personal physical examination").

In any event, [redacted] Hudson Decl. ¶ 12. [redacted] *Id.* Notwithstanding the page counts listed in the Motion, [redacted] *Id.* In some instances, [redacted] *Id.*

Given the significance of Plaintiff's mental condition, [redacted] Hudson Decl. ¶¶ 11–13. The information Dr. Hudson will obtain through his SCID-based questioning simply "cannot be obtained by other means." *Young*, 2010 WL 546361, at *1; *see also* Hudson Decl. ¶ 11. This Court should permit him to proceed in accordance with standard psychiatric practice. *See Rose*, 2023 WL 6164555, at *3 ("Defendant has shown good cause for

its request to conduct an IME because without a psychological evaluation, it would have no alternative method available to determine Plaintiff's past and present psychological state.").

### C. <u>No Conflict of Interest Exists for Dr. Hudson</u>

Dr. Hudson does not have a conflict of interest. As the defense has *repeatedly* explained to Plaintiff, Dr. Hudson is not employed by the forensic consulting firm Park Dietz & Associates (PD&A) and has never communicated with PD&A about Plaintiff or this case. Hudson Decl. ¶¶ 15–16. The web page attached as an exhibit to Plaintiff's motion is a list of forensic experts whom PD&A may potentially connect with prospective clients seeking experts in particular fields. It is *not* a list of PD&A employees. Under these circumstances, no conflict exists. *See Stencel v. Fairchild Corp.*, 174 F. Supp. 2d 1080, 1087 (C.D. Cal. 2001) (declining to disqualify an expert where no confidential information was shared with the expert); *see Great Lakes Dredge & Dock Co. v. Harnischfeger Corp.*, 734 F. Supp. 334, 339 (N.D. Ill. 1990) (same).

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiff's request for a protective order and authorize Dr. Hudson to conduct the IME using a SCID-based framework of questioning.[4] "[P]laintiff has voluntarily brought this lawsuit and placed [her] mental and emotional injury in controversy." *Doe*, 229 F.R.D. at 28. She cannot avoid an examination intended to probe those purported injuries.

---

[4] As stated in the parties' joint stipulation and "[a]s discussed at the August 21, 2026 status conference, Plaintiff consents to an IME while reserving the right to file a motion limiting the scope of the IME, and therefore the defense is not required to file a motion for an IME under Rule 35)." *See* Dkt. No. 89 ¶ II(B). The defense has not, therefore, submitted a proposed order to the Court requesting it to order Plaintiff to submit to the examination. If, however, the Court would find such a proposed order to be helpful, the defense is prepared to submit one.

DATED: September 4, 2026

MUNGER, TOLLES & OLSON LLP

By: *\/s/ Hailyn J. Chen*

HAILYN J. CHEN #237436(CA) (*pro hac vice*)
hailyn.chen@mto.com
ADEEL MOHAMMADI #343137(CA) (*pro hac vice*)
adeel.mohammadi@mto.com
CORDELL A. BROWN #356447(CA) (*pro hac vice*)
cordell.brown@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

XIAONAN APRIL HU #1684593(DC) (*pro hac vice*)
april.hu@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW., Suite 500E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

DANE P. SHIKMAN #313656(CA) (*pro hac vice*)
dane.shikman@mto.com
MILES W. UNTERREINER #347959(CA) (*pro hac vice*)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

LIU SHUR KRAVIS LLP

By: *\/s/ Jonathan I. Kravis*

JONATHAN I. KRAVIS #973780(DC) (*pro hac vice*)
jonathan.kravis@lskllp.com
LIU SHUR KRAVIS LLP
607 14th Street N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100

HEPLER BROOM LLC

By: *     /s/ Thomas J. Magee     *
THOMAS J. MAGEE #32871(MO)
thomas.magee@heplerbroom.com
HEPLER BROOM LLC
701 Market Street
Suite 1400
St. Louis, MO 63101
Telephone: (314) 480-4212

*Attorneys for Defendant*