IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Ann Altman<br>PLAINTIFF<br><br>v.<br><br>Sam Altman<br>DEFENDANT | Civil Action<br><br>NO. 4:25-cv-00017-ZMB<br><br>Hon. Zachary M. Bluestone, USDJ<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER LIMITING THE SCOPE AND CONDITIONS OF PSYCHIATRIC INDEPENDENT MEDICAL EXAMINATION** |

**TABLE OF CONTENTS**

I. Introduction and Relief Sought ……………...…………………………………………1

II. Rule 35 IME’s Can Be Limited As to Scope…………………………………..……2

III. Plaintiff’s PTSD, Its Sequelae, and Other Personality Traits or Disorders Should Be Evaluated in Light of the Pleadings And Discovery ……..……………………………5

IV. In Light of Plaintiff’s Extensive Medical Records, Defendant Can Obtain the Requested Discovery Without an Invasive “Whole-Person” IME……..………………..… 8

V. Proposed IME SCOPE……………………………………..…………...……9

**TABLE OF AUTHORITIES**

CASES

*Aubuchon v. Tate Trucking, LLC,*
2025 WL 3012997 (E.D. Mo. Oct. 28, 2025)....................4

*Doe v. Missionary Oblates of Mary Immaculate E. Province,*
2023 WL 7282683 (D. Me. Nov. 3, 2023)....................4, 5

*Gade v. State Farm Mut. Auto. Ins. Co.,*
2015 WL 12964613 (D. Vt. Jan. 2, 2015)....................4

*George-Sexton v. Lewis,*
No. 06-6120-CV-W-HFS, 2009 WL 804070 (W.D. Mo. Mar. 25, 2009)....................1,2,3

*Neal v. Siegel-Robert, Inc.*,
171 F.R.D. 264 (E.D. Mo. 1996)....................1,4

*Schlagenhauf v. Holder*,
379 U.S. 104, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964)....................passim

*Shannon v. Ellis,*
2018 WL 4698783 (E.D. Mo. Oct. 1, 2018)....................4

*Vinson v. Superior Court*,
43 Cal. 3d 833 (1987)....................10

*Washam v. BNSF Ry. Co.,*
2020 WL 5237759 (E.D. Ark. Sept. 1, 2020)....................5

RULES AND STATUTES

Fed. R. Civ. P. 26(c)(1)....................2

Fed. R. Civ. P. 26(c)(1)(D)....................2

Fed. R. Civ. P. 35....................passim

Fed. R. Evid. 412....................10

OTHER AUTHORITIES

First, M.B., Williams, J.B.W., Karg, R.S. & Spitzer, R.L., *Structured Clinical Interview*

*for DSM-5 Disorders, Research Version (SCID-5-RV)* (American Psychiatric Association Publishing
2015)..........................................................................................................................10

**LIST OF EXHIBITS**

Exhibit A, Deposition Transcript Excerpts (under seal)

Exhibit B, August 13, 2026 IME Letter

Exhibit C, First Amended Complaint

Exhibit D, Plaintiff Answers to Interrogatories (under seal)

Exhibit E, Initial Disclosures (under seal)

Exhibit F *Sexton* Complaint.

Exhibit G *Sexton* IME Motion

Exhibit H, (Doe Nov 3, 2023 Decision involving James Hudson, MD)

Exhibit I, Hudson Doe Case Affidavit

Exhibit J, Plaintiff Partial Medical Records (under seal)

Exhibit K, PD&A Roster Listing Dr. James Hudson, MD

# I. INTRODUCTION

The plaintiff's argument in this motion is two-fold: **First,** the factual evidence clearly depicts the onset of PTSD stemming from abuse — and this is the only issue "in controversy", and **second**, even if the reasonable mental-health *sequelae* of the PTSD and abuse are "in controversy", defendant has obtained nearly every medical record from *twenty* providers, and was granted leave by this Court to depose nearly *ten* of them. In this context, an IME purporting to revisit diagnoses already extensively documented by Plaintiff's multiple treating providers is properly characterized as excessive and unduly burdensome, and risks **inflicting additional psychological trauma upon Plaintiff**.

Accordingly, the only issue "in controversy" in the case *sub judice* is plaintiff's PTSD - as depicted by the complaint, answers to interrogatories, plaintiff's deposition testimony, and her extensive medical records. Defendants have not made the requisite showing that *other* DSM V disorders or subclinical personality traits are "in controversy". *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964). More significantly, they have not conclusively established that plaintiff's extensive medical records are *insufficient* for diagnosis or identification of potentially related disorders or PTSD sequelae. Ibid at 118.

Notwithstanding, defendant's IME doctor now purports to conduct a comprehensive wholesale intrusion into the privacy of plaintiff's mind, by employing either SCID-5 Clinician Version **("SCID-5-CV")** or SCID-5 Research Version **("SCID-5-RV")**. Both of these modalities purport to examine dozens of other potentially unrelated disorders or PTSD sequelae, without the required "affirmative showing" that each such condition or disorder is "really and genuinely" in controversy. See *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964) ("each condition as to which the examination is sought [must be] really and genuinely in controversy") (emphasis supplied). See also *Neal v. Siegel-Robert, Inc.*, 171 F.R.D. 264, 267 (E.D.Mo.1996) (the mere fact that a plaintiff had requested emotional distress damages did not necessarily mean that a party has placed his mental capacity in controversy) and *George-Sexton v. Lewis,* No. 2009 WL 804070 (W.D. Mo. Mar. 25, 2009) (a sexual harassment/assault

case in which the court specifically directed that the examination be **"strictly limited" to the emotional injuries asserted by the plaintiff—fear, humiliation, marital discord, etc**.)

Moreover, the defendants in this case have in fact obtained dozens of medical records regarding plaintiff, and were granted leave to **depose exactly ten of the treating physicians** or providers whose records were also produced. If the defendants are seeking discovery, for instance, into a potential [redacted] diagnosis — the medical records have definitively answered that inquiry - no [redacted] is indicated. This point can be further inquired into at the provider depositions - or within the extensive provider medical records- thereby obviating the need for an intrusive IME. See *Schlagenhauf*, 379 U.S. at 118, ("*The ability of the [defendant] to obtain the desired information by other means is also relevant*.").[1]

**II. Rule 35 Exams Can Be Limited As to Scope Pursuant to Rule 26(c)(1)**

Rule 26(c)(1) authorizes the Court, for good cause, to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Among the remedies expressly available is an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters**."** Fed. R. Civ. P. 26(c)(1)(D). Foundational legal tenets regarding such limitations in the context of Rule 35 examinations begin with the seminal Supreme Court opinion *Schlagenhauf v. Holder, 379 U.S. 104 (1964).* In *Schlagenhauf ,* the Supreme Court limited the scope of the subject IME thus concluding that the record did not support examination in each of four specialities (internal medicine, ophthalmology, neurology, and psychiatry). Ibid. It rejected the "*wide-ranging* psychiatric or neurological examinations" in *that* case, and delineated the fundamental precepts of the proper scope of Rule 35 IME'S:

[1] Anticipating the defense's posture on this - that *Schlagenhauf* was decided in the context of a *plaintiff* seeking a *defendant's* IME, this argument fails. *Schlagenhauf* made no such distinction in its landmark ruling.

> [T]he "in controversy" and "good cause" requirements of Rule 35…. are not met by mere conclusory allegations of the pleadings -- nor by mere relevance to the case -- but require an affirmative showing by the movant that each condition as to which the examination is sought is **really and genuinely in controversy,** and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. **The ability of the [the moving party] to obtain the desired information by other means is also relevant.**

*Schlagenhauf,* 379 U.S. at 118. Notably - the Court did not limit this holding to IME's of defendants only - it is equally applicable in the context of a *defendant* seeking a *plaintiff's* IME.

Courts in this district and elsewhere have cited or otherwise relied on *Schlagenhauf* to limit the scope of IME's. In *George-Sexton v. Lewis,* No. 2009 WL 804070 (W.D. Mo. Mar. 25, 2009), the plaintiff had thus alleged that "*[d]efendant Lewis made unwanted sexual advances, forcibly placed Plaintiff's hand on his penis, and coerced her to have sex with him using his power over her as her employer*." See ¶34, Exhibit F (*Sexton* Complaint). Plaintiff had asserted *inter alia* claims for intentional infliction of emotional distress, alleging that she had suffered "***medically diagnosable and significant emotional distress***". ¶53, Exhibit F. Defendant then filed a motion to compel an IME, noting that "*[the defense examiner] has opined that this examination is necessary following a review of records furnished by the Plaintiff ... and following a review of the opinion issued by ..the Plaintiff's designated expert witness*."[2] The Court granted the motion and ordered the examination, notably directing that it be **"strictly limited" to the emotional injuries asserted by the plaintiff—fear, humiliation, marital discord, etc.** Ibid at *21 ("*I would strongly urge defendant to ensure that the examination is strictly limited to these areas.*").

[2] In the case sub judice - the proposed IME doctor has done neither, and has further not stated why review of hundreds of pages of dozens of medical files of plaintiff's providers, along with the scheduled depositions of said providers, is insufficient for his assessments.

In a more recent Missouri Eastern District case, *Shannon v. Ellis*, 2018 WL 4698783, at *6 (E.D. Mo. Oct. 1, 2018), this Court endorsed the proposition that "*plaintiff should not be examined or questioned regarding health conditions* ***'wholly unrelated to her lawsuit'***" Ibid. (citing *Gade v. State Farm Mut. Auto. Ins. Co.,* 2015 WL 12964613 (D. Vt. Jan. 2, 2015)). And in *Aubuchon v. Tate Trucking, LLC*, 2025 WL 3012997 (E.D. Mo. Oct. 28, 2025) , this Court again applied Rule 26(c) to a Rule 35 examination dispute and held that the examination would be **limited to the portions of the plaintiff's body claimed to have been injured**. The Court expressly relied upon *Shannon*'s recognition that examination should remain tied to the issues raised by the plaintiff's claims.

In addition to the foregoing, Courts in this district have also held that merely asserting damages for emotional distress is not in itself conclusive that the plaintiff' mental capacity is *genuinely* "in controversy". See .e.g. *Neal v. Siegel-Robert, Inc*., 171 F.R.D. 264, 267 (E.D.Mo.1996). Similarly, in *Doe v. Missionary Oblates of Mary Immaculate E. Province*, 2023 WL 7282683 (D. Me. Nov. 3, 2023), a case involving **child sexual abuse and an IME by James Hudson, MD** - whom the defendants are proposing herein also examine plaintiff - the Court cited *Schlagenhauf* and stated that "*[t]he examination shall be limited to the interview-based assessment described in Dr. Hudson's affidavit (ECF No. 49-1)*". Ibid at *5. See Exhibit H. (*Doe* Nov 3, 2023 Decision).

Dr. Hudson's Affidavit in *Doe* had set forth the scope for the IME:, which included plaintiff's lifetime psychiatric history, including prior disorders, conditions, and treatment; her developmental, familial, academic, social, and occupational history; her entire history of trauma or abuse and her memories concerning those events; her medical and medication history; and historical and present psychiatric symptoms and their effect upon her social, occupational, and other functioning. See Exhibit I (Dr. Hudson September 18, 2023 Affidavit).

Notably - the *Doe* court in ordering the IME as per this affidavit (with limits stated *supra*) had stated that the subject abuse had **spanned almost seventy years**, and that the records available for review were an **insufficient alternative-means** to obtain the needed discovery, stating that the court was "*not persuaded that a less intrusive alternative—such as relying on medical records or depositions—will suffice given the nature of her pleadings and [her expert's] expected testimony*"**.** *Doe*, 2023 WL 7282683 at 6 (D. Me. 2023) See Exhibit H. (*Doe* Nov 3, 2023 Decision). Defendants in that case had characterized the medical records reviewed as "***a handful of mostly handwritten notes from her treatment with a counselor and [plaintiff's expert]*"**. Ibid at 5**.**

In contrast, as discussed *infra*, **plaintiff in the instant case has visited nearly two dozen providers in her short life span**, and most if not all of her medical records have been produced, which include **hundreds of pages of setting forth detailed diagnoses and observations**. Further, the depositions of nearly a dozen of the providers have been noticed and approved by this Court. Ergo - there is no basis or need for the defense IME to test for any other condition besides causation of the identified PTSD. *Schlagenhauf*, 379 U.S. at 118 ("*The ability of the [defendant] to obtain the desired information by other means is also relevant*.")[3]

## III. Plaintiff's PTSD, Its Sequelae, and Other Personality Traits or Disorders Should Be Evaluated in Light of the Pleadings And Discovery

### A. The Nature of the Trauma Which Gave Rise to PTSD - The Use of Teddy Bear Pancake and Toys to Abuse Plaintiff

Plaintiff's credible, consistent deposition testimony — wherein she testified while knitting for comfort — paints a picture of progressive abuse beginning when she was a

[3] See also *Washam v. BNSF Ry. Co.*,2020 WL 5237759 (E.D. Ark. Sept. 1, 2020) in which the Court expressly found that "*Rule 35 is unique among the discovery rules for its 'in controversy' and "good cause" requirements, which 'indicate that there must be a* ***greater showing of need****' compared to the other discovery rules. Schlagenhauf , 379 U.S. at 118.*" Ibid at *5. In the case *sub judice* - given hundreds if not thousands of pages of medical records which include diagnosis, along with the depositions of the providers, such a "greater showing of need" has not been established.

toddler, followed by her — having been groomed — [redacted][4] This was then followed by specific, detailed incidents involving defendant using a beloved children's artifact — her Teddy Bear Pancake — [redacted].[5] She also recalled the use of Toys during the abuse — and recalled that she often projectile vomited.

**The foregoing compelling facts, it is respectfully submitted, along with her compelling testimony at her eight hour deposition, set forth the trauma which gave rise to PTSD**. This is not a case about "repressed" memories which were "recovered", but rather a case wherein plaintiff developed defensive mechanisms to cope with at least [redacted] of sexual abuse. See Exhibit D (Interrogatory Answer No. 6)(sealed).

### B. Conscious Defensive Suppression of Memories of Abuse, Not "Repressed" or Forgotten Memories

Plaintiff did not "forget" the incidents of abuse, but rather *consciously* suppressed them, to avoid [redacted]. After 2020 when she went no contact with her family, she was at liberty to think independently, and through therapy was able to feel explore the abuse without [redacted]

[redacted]

See Generally Exhibit A.

---

[4] E.g. Plaintiff's Deposition, 93:8-16, ("[redacted]"), See Exhibit A.

[5] (Plaintiff Deposition, 310:9-15), Exhibit A, ("[redacted]

She recalls most abuse of her as a toddler through her *feelings* mostly - e.g. not the details of actual incidents - and through her frequent projective vomiting.[6] As she got older, she was able to causally relate her feelings as a toddler to actual abuse, since she had clearer memories of the abuse when she was school-age. Overall, the following testimony best explains the nature of her "memories" as well as [redacted]

[redacted]

See Exhibit A.

Plaintiff's detailed testimony at her eight hour deposition, readily comports with the traumatic incidents of abuse she publicly disclosed in her amended complaint.[7]

---

[6] See Plaintiff's Deposition, 55:6-9, Plaintiff Deposition, 57:23-25; 58:1-5 ("*Very vague [memory of]* [redacted]"), Plaintiff's Deposition, 41:19-22 ("[redacted]"). Exhibit A.

[7] See Exhibit C. (April 1, 2026 Amended Complaint, ¶4-10, from 1997 to 1999, touched defendant's penis and oral penetration (3 to 5 years old), abuse then progressed to digital penetration, oral sex on plaintiff; She was groomed in 1999 to 2000, and penetration.)

The foregoing sets forth the only plausible conclusion - **plaintiff suffers from no congenital or genetic mental disorders** - she was abused, repeatedly, and traumatized, thereby reasonably suffering Post Traumatic Stress Disorder (PTSD)- which was formally diagnosed by her providers and is plausible and reasonable in light of the trauma. She suffers from nothing else, and any related *sequelae* stemming from the PTSD should be assessed- not as congenital or as a means to challenge her memories - but rather as the expected cause of such horrific behavior by her own trusted sibling.

Additionally, as set forth *infra,* plaintiff in her short life span has been under the treatment of **twenty or more providers** and mental health professionals - not because of some congenital or genetic anomaly - but because of the repeated abuse by someone who should have been her protector and mentor - not her groomer or rapist.

### IV. In Light of Plaintiff's Extensive Medical Records, Defendant Can Obtain the Requested Discovery Without an Invasive "Whole-Person" IME

Assuming arguendo that the reasonable mental-health *sequelae* of the PTSD and abuse *are* "in controversy," defendant has obtained nearly **every medical record from *twenty* providers**, and was granted **leave by this Court to depose nearly *ten* of them**. This is excessive - and more importantly - obviates the need to have an expert further assess the reasonable PTSD *sequelae*. Defendants can readily discern these collateral mental conditions through the upcoming **provider depositions (nearly ten of them)** - as well as through the extensive (hundreds if not thousands of pages) medical records in their possesion, which inter alia ruled out "[redacted]" and targeted the issue of [redacted] - some records finding same was "endorsed", other records stating [redacted] was not endorsed by plaintiff- this later "non-endorsement" of [redacted] likely stemming from her repeated visits with therapists after she left her home in 2020. See *Schlagenhauf*, 379 U.S. at 118 ("*[t]he ability of the [party requesting the IME] to obtain the desired information by other means is also relevant*.")

As the record reflects, plaintiff has been treated by nearly two dozen providers and mental health professionals in her short life span. See E.g. Exhibit D

(Interrogatory Answers #2 - list providers treated with since 1994, 20 providers listed) (sealed). The record also shows this Court has approved the deposition of nearly ten of them, this topic having been raised by plaintiff, who appeared before this Court on August 3, 2026, and was advised the provider depositions may proceed. See, e.g., ECF 78 (Plaintiff's Submission of July 17, 2026 stating that the provider depositions were excessive).

These providers include: [redacted] *with her therapist Ben Hamoon…*". See Exhibit J.

The foregoing records (along with nearly a dozen more) rule out [redacted] and [redacted] and instead paint a picture of a **traumatized plaintiff who has sought refuge in therapists and psychologists** since setting herself "free" in 2020.

## V. Proposed IME SCOPE

First, plaintiff respectfully requests, first, that she be **allowed to knit** during the

examination, as she did at her deposition. Second, the IME should be limited in scope, and inquiry into the victim's sexual history should be barred pursuant to FRE 412.

The defendant's proposed scope for the IME includes a clinical psychiatric interview based on the Structured Interview for DSM-5 (SCID), and questions "**regarding other disorders**". See Exhibit B. Notably, this description does not set forth which *version* of SCID will be employed among two such versions. The **Research Version ("SCID-5-RV")** includes numerous "modules", including "Module L" - which addresses PTSD and related disorders. In contrast, "**Module G"** of the "**Clinician Version ("SCID-5-CV"),** includes inter alia *PTSD*.[8] Since the extensive medical record already encompasses other potential disorders (e.g. [redacted] discussed *supra*), Plaintiff requests that Dr. Hudson first identify which SCID version he will use, and if the "Research Version" is used, that the exam be limited to the **PTSD component of Module L**, (PTSD). If the "Clinician Version" is used, the exam should be limited to the PTSD component of Module G.

There have also been attempts in the case sub judice to inquire - and explore - topics within the realm of Federal Rule of Evidence 412 - which contemplates that sexual behavior-based evidence is generally inadmissible. See generally, *Vinson v. Superior Cour*t, 43 Cal. 3d 833 (1987), (barring inquiry into the victim's sexual history for an IME). It is therefore respectfully submitted that the order include a provision barring discussion, review, or examination of this topic - as same would only only be inadmissible - but also significantly traumatize a victim of abuse.

DATED: September 10, 2026
*/s/ Santos A. Perez, Esq.*
***Attorney for Plaintiff***
***Pro Hac Vice***

[8] See generally First, M.B., Williams, J.B.W., Karg, R.S. & Spitzer, R.L., *Structured Clinical Interview for DSM-5 Disorders, Research Version (SCID-5-RV)* (American Psychiatric Association Publishing 2015); Columbia University Department of Psychiatry, SCID-5 Research Version Core Coverage.