**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANN ALTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:25-cv-00017-ZMB |
| | ) | |
| SAMUEL ALTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS**

**PUBLIC / REDACTED**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 2
III. ARGUMENT .......... 8
    A. Dismissal with Prejudice is Appropriate Under Rule 37(b)(2)(A) .......... 8
    B. Dismissal with Prejudice is Appropriate Under Rule 41(b) .......... 11
        1. Plaintiff Has Acted in Willful Disobedience of a Court Order .......... 12
        2. Plaintiff Has Exhibited a Pattern of Intentional Delay .......... 12
    C. Lesser Sanctions are Futile .......... 14
IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**


*Boudy v. McComb Sch. Dist.*,
168 F.4th 257 (5th Cir. 2026) ....................13

*Brown v. Frey*,
806 F.2d 801 (8th Cir.1986) ....................12

*Buergofol Gmbh V. Omega Liner Company, Inc.*,
No. 4:22-CV-04112-KES, 2026 WL 2185492 (D.S.D. July 29, 2026)....................14

*Caussade v. United States*,
293 F.R.D. 625 (S.D.N.Y. 2013) ....................11

*DuBose v. State of Minn.*,
893 F.2d 169 (8th Cir. 1990) ....................12

*Hunt v. City of Minneapolis*,
203 F.3d 524 (8th Cir. 2000) ....................11, 12

*Mager v. Wisconsin Cent. Ltd.*,
924 F.3d 831 (6th Cir. 2019) ....................9

*Meyer v. Target Corp.*,
No. C 09-3293 JL, 2010 WL 3080195 (N.D. Cal. Aug. 6, 2010)....................9

*Moore v. St. Louis Music Supply Co.*,
539 F.2d 1191 (8th Cir. 1976) ....................12

*Rodgers v. Curators of Univ. of Missouri*,
135 F.3d 1216 (8th Cir. 1998) ....................13, 14, 15

*Sample v. Am. Nat'l Red Cross*,
No. 21-CV-2005 (JMF), 2023 WL 123203 (S.D.N.Y. Jan. 6, 2023) ....................9, 11, 12

*Schempp v. Reniker*,
809 F.2d 541 (1987)....................9

*Schmidt v. Sacred Heart Health Servs.*,
No. 4:24-CV-04209-CCT, 2026 WL 2070275 (D.S.D. July 17, 2026)....................12

*Schoffstall v. Henderson*,
223 F.3d 818 (8th Cir. 2000) ....................9

*Sloane v. Thompson*,
128 F.R.D. 13 (D. Mass. 1989) .....14

*Welsh v. Auto. Poultry Feeder Co.*,
439 F.2d 95 (8th Cir. 1971) .....12

**FEDERAL RULES**

Fed. R. Civ. P. 33 .....7

Fed. R. Civ. P. 37 .....8, 9, 11, 15

Fed. R. Civ. P. 41 .....1, 11, 12, 15

## I. INTRODUCTION

Plaintiff Anne Altman did not appear for her September 16, 2026, independent medical examination. Her counsel told her that failure to appear could result in dismissal, and she still chose not to show up. The defense expert flew from Boston to Hawaii—a location chosen to accommodate Plaintiff—and waited for hours at the designated location, only to turn around and fly home. Plaintiff's purported excuse—[redacted]—is both incredible and belied by her prolific social media activity over the last week.

Plaintiff's refusal to appear for her IME is just the latest in a long pattern of delay, obstruction, and disobedience of court orders that have irreparably prejudiced Defendant. Plaintiff's IME—as well as her deposition—had already been delayed by her elective ankle surgery and her frivolous motion to limit the scope of the examination. Her refusal to attend the scheduled IME throws into disarray a compressed expert discovery schedule that was crafted to accommodate Plaintiff's failure to meet the original disclosure deadline. Plaintiff has also refused to verify certain interrogatory responses and to provide critical records authorizations despite repeated requests. And she has yet to produce the discovery the Court ordered her to produce no later than August 10. Plaintiff's prior representations to the Court that she was unable to participate in discovery for extended periods as a result of her elective surgery are undermined by [redacted]

In light of Plaintiff's repeated and persistent refusal to engage in discovery, culminating in her failure to appear at the IME, dismissal is warranted as a sanction for willful disobedience of a court order under Federal Rule of Civil Procedure 37(b)(2) and for failure to prosecute under Rule

41(b). In addition, Plaintiff should be ordered to pay the travel costs incurred by the defense expert.

## II. <u>FACTUAL BACKGROUND</u>

Plaintiff's refusal to participate in discovery began in April after her former attorneys moved to withdraw. On April 28, 2026, one day after the motion to withdraw was filed, Plaintiff moved to extend various pleading and discovery deadlines pending her retention of new counsel. Dkt. No. 59. The Court denied Plaintiff's request. Dkt. No. 62. Instead, the Court paused discovery for three weeks to give Plaintiff time to secure new counsel and set a status conference for the end of that three-week period. *Id.*

At the status conference, Plaintiff reported that she had not secured new counsel, and so Plaintiff began proceeding *pro se*. Dkt. No. 63. Plaintiff "confirmed her understanding that she must follow the Federal Rules of Civil Procedure and the Eastern District of Missouri Local Rules and that *she must meet all deadlines set in this case.*" *Id.* (emphasis added). Shortly after that status conference, on June 2, the defense sent Plaintiff a comprehensive discovery letter setting out all pending discovery issues, including scheduling Plaintiff's deposition and IME. Decl. of Jonathan I. Kravis ("Kravis Decl."), Ex. A. To accommodate Plaintiff's recent surgery, the defense offered to allow Plaintiff to appear by Zoom for third-party depositions. *Id.* at 4. The defense requested a response by June 8. *Id.*

Plaintiff did not send the defense a substantive response to that letter. Instead, on June 12, Plaintiff requested an extension of all case deadlines, citing her desire to find new counsel as well as "complications" from "major ankle surgery." Dkt. No. 69 at 1. Plaintiff's medical records show that, one week before she filed this motion, Plaintiff told her physician that [redacted] Kravis Decl., Ex. B at PR0000910. [redacted] *Id.*

The Court denied Plaintiff's request for an extension and cautioned Plaintiff that she "must work diligently to meet the discovery-completion date of October 23, 2026." Dkt. No. 72. The defense sent follow-up emails and letters to Plaintiff on June 11, June 21, June 23, July 3, and July 7, all of which she ignored. Kravis Decl., Exs. C, D. During the one-month period when she refused to respond to defense discovery correspondence, Plaintiff posted extensively to her various social media accounts nearly every day. Kravis Decl., Ex. E (Twitter) at 87–130, Ex. F (TikTok) at 74–127.

On July 9, the defense filed a motion requesting a conference to discuss the many pending discovery items Plaintiff had ignored. Dkt. No. 74. The Court issued an order on July 10 stating that Plaintiff "must work with opposing counsel to resolve the discovery issues. If she finds that the differences are truly irreconcilable, she must work with opposing counsel to file an amended joint request for an informal conference. In any event, she must complete either of these tasks no later than July 17, 2026." Dkt. No. 75. After a meet-and-confer call on July 17, Plaintiff refused to file a joint discovery motion—as the Court's July 10 order had required her to do—and instead insisted on filing a separate motion herself. Kravis Decl. ¶ 2; Dkt. No. 78, Dkt. No. 79.

The Court then ordered Plaintiff to respond to the pending discovery requests she had failed to answer by August 10 and to attend her August 17, 2026 deposition in person. *See* Dkt. No. 80. Plaintiff did attend her deposition but did not address the pending discovery requests—several of which remain outstanding today. *See* Dkt. 108.

On July 31, the defense disclosed to Plaintiff the identity of the expert who would be taking her IME, together with a copy of his CV. Kravis Decl. ¶ 7.

Under the original case management order, Plaintiff was required to disclose her experts by August 3, 2026. Dkt. No. 47 at 1. Plaintiff did not comply with this deadline. Kravis Decl.

¶ 3. When Plaintiff's current counsel entered the case, the defense agreed to a new expert discovery schedule. That schedule, which the parties jointly filed with the Court, required Plaintiff to disclose her expert by September 10 and to make the expert available for a deposition by September 16. Dkt. No. 89. Plaintiff promptly reneged on this schedule, refusing to make her expert available for deposition until late September. Kravis Decl., ¶ 9; *id.* Ex. G. That deposition is currently scheduled for September 28. Kravis Decl. ¶ 9.

The joint expert discovery schedule stated that Plaintiff consented to an IME and built in time for Plaintiff to seek a protective order limiting the scope of the examination to a diagnosis of PTSD. Dkt. No. 89 at 2. The schedule set the IME for September 16. *Id.* To accommodate Plaintiff, the defense expert agreed to travel to Hawaii to perform the IME. Kravis Decl. ¶ 5.

On September 9, while Plaintiff's motion for a protective order was pending, Plaintiff served the expert report of Dr. Darsi Beauchamp. Dkt. No. 97 at 2. Dr. Beauchamp's report states that she [redacted] *See id.* Plaintiff's counsel did not designate the report or the accompanying materials as Confidential under the Protective Order. Dkt. No. 101 at 1.

On September 11, 2026, the defense filed a short notice regarding Plaintiff's motion, advising the Court that Dr. Beauchamp's examination and report reached well beyond the limited scope that Plaintiff's motion had requested for the *defense* IME—and contradicting Plaintiff's claim that only PTSD was at issue. Dkt. No. 97. The defense's notice included two sentences describing the tests performed by Dr. Beauchamp. *Id.* at 2. The notice did not mention Dr. Beauchamp's diagnoses or any statements made by Plaintiff to Dr. Beauchamp. *Id.* Because Plaintiff designated neither the report nor its accompanying materials as Confidential, Dkt. No. 101, the defense filed its notice on the public docket.

On the morning of September 11, Plaintiff's counsel emailed the defense to request that Dr. Beauchamp's report and materials be treated as Confidential under the protective order. Kravis Decl., Ex. H. The defense promptly filed a redacted version of its earlier notice. Dkt. No. 100. That evening, the Court ordered Plaintiff to file a response, addressing why the Beauchamp report did not "undermine Annie's asserted need for a protective order to limit the scope of the IME" and stating that "if she intends to put these conditions at issue, Annie must explain why this information should be filed under seal." Dkt. No. 102. Plaintiff's response (which was filed two days late) did not address the sealing issue. Dkt. No. 103.

On Sunday, September 13, Plaintiff's counsel emailed defense counsel to announce that "this IME may have to be rescheduled and this may be beyond my means to control," with no further explanation. Kravis Decl., Ex. I at 3. Given the short time remaining in discovery due to Plaintiff's repeated delays, defense counsel explained that the defense would not agree to reschedule the September 16 IME. *Id.* at 1. Later that evening, Plaintiff counsel emailed defense counsel again, asserting that Plaintiff might not attend the IME as a result of [redacted]. Kravis Decl., Ex. J at 1. Plaintiff's counsel acknowledged that he told his client about *"the possibility of sanctions – including dismissal – if this IME d[id] not take place." Id.* (emphasis added). Plaintiff's counsel emailed again on September 14, claiming that Plaintiff was experiencing [redacted] while again acknowledging that Plaintiff's failure to appear for her IME "*may result in dismissal*." Kravis Decl., Ex. K at 1 (emphasis added).

While she was purportedly experiencing [redacted] between September 10 and 14, Plaintiff posted on social media 35 times on a variety of topics, including

homemade baked muffins, the abilities of an actress, and her own podcast. Kravis Decl., Ex. E at 3–12.

At a meet and confer on September 14 to address other discovery issues, the defense again advised Plaintiff's counsel that the defense would not agree to reschedule the IME and that the defense expected Plaintiff to appear. Kravis Decl. ¶ 4. Later that day, the Court denied Plaintiff's motion for a protective order limiting the scope of the IME. Dkt. No. 104. In preparation for the IME, the defense's IME examiner traveled from the East Coast by air to Hawaii; a videographer flew in from a separate Hawaiian island. Kravis Decl. ¶ 5.

The following evening of September 15, Plaintiff's counsel emailed defense counsel to announce that Plaintiff was experiencing [redacted], and therefore Plaintiff might not attend the IME. Kravis Decl., Ex. L. That evening, Plaintiff continued posting extensively on social media—on topics ranging from "the ending-of-Monsters-Inc-powered-by-giggles timeline" to "witchcraft" to the statement "Make America Councils of Grandmas Again." Kravis Decl., Ex. E at 2–3.

Notwithstanding her counsel's warning about the consequences, Plaintiff chose not to appear for her IME on September 16. Later that day, Plaintiff's counsel sent the defense a short doctor's note stating, in relevant part, [redacted] Kravis Decl., Ex. M. The note did not explain [redacted] Later that same day, the defense requested and received records of the telehealth appointment on which the doctor's note was based. Kravis Decl., Ex. N. These medical records show that [redacted] *Id.* The records

mention that Plaintiff [redacted][1] and that Plaintiff was [redacted] *Id.*

The doctor's note also said that Plaintiff [redacted] The note asked for [redacted] Kravis Decl., Ex. M. The note did not specify [redacted] *Id.* Plaintiff has known the identity of the expert conducting her IME since July 31, knew he is male, *see* Kravis Decl. ¶ 7, and did not, until the afternoon of September 16, disclose (through a doctor's note) that [redacted] The records of Plaintiff's September 15 telehealth visit show that Plaintiff herself told the doctor [redacted] Kravis Decl., Ex. N. There is no mention in that record of any [redacted] The record goes on, [redacted] *Id.*

In addition to skipping her IME, Plaintiff also repeatedly refused to comply with basic, uncontroversial discovery requests, several of which are the subject of a separate motion filed by the defense. Dkt. No. 108. Plaintiff has given incomplete and evasive answers to interrogatories, and refused to verify several of her responses, as required by Rule 33. Kravis Decl., Ex. O. She has refused to fully respond to basic discovery requests that have been pending for months,

---

1 [redacted] Kravis Decl., Ex. B at PR0000904.

including a request for relevant entries from her diary and for recordings of any conversations with her family. *Id.* She still has not produced all responsive communications from messaging accounts, despite a Court order to complete this production by August 10. *Id.* For over a month, Plaintiff claimed that she could not remember the names of the EMDR therapists who treated her in Hawaii around the time she began experiencing "flashbacks." Kravis Decl., Ex. P at 1. When the defense advised its intent to file a motion to compel, Plaintiff finally disclosed the name of one previously-unidentified therapist, while refusing to provide an authorization for this provider's medical records and refusing to verify an interrogatory on this issue. Kravis Decl., Ex. Q; *id.*, Ex. O. Plaintiff has also refused to provide an authorization for school records that she put at issue in her deposition testimony. Kravis Decl., Ex. O.

Defendant has agreed to make himself available for a deposition on Monday, September 21—Yom Kippur—because Plaintiff's counsel refused to schedule his deposition in early October. Kravis Decl. ¶ 8. Absent a court order on this motion or on discovery more broadly, Defendant will proceed with that deposition.

## III. <u>ARGUMENT</u>

Plaintiff's egregious and willful refusals to participate in discovery in good faith warrant dismissal under Federal Rules of Civil Procedure 37(b)(2)(A) (allowing for terminating sanctions for willful discovery abuses) and 41(b) (allowing involuntary dismissal for failure to prosecute or violation of court orders).

### A. <u>Dismissal with Prejudice is Appropriate Under Rule 37(b)(2)(A)</u>

Federal Rule of Civil Procedure 37(b)(2)(A) permits the court to sanction a party for failure "to obey an order to provide or permit discovery, including an order under Rule 26(f), 35 [the rule regarding independent medical examinations], or 37(a)." Fed. R. Civ. P. 37(b)(2)(A). The Rule expressly empowers the Court to dismiss an action if appropriate. Fed. R. Civ. P.

37(b)(2)(A)(v). To justify a sanction of dismissal, Rule 37 requires: "(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party." *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000). Each of those requirements is satisfied here.

First, Plaintiff was under a court order to attend the IME. In the joint expert discovery schedule filing, Plaintiff confirmed that she consented to an IME on September 16. Dkt. No. 89. And the Court's order denying Plaintiff's motion to limit the IME directed the examination to proceed as proposed by the defense expert. Dkt. No. 104. Under these circumstances, Rule 37's requirement of an order compelling discovery is satisfied. See Fed. R. Civ. Proc. 37(b)(2)(A) (expressly identifying "an order under Rule ... 35" as an order whose violation triggers sanctions).

Second, Plaintiff willfully violated that order. Plaintiff knew (from her counsel) that she could face sanctions including dismissal for refusing to attend the IME. She nonetheless made a knowing and intelligent choice not to appear, in direct violation of the Court's orders. Such conduct has repeatedly been found to be sufficient for dismissal under Rule 37. *See, e.g.*, *Mager v. Wisconsin Cent. Ltd.*, 924 F.3d 831, 838 (6th Cir. 2019) (finding willful violation where totality of circumstances surrounding Plaintiff's failure to effectively participate in IME demonstrated bad faith); *Schempp v. Reniker*, 809 F.2d 541, 543 (1987) (affirming dismissal with prejudice under Rule 37, noting that, "[o]nce it is established that examination ... is needed ..., there can be no valid objection to the District Judge's order that the examination be conducted in accordance with accepted professional procedures and standards"); *Sample v. Am. Nat'l Red Cross*, No. 21-CV-2005 (JMF), 2023 WL 123203, at *2 (S.D.N.Y. Jan. 6, 2023) (granting dismissal with prejudice under Rule 37 where Plaintiff failed to appear for an IME); *Meyer v. Target Corp.*, No. C 09-3293 JL, 2010 WL 3080195, at *6 (N.D. Cal. Aug. 6, 2010) ("Having

failed to attend her deposition and her IME as ordered by the court, ... it is apparent that Plaintiff is willfully disobeying this Court's order.").

Plaintiff's excuses for skipping the IME are not credible. The suggestion that Plaintiff could not attend the IME because she was [redacted] is absurd. That notice included two sentences identifying the tests performed by plaintiff's expert—it did not mention any diagnosis or any statements made by plaintiff to the expert. Plaintiff did not designate this material as "Confidential" when it was served. And Plaintiff declined the Court's invitation in its September 11 text order to address the sealing of these materials. Plaintiff also has known since July 31, when the defense disclosed the identity of the expert conducting the IME, that the expert is male. She did not raise with the defense any concerns about the gender of the expert until after she had already skipped the IME.

Plaintiff's post-hoc doctor's note is equally implausible. That note was based entirely on [redacted] Kravis Decl., Ex. N. If Plaintiff truly had been ill, her counsel would have just said so in his emails to defense counsel on Sunday, rather than vaguely stating that Plaintiff "may" not appear [redacted]. And of course, both [redacted] are belied by Plaintiff's prolific social media activity over the last five days. Finally, the medical record shows that [redacted]

Third, Plaintiff's refusal to appear for the IME has greatly prejudiced the defense. The parties were already operating on a compressed expert discovery schedule to accommodate Plaintiff's failure to designate an expert by the original deadline. Plaintiff's expert, who had the opportunity to examine Plaintiff, is scheduled to be deposed in 11 days—and an IME performed by the defense expert was critical to the preparation for that deposition. Defendant's expert reports are due in less than a month—Plaintiff's IME is critical to those reports as well. As a result of Plaintiff's refusal to attend the IME, it is effectively impossible for the defense experts to perform their work on the current case schedule.

Under these circumstances, the balance of interests "tips decidedly in favor of the Court's need to reduce docket congestion—and against the plaintiff's right to be heard—as [Plaintiff] has shown little interest in prosecuting this case." *Caussade v. United States*, 293 F.R.D. 625, 631 (S.D.N.Y. 2013). As the *Caussade* court further explained, "[b]ecause [the plaintiff] has made no effort to prosecute this action, it would be unfair to the numerous other litigants who await the attention of this Court to permit her suit to remain on the docket." *Id.*; *see also Sample*, 2023 WL 123203, at *4 (dismissing claims pursuant to Rule 37 where Plaintiff failed to appear for IME and deposition).

**B. <u>Dismissal with Prejudice is Appropriate Under Rule 41(b)</u>**

Dismissal is also appropriate under Federal Rule of Civil Procedure 41(b), which "permit[s] dismissal with prejudice '[f]or failure of a plaintiff to prosecute or to comply with [the Federal Rules of Civil Procedure] or any order of court.'" *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000) (quoting Fed. R. Civ. P. 41(b)). Dismissal with prejudice is warranted "in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay." *Id*. In assessing dismissal under Rule 41(b), the court considers "whether in the particular circumstances of the case the needs of the court in advancing a crowded docket and

preserving respect for the integrity of its internal procedures are sufficient to justify the harsh consequences of forever denying a litigant his day in court." *Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1193 (8th Cir. 1976). A court need not find that the plaintiff acted in bad faith, only that they acted intentionally and not accidentally or involuntarily. *E.g.*, *Welsh v. Auto. Poultry Feeder Co.*, 439 F.2d 95, 97 (8th Cir. 1971). Those standards are satisfied here.

**1. Plaintiff Has Acted in Willful Disobedience of a Court Order**

As discussed above, Plaintiff's conduct amounts to willful disobedience of a court order. This Court directed Plaintiff to agree upon a date for her IME. Dkt. No. 88. Plaintiff consented to the IME, agreed on the date of September 16, and then failed to appear. She did so knowingly, after her attorney advised her that doing so could result in dismissal of the case. Under circumstances such as these, courts have found dismissal warranted under Rule 41(b) for willful disobedience. *See, e.g.*, *Sample*, 2023 WL 123203, at *4 (dismissing claims pursuant to Rule 41(b) where Plaintiff failed to appear for IME and deposition).

**2. Plaintiff Has Exhibited a Pattern of Intentional Delay**

Plaintiff's decision not to attend the IME is just the latest instance of her willful failure to participate in good-faith discovery in this case. For the last five months, Plaintiff has refused to comply with basic discovery obligations, making this case impossible for the defense to litigate. Plaintiff's pattern of "delay or contumacious conduct" independently warrants dismissal with prejudice under Rule 41(b). *DuBose v. State of Minn.*, 893 F.2d 169, 171 (8th Cir. 1990) (quoting *Brown v. Frey*, 806 F.2d 801, 803–04 (8th Cir. 1986)).

Where the "record adequately reflects a lengthy period of intentional delay," courts have repeatedly granted dismissal with prejudice pursuant to Rule 41(b). *Schmidt v. Sacred Heart Health Servs.*, No. 4:24-CV-04209-CCT, 2026 WL 2070275, at *3 (D.S.D. July 17, 2026); *see also Hunt*, 203 F.3d at 528 (finding delay sufficient for 41(b) purposes, noting that "PTSD

cannot provide an excuse for their numerous and varied failures to comply with court orders and procedural rules."); *Boudy v. McComb Sch. Dist.*, 168 F.4th 257, 264 (5th Cir. 2026) (finding a "clear record of contumacious conduct" despite plaintiff's claims that her "lack of means, mobility limitations, mental and physical health impairments all contributed to [her] noncompliance" with the district court's orders); *Rodgers v. Curators of Univ. of Missouri*, 135 F.3d 1216, 1221 (8th Cir. 1998).

Despite repeated admonitions that she must comply with the Court's deadlines, Plaintiff ignored numerous discovery communications for weeks at a time, failed to timely provide required expert disclosures, and refused or failed to provide complete responses to basic discovery requests—some of which have remained outstanding for months. See *supra* at 7–8. The result has been a persistent pattern in which deadlines, discovery obligations, and defense efforts to move the case forward are met with nonresponse, noncompliance, eleventh-hour objections, or requests for further delay.

Her failure to prosecute this case diligently has now impaired even her own counsel's ability to communicate with her and move the litigation forward. As Plaintiff's counsel has repeatedly acknowledged in recent correspondence, Plaintiff is currently "inaccessible." Dkt. No. 108. Plaintiff's counsel reported that "Plaintiff was incommunicado during the entire weekend" preceding her independent medical examination, notwithstanding the importance of that examination to the parties and the Court's discovery schedule. Kravis Decl., Ex. K. As a result, Plaintiff's counsel was "unable to secure either her assurances for the IME, or her signatures for the authorization or the verification" of several interrogatory responses. *Id.* Plaintiff's inaccessibility continues to impede discovery. To date, her counsel remains unable to obtain necessary supplemental responses, verifications of prior responses, and information

concerning Plaintiff's prior treatment. Dkt. No. 108. Defendant cannot meaningfully litigate this case against a Plaintiff who makes herself inaccessible even to her own counsel.

**C. <u>Lesser Sanctions are Futile</u>**

Any sanction short of dismissal is futile. The Court has already tried the lesser tools available to secure Plaintiff's compliance—clear orders, repeated warnings, firm deadlines, and opportunities to cure—and Plaintiff's conduct has persisted notwithstanding each of them. In such cases, the requirements of fairness are satisfied. *See Rodgers*, 135 F.3d at 1222 (permitting dismissal where "any lesser sanction would have involved further delay or forced appellees to try their case without completing discovery"); *Buergofol Gmbh V. Omega Liner Company, Inc*., No. 4:22-CV-04112-KES, 2026 WL 2185492, at *73 (D.S.D. July 29, 2026) ("[B]ecause [Plaintiff's] willful violations of the court's discovery orders are so wide-ranging, any sanction short of dismissal with prejudice would be futile and ineffective in resolving [Plaintiff's] violations."); *Sloane v. Thompson*, 128 F.R.D. 13, 15 (D. Mass. 1989) (approving dismissal where "plaintiff's misconduct has been willful, extreme, and extended, and because the court can not discern an appropriate alternative sanction").

Here, the Court has denied Plaintiff's requests for extensions, expressly warned her that she must comply with the Court's scheduling deadlines, and cautioned that the discovery cutoff would not be extended absent good cause. Dkt. No. 72. When Plaintiff nevertheless failed to engage with discovery, the Court ordered her to work with opposing counsel to resolve outstanding disputes by a date certain, and later ordered her to respond to pending discovery requests and appear for her deposition. Dkt. No. 75. The Court also directed the parties to proceed with the independent medical examination on a fixed schedule, yet Plaintiff continued to resist the examination and ultimately failed to appear for the rescheduled IME. Dkt. No. 88. In defiance of Court orders to comply with her discovery obligations, Plaintiff has repeatedly

missed deadlines, resisted discovery, and ultimately failed to appear for her rescheduled independent medical examination.

"[W]hile a warning from the district court that a particular litigant is skating on the thin ice of dismissal is encouraged … this circuit has yet to hold that such an admonition is necessary to sustain a Rule 41(b) dismissal." *Rodgers*, 135 F.3d at 1221. Regardless, Plaintiff has already received several such warnings from the district court and her counsel that her dilatory conduct and disregard of court orders is likely to lead to dismissal. *See* Kravis Decl., Ex. J at 1 (Plaintiff's counsel acknowledging that he told his client about "the possibility of sanctions – including dismissal – if this IME d[id] not take place"). Accordingly, further warning would be futile.

## IV. CONCLUSION

Defendant requests that the Court dismiss this case pursuant to Federal Rules of Civil Procedure 37(b)(2) or 41(b).

DATED: September 17, 2026

HEPLER BROOM LLC

By: */s/ Thomas J. Magee*

THOMAS J. MAGEE #32871(MO)
thomas.magee@heplerbroom.com
HEPLER BROOM LLC
701 Market Street
Suite 1400
St. Louis, MO 63101
Telephone: (314) 480-4212

DATED: September 17, 2026 LIU SHUR KRAVIS LLP

By: *\/s/ Jonathan I. Kravis*

JONATHAN I. KRAVIS #973780(DC) (*pro hac vice*)
jonathan.kravis@lskllp.com
LIU SHUR KRAVIS LLP
607 14th Street N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100

DATED: September 17, 2026 MUNGER, TOLLES & OLSON LLP

By: *\/s/ Hailyn J. Chen*

HAILYN J. CHEN #237436(CA) (*pro hac vice*)
hailyn.chen@mto.com
ADEEL MOHAMMADI #343137(CA) (*pro hac vice*)
adeel.mohammadi@mto.com
CORDELL A. BROWN #356447(CA) (*pro hac vice*)
cordell.brown@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

XIAONAN APRIL HU #1684593(DC) (*pro hac vice*)
april.hu@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW., Suite 500E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

DANE P. SHIKMAN #313656(CA) (*pro hac vice*)
dane.shikman@mto.com
MILES W. UNTERREINER #347959(CA) (*pro hac vice*)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 17, 2026, the foregoing document was served electronically via ECF on counsel for Plaintiff Ann Altman.

/s/ *Dane P. Shikman*