IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Ann Altman<br>PLAINTIFF<br><br>v.<br><br>Sam Altman<br>DEFENDANT | Civil Action<br><br>NO. 4:25-cv-00017-ZMB<br><br>Hon. Zachary M. Bluestone, USDJ<br><br>**BRIEF IN SUPPORT OF**:<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND IN SUPPORT OF CROSS MOTION FOR A PROTECTIVE ORDER** |

TABLE OF CONTENTS


I. There has Never Been a Consent to a "James Hudson" IME………………1

II. Plaintiff Was Notified of the Consequences of Non-Attendance, and Efforts Were Made to Postpone Same in Light of her Documented Medical History and Acute Physical Symptoms Just Prior to the IME………………………2

III. Plaintiff was Subjected to Significant Litigation-Related Stress, and Was Medically Excused from Attending the IME……………………………..4

IV. Plaintiff is not in default as to other Discovery, and Any Purported Deficiencies Should be Viewed in Light of Defendant's Excessive Burdensome Discovery and His Deficiencies……………………………7

V. Plaintiff is entitled to a postponement and a remote appearance, as well as other Relief, Under Rule 26(c)(1) and Rule 35(a)(2)(B), Given Her Extensive Medical History……………………………………………..9

VI. Discovery Deadlines Should be Extended, and CMO Amended………..…11

# TABLE OF AUTHORITIES

Cases

*Colleen Givens v. A.H. Robins Co., Inc.*,
751 F.2d 261, 263 (8th Cir. 1984) ....................10

*Duncan v. Upjohn Co.*,
155 F.R.D. 23, 27 (D. Conn. 1994) ....................10

*Keefer v. Provident Life & Accident Ins. Co.*,
238 F.3d 937, 940–41 (8th Cir. 2000) ....................10

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*,
197 F.3d 922, 925 (8th Cir. 1999).................... 10

*Rodgers v. Curators of the University of Missouri*,
135 F.3d 1216, 1219 (8th Cir. 1998) ....................10

*Schlagenhauf v. Holder*,
379 U.S. 104, 106 (1964) ....................2

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20, 36 (1984) ....................11

*Sentis Group, Inc. v. Shell Oil Co.*,
559 F.3d 888, 891, 899, 904 (8th Cir. 2009) ....................9

*Tomlin v. Holecek*,
150 F.R.D. 628, 632 (D. Minn. 1993) ....................10

Rules

Fed. R. Civ. P. 26(c)(1) ....................9

Fed. R. Civ. P. 35(a)(2)(B) ....................9

Fed. R. Civ. P. 35 (general).................... 9–10

Fed. R. Civ. P. 45(a)(4) ....................9

## I. There has Never Been a Consent to a "James Hudson" IME

Defendant's motion rests on the premise that plaintiff defied a court-ordered examination with Dr. James Hudson. The record does not support that premise. Plaintiff, while pro se, agreed to "an" IME only, without the benefit of the expert's name or the manner, conditions, and scope of the IME (Perez Dec, ¶21).

When the undersigned came into this case, circa August 7, 2026, my office similarly did not agree to a "Hudson" IME, but rather to "an" IME, and in fact in the original fifteen-page protective order motion brief, Dr. Hudson's presence in this matter was challenged on account of a conflict of interest. (Perez Dec, ¶24).

Further, defendants did not disclose the name of the expert until near the end of July or the beginning of August, 2026, and even then, on Aug 13, 2026 in a missive they set forth an incomplete description of scope, conditions, and manner of the IME (Perez Dec, ¶22).

At a telephonic conference before your honor on August 21, 2026, my office, as a courtesy and in order not to overburden the Court, waived the necessity of a Rule 35 motion this Court had suggested, and indicated that since plaintiff had consented to "an" IME, the remaining issues could be contemplated in the motion for a protective order which had also been the subject of discussion (Perez Dec, ¶¶23-24). That waiver reflected good faith, not a concession that plaintiff had agreed to be examined by this particular examiner under these particular conditions.

When the protective order motion was filed, the original fifteen-page brief — later reduced to ten pages — contained a section addressing the potential

disqualification of Dr. Hudson, **thus constituting evidence that there was no agreement to a "Hudson Examination"** (Perez Dec, ¶25).

Plaintiff accordingly submits that the procedural history of consent to the IME shows that there was no consent to a "Hudson" IME (Perez Dec, ¶26), and that defendants secured pro se plaintiff's consent for "an" IME *only*, without disclosing the name of the provider, or the scope, conditions, and manner (Perez Dec, ¶27).

The foregoing obviates any purported "consent" to a James Hudson IME (Perez Dec, ¶29) and warrants the relief sought by plaintiff as set forth *infra*. See generally *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964) (a Rule 35 order must be specific as to the "*time, place, manner, conditions, and scope of the examination*, ***as well as the person or persons by whom it is to be made.*.")(emphasis supplied).

## II. Plaintiff Was Notified of the Consequences of Non-Attendance, and Efforts Were Made to Postpone Same in Light of her Documented Medical History and Acute Physical Symptoms Just Prior to the IME

Plaintiff does not dispute that she was properly advised of the consequences of not attending the IME, on multiple occasions (Perez Dec, ¶15). However, it is believed that due to her overwhelming stress during the weekend preceding the IME, she may not have fully understood said consequences (e.g. a dismissal motion) (Perez Dec, ¶16).

Critically, my office made numerous good-faith attempts to obtain

defendant's consent to a brief postponement well before the scheduled date. On Sunday, September 13, 2026, my office thus emailed defense counsel to set forth that this IME may have to be rescheduled and this may be beyond my means to control (Perez Dec, ¶17). On September 14, 2026, I further explained that the reason plaintiff might not appear stemmed from defendants' unlawful September 10, 2026 public disclosures of plaintiff's confidences, which resulted in my inability to properly communicate with my client to resolve the purported deficiencies, and that it thus appeared that defendants had grounds to allow for a slight postponement of this IME (Perez Dec, ¶18). I emphasized that rescheduling the IME is in the interests of all parties, and requested rescheduling in light of their unlawful Sept 10, 2026 disclosures on the public docket (which have not been sealed as of even date) (Perez Dec, ¶18).

That same morning, a further letter was forwarded to defendants acknowledging that Plaintiff recognizes the potential consequences of non-attendance, including possible dismissal, and that she takes that risk seriously. However, I further noted in that letter that Ms. Altman had raised legitimate concerns about her ability to attend given the stress caused by the docket disclosure, and that a brief "accommodation" was warranted accordingly (Perez Dec, ¶19). I specifically requested a meet and confer regarding the subject of a short extension or an alternative date for the IME, as well as any conditions defendant would require to agree to a modest continuance. If no agreement could be reached, I suggested that this dispute be presented to the Court for resolution (Perez Dec, ¶19).

These were not the actions of a litigant seeking to flout a court order; they were the actions of counsel attempting, in real time and in good faith, to manage a documented medical crisis while preserving the integrity of the discovery schedule.

## III. Plaintiff was Subjected to Significant Litigation-Related Stress, and Was Medically Excused from Attending the IME

Plaintiff's primary defense to the missed September 16, 2026 IME is that she was very ill the weekend prior, through no fault of her own, which included physical symptoms as well as significant stress exacerbated by having to undergo an IME with a male hired "expert" who has already concluded she is dishonest in an affidavit he filed in her case (Altman Dec, ¶3). **Her personal physician thus wrote a note specifically stating plaintiff could not attend the September 16, 2026 IME**. (Altman Dec, ¶31-34).

The exacerbation of her symptoms the week prior to her Sept 16 IME began with her recent discovery of a UTI infection and ER visit when she was two years old, which corroborated her abuse allegations, and this stress was compounded and further exacerbated by defendant's unlawful September 10, 2026 disclosure, on the public docket, of private IME-related medical information (Altman Dec, ¶4). Plaintiff avers that defendants did so to shame her, and caused great grief and substantial and significant stress (Altman Dec, ¶4; Perez Dec, ¶7).

Compounding matters, plaintiff's understanding that the retained expert had, in a recent affidavit, concluded — without an examination — that she is dishonest, by conclusively asserting that "repressed memories" have been "discredited," caused her to suffer immense anxiety as the IME date got closer, said anxiety having exacerbated stress-related physical symptoms she had been experiencing the weekend before the IME, which included congestion, nausea, vomiting, and

more (Altman Dec, ¶5). These significant symptoms led her treating physician to recommend that she be excused from the IME, with findings that included objective physical symptoms, e.g. "viral syndrome," congestion, EDS flare-up, as well as mental-health related symptoms, e.g. PTSD onset or flare-up, and anxiety (Altman Dec, ¶6, ¶31-34 ).

The rescheduled dates were no more feasible. As plaintiff's extensive medical records show, she underwent surgery in May of 2026 to her ankle, and the recovery period spanned months, thus limiting her mobility and ability to travel (Altman Dec, ¶8). Around September 23, 2026, her orthopedists advised against placing undue stress on her ankle by avoiding travel to St. Louis for the Sept 24 or 25 re-scheduled IME (Altman Dec, ¶9), noting specifically that she is limited with repetitive walking and standing activities due to her current symptoms and should minimize these activities as much as possible, especially for the next 4-6 weeks (Altman Dec, ¶45).

Travel to St. Louis carries an independent psychological burden. Plaintiff in fact advised her primary physician, around March 2026, that traveling to St. Louis triggered additional stress as it reminded her of the abuse which took place therein (Altman Dec, ¶10, ¶46).

Plaintiff also has a documented, longstanding aversion towards certain male authority figures, corroborated across multiple independent sources. See e.g. (Altman Dec, ¶42). Her physician also noted that she also has a chronic medical condition which causes her to feel uncomfortable and unsafe seeing a male provider alone, and requested a female IME provider (Altman Dec, ¶31).

Her personal physician noted plaintiff’s congestion via a telehealth session prior to the Sept 16 exam - and noted that plaintiff had asserted worsening PTSD

symptoms after recent initial IME exam, that plaintiff did not feel comfortable and felt unsafe seeing a male provider alone for the Sept 16 exam, and that plaintiff was requesting a female provider. Plaintiff also indicated that she was requesting accommodation with virtual exam due to increase in fatigue due to combination of worsening PTSD and current viral illness (Altman Dec, ¶32).

Plaintiff’s aversion towards male providers, as the proofs show, is limited to controlling or powerful men, and is not directed at male providers generally, as plaintiff's own physician confirmed at deposition (Altman Dec, ¶¶33-34). It is further corroborated by an independent witness, a dear close acquaintance of plaintiff, who was quoted in the book “Empire of AI” as having observed that plaintiff was not comfortable around certain men, remarking, “*I know someone that's been abused when I see them. She would basically ask to be out of meetings when certain men were around. She would stand off to the side when they were in the room*” (Altman Dec, ¶42).

This overwhelming confluence of stressors — the UTI discovery, the Sept 10 public disclosure of her confidences, the Court's denial of protective-order protections, the reduction of her brief to ten pages, and the failure to address her knitting accommodation — resulted in physical symptoms, and a telehealth visit with Dr. Tgist Mammo, MD, since she could not drive due to distressed mobility issues as well as the onset of vomiting (Altman Dec, ¶30).

Her prior medical history, spanning more than a dozen providers over decades, corroborates that she is prone to the stress resulting from this litigation if not provided with a reasonable accommodation or Rule 26 and Rule 35 relief (Altman Dec, ¶37).

Finally, plaintiff's tweets, which defendants selectively cited as proof she

was not truly ill, in fact included a statement that she had the flu — a statement defendants did not disclose to the Court (Altman Dec, ¶¶52-54)

## IV. Plaintiff is not in default as to other Discovery, and Any Purported Deficiencies Should be Viewed in Light of Defendant's Excessive Burdensome Discovery and His Deficiencies

Defendant's characterization of plaintiff as non-compliant ignores the context of defendant's own conduct. Defendants assert that plaintiff, who timely produced a complex seventy-page expert report within a condensed two week time window, "refused" to make plaintiff's expert available for deposition (Perez Dec, ¶4). This is not true; in fact, over one dozen emails were exchanged during that period, and defendant's counsels were advised that the plaintiff expert would observe Rosh Hashana, as she was deeply committed to her faith, and that the condensed time window had resulted in formidable re-scheduling conflicts for her existing patients (Perez Dec, ¶5). **The plaintiff's expert thus never "refused" the deposition, but merely encountered bona fide scheduling issues which counsel attempted to resolve over the course of dozens of emails** (Perez Dec, ¶6).

Defendants further mischaracterize the confidentiality of the September 10, 2026 disclosure. It was made clear to defendants that the entirety of the IME was **confidential pursuant to Paragraph 8(d) of the protective order**, which provides that information prepared or derived by utilizing Confidential Discovery Material or Highly Confidential Discovery Material shall also be considered "Confidential Discovery Material" or "Highly Confidential Discovery Material" as appropriate (Perez Dec, ¶9). Indeed, defendants themselves in an August 29, 2026 missive had designated all of plaintiff's discovery as confidential (Perez Dec, ¶10), making their September 10, 2026 disclosures — which publicly shamed plaintiff

and caused additional trauma — unlawful for a second, independent reason (Perez Dec, ¶11).

Defendant's allegations of plaintiff's deficiencies, e.g. that she "failed to verify" discovery (having verified over two dozen times previously), should be viewed within the context of defendant's aggressive, unduly burdensome discovery tactics, as well as their own significant deficiencies (Perez Dec, ¶12). That burdensome conduct includes **in-person depositions of most of the over one dozen treating providers**, including one recent deposition of a provider who was **on oxygen, visibly shaking during her deposition, and was nonetheless forced to attend two days of deposition, in person** (Perez Dec, ¶13(i)). It further includes aggressive detailed "deficiency" letters which amount to requests for supplementary discovery — for example, demanding a summary list of all EMDR providers previously disclosed, and rejecting a verified answer that no relevant recordings exist because defendants wanted verification of no other recordings, whether or not relevant — conduct that, while arguably within the bounds of discoverable material, raises a question of excessiveness which causes plaintiff - and her providers - extreme anxiety and inconvenience (Perez Dec, ¶13(ii)).

Most significantly, defendants themselves failed to disclose a psychiatrist defendant had visited circa August of 2021 in connection with [redacted]" despite serving answers to interrogatories in Sept 2025 and Feb 2026 that omitted this provider (Perez Dec, ¶13(iii)). **The records of this encounter, required to be archived as per applicable record-retention laws until 2028, no longer exist.** Id. At his September 21, 2026 deposition, Sam Altman [redacted]

[redacted] (Perez Dec, ¶13(iii)).

Equally as concerning, *circa* September 16, 2026, defendants **served ten subpoenas on educational institutions** attended by plaintiff's expert. They did not notify my office as required by Fed. R. Civ. P. 45(a)(4), and as such I was unaware of these subpoenas. One of the educational institutions contacted my expert, and I then communicated this to defense counsels, **who promptly withdrew the subpoenas,** only to serve them days later in conformance with Fed. R. Civ. P. 45(a)(4). (Perez Dec, ¶13(iv)). This is the same expert they falsely claim "refused" to sit down for a deposition, as discussed *supra*.

This procedural history is offered not for its own sake, but rather because it shows that plaintiff's purported deficiencies ring hollow when the excessive unduly burdensome tactics employed by defendants is accounted for (Perez Dec, ¶14). In the case at bar, these deficiencies include possible spoliation, and **prejudice** to the plaintiff. (Perez Dec, ¶13(iii)). See generally Sentis Group, Inc. v. Shell Oil Co., 559 F.3d 888, 891, 899, 904 (8th Cir. 2009) (directing the district court, in reconsidering discovery sanctions, to "*carefully consider the actions of all parties*," with particular attention to prejudice, and emphasizing that sanctions determinations require examination of willfulness, violation of discovery orders, prejudice, and the appropriateness of the sanction in light of the record).

## V. Plaintiff is entitled to a postponement and a remote appearance, as well as other Relief, Under Rule 26(c)(1) and Rule 35(a)(2)(B), Given Her Extensive Medical History

Given the foregoing, plaintiff respectfully requests the equivalent, under Rules 26 and 35, of a "reasonable accommodation" given her documented,

genuine, and objectively verifiable medical needs (Altman Dec, ¶13). Specifically, plaintiff requests that the IME be performed remotely, and that the IME expert be a female physician, who also has not previously set forth pre-conceived conclusions on "repressed memories" — since this conclusion belies the reality of her statements of abuse, and labels her as dishonest — without the required clinical or legal assessments regarding the veracity of her statements and without the benefit of her eight hour deposition video and transcript (Altman Dec, ¶14). See Duncan v. Upjohn Co., 155 F.R.D. 23, 27 (D. Conn. 1994) (recognizing the court's authority to appoint a physician other than the movant's proposed examiner where the proposed examination would jeopardize the examinee's well-being) (citing Tomlin v. Holecek, 150 F.R.D. 628, 632 (D. Minn. 1993)).

For all of the foregoing reasons, plaintiff respectfully submits that she should not be penalized for her failure to attend, that discovery should be extended, and that a more suitable IME should be arranged pursuant to Rule 35 (Perez Dec, ¶31). See, e.g. Rodgers v. Curators of the University of Missouri, 135 F.3d 1216, 1219 (8th Cir. 1998) ("*Dismissal with prejudice is an extreme sanction and should be used only in cases of wilful disobedience of a court order or ... persistent failure to prosecute a complaint..*") (quoting *Colleen Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261, 263 (8th Cir. 1984)). See also Keefer v. Provident Life & Accident Ins. Co., 238 F.3d 937, 940–41 (8th Cir. 2000).

Plaintiff thus requests, in her cross-motion, the rescheduling of the IME, a reasonable extension of discovery, that the IME take place remotely, and that the IME be conducted by a female IME professional. See Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d 922, 925 (8th Cir. 1999) *("federal rules confer broad discretion on the district court to decide when a protective order is appropriate and what degree of protection is required,"* quoting

Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984))

## VI. Discovery Deadlines Should be Extended, and CMO Amended

On October 2, 2026, per this court's directive, the motion to dismiss will be argued, and this Court will also entertain the issues in the Joint Submission of September 17, 2026, ECF 105, which included a request to extend discovery.

Accordingly, the undersigned submits that such an extension will be sought at oral argument per the Joint Submission.

*/s/ Santos A. Perez, Esq.*
THE PEREZ LAW FIRM
sperez@njlawcounsel.com
***Attorney for Plaintiff***
***Pro Hac Vice***

DATED: September 25, 2026