IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

Ann Altman
PLAINTIFF

v.

Sam Altman
DEFENDANT

Civil Action
NO. 4:25-cv-00017-ZMB

Hon. Zachary M. Bluestone, USDJ

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS & CROSS MOTION FOR PROTECTIVE ORDER**

**ATTORNEY AFFIDAVIT OF SEPTEMBER 25, 2026**

**I, Santos A. Perez, Esq., of full age, do state:**

1. I have been plaintiff's counsel since August 7, 2026.
2. I am fully familiar with the facts set forth herein.
3. I make this affidavit in support of plaintiff's opposition to defendant's motion to dismiss of September 18, 2026, ECF 112 and in support of plaintiff's cross motion for a protective order.

DECLARATIONS AS TO DEFENDANT'S MISTATEMENTS OF FACT

4. Defendants assert that plaintiff, who timely produced a complex 70 page expert report within a condensed two week time window, "refused" to make plaintiff's expert available for deposition.
5. This is not true. In fact, over one dozen emails were exchanged during that period, and defendant was advised that the plaintiff expert would observe Rosh Hashana, as she was deeply committed to her faith, and that the condensed time window had resulted in formidable re-scheduling conflicts for her existing patients.

6. The plaintiff's expert thus never "refused" the deposition, but merely encountered bona fide scheduling issues which we attempted to resolve over the course of dozens of emails.

7. Defendants also falsely assert that the private medical confidences they unlawfully publicly disclosed in or about Sept 10, ECF 97, was not confidential.

8. First, that "notice" was neither permitted by rule, nor by this Court's scheduling order.

9. Second, it was made clear to defendants that the entirety of the IME was confidential pursuant to Paragraph 8(d) of the protective order, which provides that:

   *Information prepared or derived by utilizing Confidential Discovery Material or Highly Confidential Discovery Material shall also be considered "Confidential Discovery Material" or "Highly Confidential Discovery Material" as appropriate, pursuant to this Stipulation.*

10. In fact, defendants themselves in an August 29, 2026 missive had designated <u>all</u> of plaintiff's discovery as confidential. <u>Exhibit T</u>.

11. As such, under paragraph 8(d) of the protective order, **the IME was confidential** – making their September 10, 2026 disclosures – which publicly shamed plaintiff and caused additional trauma – unlawful for a second reason.

ADDITIONAL DECLARATIONS REGARDING DEFENDANT'S UNDULY BURDENSOME AND EXCESSIVE DISCOVERY, AND THEIR DEFICIENCIES

12. Defendant's allegations of plaintiff's deficiencies, e.g. that she "failed to verify"

discovery (having verified over two dozen times previously), should be viewed within the context of defendant's aggressive, unduly burdensome discovery tactics, as well as their own significant deficiencies.

13. Their unduly burdensome discovery includes, but is not limited to:

    i. *In-person* depositions of most of the over one dozen treating providers. One such provider, [redacted], was on oxygen, visibly shaking during her deposition, and was nonetheless forced to attend two days of deposition, in person.

    ii. Aggressive detailed "deficiency" letters which amount to requests for supplementary discovery. By way of example - they are asking plaintiff to create a *summary* of all EMDR providers that have been disclosed, and in one instance a verified answer that "no relevant recordings exist" was deemed insufficient and as they wanted verification of "no other recordings, whether or not relevant, exist." While they may arguably be entitled to such "supplemental" answers - this is not a question of entitlement - but rather of <u>excessiveness</u> which causes plaintiff extreme anxiety.

    iii. They failed to disclose a psychiatrist defendant had visited circa August of 2021 in connection with [redacted]. They served answers to interrogatories in Sept 2025 and Feb 2026 - and did not disclose this provider. In an email of early Sept 2026, counsels advised my office that the records of this visit no longer exist. At his deposition, Sam Altman admitted [redacted] during this encounter.

    iv. Circa September 16, 2026, defendants served ten subpoenas on educational institutions attended by plaintiff's expert. They did not notify my office as required by Fed. R. Civ. P. 45(a)(4), and as such I was unaware of same.

One of the educational institutions contacted my expert, and I then communicated this to defense counsels, **who promptly withdrew the subpoenas,** only to serve them days later in conformance with Fed. R. Civ. P. 45(a)(4).

14. The foregoing is not offered for its own sake - but rather because it shows that plaintiff's purported deficiencies ring hollow when the excessive unduly burdensome tactics employed by defendants is accounted for.

PLAINTIFF WAS PROPERLY NOTIFIED OF THE CONSEQUENCES OF NON-ATTENDANCE OF THE SEPT 16, 2026 IME BUT COULD NOT ATTEND FOR MEDICAL REASONS

15. As defendant acknowledges, plaintiff was properly advised of the consequences of not attending the IME, on multiple occasions.

16. However, it is believed that due to her overwhelming stress during the weekend preceding the IME, she may not have fully understood said consequences (e.g. a dismissal motion). See generally Altman Dec. of Sept 25, 2026.

NUMEROUS GOOD FAITH ATTEMPTS WERE MADE TO SOLICIT COUNSEL'S CONSENT TO POSTPONE THE IME

17. On Sunday, September 13, 2026, my office emailed defense counsel to announce that "*this IME may have to be rescheduled and this may be beyond my means to contro*l". Kravis Dec. Ex I, at 3.

18. On September 14, 2026, the following email asking for a postponement of the September 16, 2026 IME was forwarded to defendants, to wit:

*As to the defense IME, by email dated Sept 13, 2026 I advised you that plaintiff may not appear - in subsequent emails I set forth the reasons why -*

> *your Sept 10 2026 public disclosures of statements she made to her expert. These were not only referenced publicly - causing plaintiff extreme grief - but were also presented without proper context. This resulted in my inability to properly communicate with my client to resolve the purported deficiencies. **It thus appears that you have grounds to allow for a slight postponement of this IME**. And if you do not, and plaintiff does not appear, we can conference this after September 21, as per my suggestion below, followed by proper briefing and motions. It should be noted - I have the full intention of creating a detailed record on this issue, as it may result in dismissal.*
>
> ……
>
> ***I do, however, emphasize that rescheduling the IME is in the interests of all parties, and request that you do so in light of your Sept 10, 2026 disclosures on the public docket (which have not been sealed - and which the press is likely in receipt of).***

19. Additionally, on September 14, 2026 in the early morning the following letter requesting a postponement of the Sept 16 IME was forwarded to defendants:

> ***IME Scheduling***
>
> *Plaintiff also understands that defendant considers the upcoming IME date of September 16, 2026 to be firm and has declined to reschedule although discovery ends in October 23, 2026. **Plaintiff recognizes the potential consequences of non-attendance, including possible dismissal, and she takes that risk seriously.** At the same time, Ms. Altman has raised legitimate concerns about her ability to attend given the stress caused by the docket disclosure, and I believe a brief accommodation is warranted under the circumstances.*
>
> *I would like to discuss:*
>
> - *Whether a short extension or alternative date is feasible;*
> - *Any conditions defendant would require to agree to a modest continuance; and*
> - *If no agreement can be reached, an efficient path to present this dispute to the Court for resolution, including whether either side intends to file a motion (e.g., a motion to compel/enforce the IME, or a motion for a protective order/extension).*

See Exhibit D.

PLAINTIFF DID NOT, AT ANY TIME, CONSENT TO A "JAMES HUDSON IME", THE CONSENT BEING LIMITED TO "AN IME" ONLY

20. My office came into this case on August 7, 2026.

21. Sometime prior to then, plaintiff had agreed to "an" IME *only*. See Plaintiff July 17, 2026 Filing (requesting disclosure of IME CV), Exhibit G, see also Point II(a), Plaintiff's Position, August 20, 2026 Joint Memo ("*The IME was "agreed upon" by pro-se plaintiff without the benefit of the expert's name.*"), Exhibit R.

22. Defendants disclosed the name of the expert for the first time near the end of July or the beginning of August, 2026, See August 20, 2026 Joint Memo, Exhibit R, and on Aug 13, 2026 in a missive they set forth an incomplete description of scope, conditions, and manner of the IME. See Exhibit P.

23. At an August 21, 2026 conference with the Court, my office, as a courtesy and in order not to overburden the Court, waived the necessity of a Rule 35 motion this Court had suggested[1].

24. I had thus indicated that since plaintiff had consented to "an" IME, the remaining issues could be contemplated in the motion for a protective order which had also been the subject of discussion.

[1] The undersigned had been traveling back from the Maui deposition on that date, and on a layover. I participated in the conference not having slept for thirty hours, from the airport, with poor audio, and did not hear when this Court first imposed a ten-page limit on the protective order brief. Significantly, however, I had also waived a Rule 35 motion this court had suggested, thus depicting good faith and regard for this Court's scheduling.

25. The original fifteen page brief - later reduced to ten pages - contained a section addressing the potential disqualification of Dr. Hudson, thus constituting **evidence that there was no agreement to a "Hudson Examination".** See Exhibit U. (Aug 29, 2026, Section VI, Fifteen Page Brief). See also Exhibit O (Exhibit Depicting Hudson employment with Park Dietz, and a potential conflict).

PROCEDURAL HISTORY OF PLAINTIFF'S CONSENT TO "AN" IME

26. The procedural history of consent to the IME shows that there was no consent to a "Hudson" IME.

27. Specifically, in or about July 2026, defendants secured *pro se* plaintiff's consent for the IME, **without disclosing the name of the provider**, or the scope, conditions, and manner. See Plaintiff July 17, 2026 Filing (requesting disclosure of IME CV), Exhibit G, see also Point II(a), Plaintiff's Position, August 20, 2026 Joint Memo ("*The IME was "agreed upon" by pro-se plaintiff without the benefit of the expert's name.*"), Exhibit R.

28. Defendants secured this IME as stated, notwithstanding that plaintiff also had an extensive documented history of emotional and physical sequelae which can be reasonably exacerbated by the demands of complex litigation - as they should have known since they had been in receipt of plaintiff's extensive medical documentation from nearly two dozen providers. See Plaintiff Affidavit of September 25, 2026.

29. The foregoing obviates any purported "consent" to a James Hudson IME.

CONCLUSIONS

30. This affidavit sets forth that:
    i. Plaintiff was properly notified of the IME non-attendance consequences
    ii. Because she was severely ill, attempts were made to reschedule the IME.
    iii. Although both pro se plaintiff and her counsel consented to "an" IME, there was never consent to a "Hudson" IME.

31. Plaintiff accordingly should not be penalized for her failure to attend, discovery should be extended, and a more suitable IME should be arranged pursuant to Rule 35.

I swear or affirm that the foregoing statements by me are true. I am aware that if same are willfully false, I may be subject to punishment.

Signer ID: BLSHRMZF12

Santos A. Perez, Esq.
Attorney for Plaintiff

DATED: September 25, 2026