**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANN ALTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:25-cv-00017-ZMB |
| | ) | |
| SAMUEL ALTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS**

**PUBLIC / REDACTED**

## I. INTRODUCTION

"Although dismissal with prejudice is a severe sanction, the court may impose such a sanction where the plaintiff has engaged in a pattern of intentional delay." *First Gen. Res. Co. v. Elton Leather Corp.*, 958 F.2d 204, 206 (8th Cir. 1992) (per curiam). This case meets that standard. Plaintiff Ann Altman has steadfastly refused to participate in discovery in this case, including most recently failing to appear for her independent medical examination (IME). Dkt. No. 111 ¶ 6. Indeed, Plaintiff's refusal to participate in discovery continues even as this motion to dismiss is pending. Last week, she declined a defense proposal to reschedule her IME for September 24 or 25 in St. Louis, *see* Declaration of Xiaonan April Hu in Support of Defendant's Reply Brief ("Hu Decl."), Ex. A at 1, 7–9—citing the "psychological burden" of traveling to the jurisdiction *where she filed suit* as well as purported complications from elective ankle surgery that she decided to undergo more than *four months ago*. Opp. 5. Plaintiff now appears to be asking the Court to reward her non-compliance by granting a virtual IME and disqualifying the defense expert because he is a man. *Id.* at 10. She has also made no further progress in responding to discovery requests the Court ordered her to complete by August 10. *See* Dkt. No. 111-15. She has made no effort to correct basic deficiencies, like providing verified responses to interrogatories. *See id.* And recent depositions suggest that she has withheld the identity of her recent mental health providers from the defense. *See infra* at 8–9.

Plaintiff's refusal to comply with her discovery obligations, taken in tandem with her recent conduct, calls into question her motivations for filing this lawsuit and bolsters Defendant's abuse of process claim. Two weeks ago, Plaintiff's counsel posted the first 42 minutes of her deposition video on YouTube, in retaliation for "defendant's counsel" supposedly "filing, on the public docket, private statements [Plaintiff] made to her retained psychological expert" (which is not true, *see* Mot. 4; Dkt. No. 97 at 2). Hu Decl. ¶ 12, Ex. B. Plaintiff retweeted the link to the deposition

video, *id.* Ex. C, as part of her broader efforts to attract attention to this case on social media. *See, e.g.*, Dkt. No. 111-5 at 60–69.

Plaintiff's bottom-line position appears to be that she should be excused from basic discovery obligations based on her anxiety and trauma—which she attributes to (among other things) [redacted] when she was approximately three years old; the identity of the defense expert; a recent defense filing; and even a Court order imposing page limits on her recent motion. Opp. 4–6. This position is untenable. Plaintiff chose to file this lawsuit in this Court bringing serious, unfounded, and false accusations against Defendant Sam Altman. Plaintiff's specious and incredible allegations have put her mental health squarely at issue. Defendant is entitled to fully and fairly defend himself against those allegations, including through an IME by an expert of his choosing. Plaintiff cites no authority to support the proposition that she should be permitted to skip a critical examination, opt out of basic discovery, and then dictate the terms of the defense. To the contrary, courts regularly conclude that dismissal is warranted when a plaintiff offers shifting and implausible excuses for failing to follow court orders and engage in discovery, as is the case here. The Court should dismiss this case without further delay.

## II. <u>ARGUMENT</u>

Plaintiff's opposition does not contest the core facts that form the basis of Defendant's motion. That undisputed conduct warrants dismissal under Federal Rules of Civil Procedure 37(b)(2) and 41(b).

### A. <u>Plaintiff's Conduct Concerning Her IME Supports Dismissal.</u>

#### 1. Plaintiff Failed to Appear for a Court-Ordered IME.

Plaintiff admits that she did not appear for her Court-ordered IME on September 16, which the defense expert flew from Boston to Hawaii to attend. Opp. 4; Dkt. No. 119-1 ¶¶ 3, 7; Dkt. No. 111 ¶¶ 5–6. Nor does she dispute that her failure to attend the IME upended a compressed

expert discovery schedule crafted to ameliorate her own failure to comply with the original expert disclosure deadline. Mot. 1; *see* Dkt. No. 111 ¶ 9. Indeed, Plaintiff acknowledges that she was "properly advised of the consequences of not attending the IME[] on multiple occasions . . . including possible dismissal," Opp. 2–3, and that she "recognize[d] the potential consequences of non-attendance, including possible dismissal," and "[took] that risk seriously," Dkt. No. 120-6 at 2; but she still refused to attend her IME. As discussed in Defendant's motion, Mot. 8–14, that conduct alone merits dismissal. Unable to dispute these facts, Plaintiff resorts to a litany of unpersuasive excuses for her non-attendance.

*First*, Plaintiff contends that the Court did not issue an order under Rule 35 designating the defense expert as the IME examiner. Opp. 1–2. This argument is in bad faith. As Plaintiff well knows, the Court did not issue a Rule 35 order because Plaintiff's counsel represented to the Court at a status conference and in a joint filing that Plaintiff consented to an IME and intended to contest only the scope of the examination. *See* Dkt. No. 89 at 2 ("Plaintiff consents to an IME while reserving the right to file a motion limiting the scope of the IME, and therefore the defense is not required to file a motion for an IME under Rule 35."). In fact, Plaintiff's prior counsel consented to an IME in *December 2025*, and began discussing preparations for the IME before Plaintiff fired her prior counsel. Hu Decl. ¶ 3; *id.* Ex. D. Plaintiff now says that she has an "aversion towards male providers" who are "controlling or powerful men" (which presumably includes the defense examiner, Dr. James Hudson, although Plaintiff never explains why). Opp. 6. But Plaintiff has known since July 31, 2026, that Dr. Hudson would be performing the defense IME, Dkt. No. 111 ¶ 7, and she never objected to defense counsel about Dr. Hudson's gender until the day of the scheduled examination, raising it only as a post-hoc justification for her decision to simply not show up. Hu Decl. ¶ 6; *id.* Ex. E; *see* Dkt. No. 113-9.

*Second*, Plaintiff says that she could not attend the September 16 IME because she was suffering from physical symptoms, which she variously attributes to "stress caused by" a defense filing, Opp. 3; "having to undergo an IME with a male hired 'expert' who has already concluded she is dishonest," *id.* at 4; "her recent discovery of a UTI infection and ER visit when she was two years old," *id.*; "symptoms" caused by *her own expert's* IME, *id.* at 5–6; Court orders imposing page limits on and ultimately denying her protective order motion, *id.* at 6; the Court's decision not to address her request to knit during the IME, *id.*; and a "viral illness," *id.*

These excuses are not credible. If Plaintiff had been experiencing viral symptoms prior to the deposition, her counsel would have said so, rather than sending cryptic emails asking to postpone the examination and referencing purported PTSD symptoms arising from an innocuous court filing. *See* Mot. 5–6. In fact, Plaintiff never had any intention of attending this examination, as evidenced by her request that the Court reward her non-compliance by granting a remote IME performed by a different expert. Opp. 9–10.

The medical records Plaintiff cites do not help her. As explained in the defense's motion, these records are based entirely on her own statements to her doctor during a brief telehealth visit. Mot. 6–7. Other than "[redacted]" the doctor did not [redacted]. Hu Decl., Ex. F at 44:13–45:1, 46:3–13, 144:23–145:9, 161:18–19. In fact, Plaintiff's doctor admitted [redacted]. *Id.* at 112:4–9. Given the importance of the Court-ordered IME, if Plaintiff truly had a genuine physical illness, she should have seen her doctor in person to obtain an actual diagnosis. And, of course, she would not have been posting prolifically on social media. *See* Mot. 5–6; Dkt. No. 111-5 at 3–12.

Plaintiff's purported bases for her supposed PTSD symptoms fare no better. Plaintiff has

known since July 31 that the defense expert is a man, Dkt. No. 111 ¶ 7, and as Dr. Hudson explains in his declaration, he has not formed an opinion about Plaintiff's honesty, *see* Declaration of James I. Hudson ("Hudson Decl.") ¶ 3. The Court orders Plaintiff cites as "stressors," Opp. 6, are routine. The [redacted] has been known to her *for at least the last year and a half*; in fact, Plaintiff herself first produced these records to the defense. Hu Decl. ¶ 2. Plaintiff's pediatrician testified at her deposition that [redacted] did not raise any concerns of abuse because "[redacted]" *Id.* Ex. G at 56:5–59:7. And Plaintiff's complaint about the September 10 defense filing is pure pretext; if Plaintiff truly cared about public disclosure of the two sentences [redacted], she would have timely responded to the Court's invitation to explain the basis for her sealing request. *See* Dkt. No. 102 ("[I]f she intends to put these conditions at issue, Annie must explain why this information should be filed under seal."); Dkt. No. 103 (Plaintiff filing containing no argument on sealing). Plaintiff knew full well the consequences of failing to attend the IME, *see* Opp. 2–3; Dkt. No. 120-6 at 2, and chose not to attend anyway. Such willful disregard for the Court's orders merits dismissal. *See* Mot. 8–14.

### 2. Plaintiff Refused to Reschedule the IME in Bad Faith.

After Plaintiff failed to appear for the September 16 IME, the defense offered to reschedule the examination for September 24 or 25 in St. Louis—the third time the defense has attempted to cooperatively schedule Plaintiff's IME. Hu Decl. ¶¶ 4–7; *id.* Ex. A at 7, 9. The defense also offered to arrange for a female nurse to attend the examination to accommodate Plaintiff's alleged concern about being alone with a male examiner. *Id.* ¶ 7; *id.* Ex. A at 9. Plaintiff refused, providing no alternative dates or locations for an in-person examination. *See id.* Ex. A at 1–4. Instead, Plaintiff has offered a series of shifting and implausible excuses.

Plaintiff first told the defense on September 16 that she was [redacted] Hu Decl. ¶ 6; *id.* Ex. E. This excuse rings hollow in light of the fact that Plaintiff, who has known for months that the defense expert is a man, Dkt. No. 111 ¶ 7, did not raise this issue prior to the date of the IME, and mentioned it to the defense only after she had already skipped it. Hu Decl. ¶ 6; *id.* Ex. A; *id.* Ex. E. Plaintiff's purported fear of male doctors was further undermined by the recent deposition of Plaintiff's primary care provider, who testified that Plaintiff has seen [redacted]. Hu Decl. Ex. F at 53:24–54:1, 62:23–63:20, 100:18–101:8, 102:16–103:5, 105:1–14. Following this testimony, Plaintiff shifted her explanation—saying that she fears only male providers who exert "power" or "control" (with no explanation as to why Dr. Hudson fits this description while the other male providers she has seen recently do not). Dkt. No. 119-1 ¶¶ 33–34.

After the defense offered to make a female nurse available to accommodate Plaintiff's concern, Hu Decl., Ex. A at 9, Plaintiff shifted her claims yet again—arguing that she now requires a remote, rather than in-person, IME. *Id.* at 4, 8. This excuse too could have been raised months ago, before Plaintiff agreed to sit for an in-person IME in Hawaii. In any event, Plaintiff is not entitled to a remote IME. For the reasons set out in Dr. Hudson's reply declaration, *see* Hudson Decl. ¶¶ 4–7, a remote IME would seriously prejudice his ability to fully and adequately evaluate Plaintiff. *See Aubuchon v. Tate Trucking, LLC*, 2025 WL 3012997, at *2 (E.D. Mo. Oct. 28, 2025) ("[F]or the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations.") (quoting *Shannon v. Ellis*, 2018 WL 4698783, at *2–3 (E.D. Mo. Oct. 1, 2018)); *Tomlin v. Holecek*, 150 F.R.D. 628, 631–32 (D. Minn. 1993) (rejecting attempt to restrict IME

where defense expert provided evidence that the restriction was "inimical to the conduct of a valid psychiatric examination" and the examiner's "concerns [were] corroborated by those authorities which have considered the argument"). There is no dispute that Dr. Hudson's IME of Plaintiff is relevant, and "once relevance is established for an IME, it becomes the burden of the party resisting discovery 'to show why the examination should not go forward in the manner noticed.'" *Durfee v. GPEX Transp., Inc.*, 2024 WL 5074913, at *2 (D.S.D. Dec. 11, 2024) (citation omitted). Plaintiff has not shown that here.

Plaintiff's latest excuse is that complications from her elective ankle surgery prevent her from traveling to the jurisdiction where she chose to file suit. Opp. 5. Citing a "Medical Excuse Form," Plaintiff asserts that "her orthopedists advised against placing undue stress on her ankle by avoiding travel to St. Louis." *Id.*; Dkt. No. 119-1 ¶ 9. The form does not say that. It says that Plaintiff "is limited with repetitive walking and standing activities" and that she "should minimize these activities as much as possible." Dkt. No. 120-4. Plaintiff has not explained why ordinary rideshare transportation to and from the airport—followed by ordinary mobility assistance at the airport regularly used by persons far more seriously disabled than Plaintiff—would not enable her to travel to St. Louis. The absence of any explanation is unsurprising. Plaintiff's medical records show that her ankle surgery recovery was [redacted], and that her ankle surgery on May 15, Dkt. No. 69 at 1, [redacted]. Hu Decl., Ex. H at PR0000910 ([redacted]); *id.* at PR0000946–947 ([redacted]). And in any event, Plaintiff could have avoided travel by attending the September 16 IME in Hawaii.

Plaintiff's ever-shifting excuses are precisely the sort of self-serving justifications courts

have declined to credit. *See, e.g.*, *Great Gulf Corp. v. Graham*, 2022 WL 2712880, at *9 (D. Minn. July 13, 2022) ("[T]he shifting nature of [Plaintiff's] explanations viewed in conjunction with the timeline of events and self-imposed restrictions on availability . . . cast doubt on [Plaintiff's] credibility as a whole and the genuineness of [his] purported efforts to cooperate with anything less than a deposition on his own terms."); *see also Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001) (dismissal affirmed where Plaintiff gave "unconvincing and contradictory responses" for her improper behavior in discovery). This conduct—failing to appear for a long-scheduled IME and refusing to reschedule for shifting and implausible reasons, instead demanding a remote IME administered by a different expert—suggests bad faith and warrants dismissal. "When the facts show willfulness and bad faith, as in this case, the district court need not investigate the propriety of a less extreme sanction. In such cases, 'the selection of a proper sanction, including dismissal, is entrusted to the sound discretion of the district court.'" *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817–18 (8th Cir. 2001) (citation omitted); *see Deering v. Martin*, 115 F.4th 923, 926 (8th Cir. 2024).

**B. <u>Plaintiff Refuses to Engage in the Discovery Process.</u>**

The defense motion detailed Plaintiff's refusal to participate in discovery over the five months leading up to her failure to appear for the IME. Mot. 2–8. Plaintiff's opposition does not dispute these failures. Nor has Plaintiff taken any steps since the defense motion was filed to correct them. In particular, she still has not completed a document production that the Court ordered her to finish by August 10. *See* Dkt. No. 113-1. This repeated failure to comply with Court-ordered discovery further supports dismissal. *See Siems v. City of Minneapolis*, 560 F.3d 824, 826 (8th Cir. 2009) (dismissal affirmed where plaintiff engaged in "a persistent pattern of delay that prejudiced [defendants]"); *Martin*, 251 F.3d at 695 (dismissal affirmed where Plaintiff "fail[ed] to disclose the counselors and health care professional who saw her" in response to

discovery requests); *Schoffstall v. Henderson*, 223 F.3d 818, 824 (8th Cir. 2000) (dismissal affirmed where Plaintiff's "actions required the [Defendant] to spend its time hounding her for releases the court had already ordered her to provide").

Depositions taken since the defense motion was filed have raised further concerns about Plaintiff's discovery responses. Last year, the defense served Plaintiff with an interrogatory requesting the identities of her medical providers, including mental health professionals and therapists. Hu Decl., Ex. I. A deposition of the most recent therapist on that list, Debbie Spates, revealed that Ms. Spates [redacted]. *Id.* Ex. J at 30:9–19. And Plaintiff's primary care physician testified that her records show [redacted]—who has never been identified to the defense. *Id.* Ex. F at 97:2–9. In light of Plaintiff's claims that she recently began experiencing "flashbacks" to purported childhood abuse, testimony and medical records from Plaintiff's recent therapists constitute critical evidence, which Plaintiff appears to be withholding from the defense.

Just as concerning, Plaintiff's own opposition filing confirms that she is in possession of heretofore unproduced medical records, further demonstrating that she has flouted her discovery obligations. Exhibit C to Plaintiff's Declaration (Dkt. No. 119-3, at 3-5) contains relevant medical records from Plaintiff's primary care doctor that were in Plaintiff's possession but were *never* previously produced to the defense, notwithstanding the fact that these were squarely covered by Defendant's discovery request. When Defendant inquired about the source of these previously unproduced records and requested that Plaintiff confirm there were no further unproduced records, Plaintiff's counsel confirmed that he never received them from the medical provider but refused to provide any further information; instead, he inexplicably accused Defendant of "not disclos[ing]" these records to Plaintiff (though they were never previously produced to Defendant)

and demanding that defense counsel sign an "affidavit" attesting that they did not "tamper[] with" the records. Hu Decl., Ex. W at 1–2. That, of course, makes no sense: these were records in *Plaintiff's* possession that were only provided to the defense in the form of Plaintiff's opposition filing.

### C. **<u>Plaintiff's Opposition Contains False and Misleading Statements and Is Part of a Pattern of Deceit Relying on Self-Proclaimed Medical Excuses to Justify Evading Her Discovery Obligations.</u>**

Plaintiff's opposition continues a "pattern of deceit" and "abuse [of] the judicial process," *Martin*, 251 F.3d at 694, that separately warrants dismissal. Plaintiff has repeatedly raised various medical issues as justification for her conduct, but the actual evidence shows that Plaintiff has misrepresented the facts around her claimed medical issues both to the defense and to the Court.

As set forth in Defendant's Motion, Mot. 2, Plaintiff's deceptive conduct based on purported medical excuses stretches back to June 12, 2026, when she sought an extension from the Court on the grounds that she was experiencing complications from her elective ankle surgery. Dkt. No. 69 at 1. But medical records produced since Plaintiff's June 12 filing show that just a few days earlier, Plaintiff had told her physician that [redacted]. Dkt. No. 113-3 at PR0000910. When Plaintiff did not wish to answer written discovery, she claimed that she was experiencing "post-surgery complications" that apparently prevented her from responding in writing, Dkt. No. 113-4 at 7—then posted voluminously on social media, in writing, nearly every day for the next month. Dkt. No. 111-5 at 87–132. As detailed above in Section II.A, Plaintiff now claims that (1) her doctor concluded she was too sick to show up for her IME in Hawaii, when in fact [redacted]; and (2) her orthopedist concluded she is unable to fly to St. Louis for her rescheduled IME, when in fact the medical record shows only that she is supposed to limit any

repetitive walking and standing. These are not the actions of a plaintiff who intends to litigate her case in good faith.

Plaintiff's opposition and her accompanying declaration contain similar false and misleading statements about Plaintiff's claimed PTSD diagnosis, which Plaintiff appears to rely on as a catch-all excuse for her litigation misconduct. For example, Plaintiff states in her declaration that "in 2021 a clinician (JoMarie Tyrrell, LMFT) diagnosed me with PTSD resulting from the sexual abuse." Dkt. No. 119-1 ¶ 39. That statement is false. Ms. Tyrrell testified in a deposition held *before* Plaintiff's filing [redacted]. Hu Decl., Ex. K at 125:16–22 ("[redacted]"). Equally misleading is Plaintiff's declaration that Dr. Steven Tee "noted PTSD in 2021 from Childhood Trauma." Dkt. No. 119-1 ¶ 40. As Dr. Tee testified three weeks ago, [redacted]. *See* Hu Decl., Ex. L at 45:10–11 ("[redacted]); *see id.* at 48:9–14. His notes merely described [redacted]. *See id.* at 30:4–10, 45:8–9, 48:9–14.

The same is true of Plaintiff's declaration that her provider "said, on March 16, 2026 that travel to St. Louis, the place where the abuse took place, can trigger my PTSD symptoms." Dkt. No. 119-1 ¶ 46. The record she cites for that proposition states that [redacted], as Plaintiff misleadingly suggests. Dkt. No. 119-4. In short, *none* of these three providers [redacted], much less found that travel to St. Louis—where Plaintiff chose to file suit—[redacted].[1]

[1] Plaintiff's declaration that the defense did not disclose a tweet in which she claimed to have "some flu," Dkt. No. 119-1 ¶ 54; Opp. 7, is likewise incorrect. That tweet is contained at page 5

Nor are these the only examples of Plaintiff's lack of candor with the Court. When Plaintiff moved to narrow the scope of the defense's IME, she represented to the Court that the only condition at issue was PTSD. Dkt. No. 92-1 at 1. Unbeknownst to the Court or the defense at the time, and just two days later, Plaintiff [redacted]. Dkt. No. 97 at 2. Defense counsel did not learn of this development until *after* briefing had been completed on Plaintiff's motion. Hu Decl. ¶ 5.

Plaintiff's persistent lack of candor with the Court provides an independent ground for dismissal. *See, e.g.*, *Deering*, 115 F.4th at 926 (affirming dismissal because of plaintiff's "deception").

**D. <u>The Court Should Reject Plaintiff's Attempts to Distract from Her Misconduct with Irrelevant Complaints.</u>**

Rather than attempt to defend or correct her own numerous deficiencies, Plaintiff raises a series of irrelevant and tangential discovery issues. Plaintiff does not even attempt to explain how any of these issues bears in any way on the defense motion to dismiss (and they don't). Nevertheless, to ensure the accuracy of the record, the defense responds as follows.

*September 10 filing.* Plaintiff continues to mischaracterize the record. The filing contained [redacted]. Dkt. No. 97 at 2. Plaintiff did not designate her IME report confidential when it was served—she made that designation *after* the September 10 filing, at which point the defense promptly advised the Court. *See* Dkt. No. 101 at 1. The Court then asked Plaintiff to address the basis for the sealing request. Dkt. No. 102. Plaintiff's untimely response, Dkt. No. 103, did not directly address sealing, and so the filing was never sealed. *See*

---

of Exhibit E to the Kravis Declaration in support of the defense's motion. Dkt. No. 111-5 at 7 (ECF numbering).

Dkt. No. 104. There is no "unlawful," Opp. 3, conduct here.

*Recent provider deposition.* Last week, the defense took the deposition of a therapist who treated Plaintiff during the period when she claims to have experienced "flashbacks" to her childhood. The deposition was scheduled over two half-days at the request of the therapist, to accommodate her health issues. *See* Hu Decl., Ex. M, Ex. N. During the deposition, the defense offered to postpone if the therapist was feeling unwell—but the therapist declined. Hu Decl., Ex. J, Vol. 2 at 165:10–15. The other purportedly "aggressive, unduly burdensome discovery tactics," Opp. 8, cited in Plaintiff's opposition are nothing of the sort. Plaintiff has put her mental health squarely at issue in this litigation and the defense is entitled to discovery on this topic. If Plaintiff truly believed that any discovery request on this or any other topic was unduly burdensome, she could have asked to meet and confer and then sought a protective order. Instead, her strategy has been to provide evasive, misleading, and incomplete discovery responses via letters signed by counsel.

*August 2021 session.* Mr. Altman's mental health is not at issue in this litigation. Nevertheless, the defense agreed to allow Plaintiff's counsel to question Mr. Altman at his deposition about a particular therapy session from August 2021 referenced in a text message. As Mr. Altman testified at his deposition, the "[redacted]. Hu Decl., Ex. O at 292:17–21. [redacted]. *Id.* at 293:3–20. Mr. Altman did not (as Plaintiff suggests) experience "sexual assault memories," nor did he testify that "he did not visit" this therapist "in a medical capacity, but rather in a more social manner," Opp. 8—he said the opposite. Hu Decl., Ex. O at 202:1–4 ("[redacted]

[redacted]”). Plaintiff has been aware of the August 2021 text message and therapy session for almost a year; in fact, Plaintiff’s prior counsel raised them early in discovery. Hu Decl. ¶ 26; *id.* Ex. P. When prior counsel asked about records of this session, defense counsel asked the therapist, who reported that his practice was to keep session notes for three years. Hu Decl. ¶ 26.

*Subpoenas on educational institutions.* Plaintiff’s purported expert, Dr. Darsi Beauchamp, does not appear to be a licensed practicing psychologist. She instead has a three-year training permit that allows her to practice under the supervision of a licensed practicing psychologist. Hu Decl., Ex. Q, Ex. R. Her LinkedIn pages, *id.* Ex. S, Ex. T, Ex. U, include descriptions of her academic credentials that are inconsistent with her produced CV, *id.* Ex. V—which claims, among other credentials, that Dr. Beauchamp has [redacted]. *Id.* After noticing these discrepancies, the defense prepared subpoenas to the educational institutions listed on the LinkedIn page. *Id.* ¶ 8. (After she became aware of the subpoenas, Dr. Beauchamp appears to have revised her LinkedIn profile, removing two of her claimed doctoral degrees, including her purported Ph.D. from University of California, Irvine.) *Id.* ¶¶ 9, 32; *id.* Ex. S, Ex. T, Ex. U. Defense counsel inadvertently failed to send copies of the subpoenas to Plaintiff’s counsel. *Id.* ¶ 8. When Plaintiff’s counsel noted the error, the defense promptly withdrew the subpoenas and issued new subpoenas with copies to Plaintiff’s counsel. *Id.* ¶¶ 9–10.

## III. <u>CONCLUSION</u>

Plaintiff’s repeated refusal to participate in discovery—including her failure to attend a long-scheduled IME and her failure to complete discovery responses that the Court ordered her to finish over a month ago—warrants dismissal under Federal Rules of Civil Procedure 37(b)(2) and 41(b).

DATED: September 30, 2026

MUNGER, TOLLES & OLSON LLP

By: *\/s/ Hailyn J. Chen*

HAILYN J. CHEN #237436(CA) (*pro hac vice*)
hailyn.chen@mto.com
ADEEL MOHAMMADI #343137(CA) (*pro hac vice*)
adeel.mohammadi@mto.com
CORDELL A. BROWN #356447(CA) (*pro hac vice*)
cordell.brown@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

XIAONAN APRIL HU #1684593(DC) (*pro hac vice*)
april.hu@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW., Suite 500E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

DANE P. SHIKMAN #313656(CA) (*pro hac vice*)
dane.shikman@mto.com
MILES W. UNTERREINER #347959(CA) (*pro hac vice*)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

DATED: September 30, 2026 HEPLER BROOM LLC

By: */s/ Thomas J. Magee*

THOMAS J. MAGEE #32871(MO)
thomas.magee@heplerbroom.com
HEPLER BROOM LLC
701 Market Street
Suite 1400
St. Louis, MO 63101
Telephone: (314) 480-4212

DATED: September 30, 2026 LIU SHUR KRAVIS LLP

By: */s/ Jonathan I. Kravis*

JONATHAN I. KRAVIS #973780(DC) (*pro hac vice*)
jonathan.kravis@lskllp.com
LIU SHUR KRAVIS LLP
607 14th Street N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 30, 2026, the foregoing document was served electronically via ECF on counsel for Plaintiff Ann Altman.

/s/ *Hailyn J. Chen*