**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANN ALTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:25-cv-00017 |
| | ) | |
| SAMUEL ALTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF DR. JAMES I. HUDSON, M.D., SC.D**

I, James I. Hudson, M.D., Sc.D., declare as follows:

1. I am a board-certified psychiatrist with more than four decades of clinical and academic experience. My experience, publication history, and education are set forth in my prior declaration submitted in support of Defendant's Opposition to Plaintiff's Motion for Protective Order, Dkt. No. 94-4.

2. I flew to Maui, Hawaii to conduct an in-person independent medical examination of Plaintiff on September 16, 2026. The examination was supposed to start at 9:00 am local time. Plaintiff did not show for the examination.

3. I understand that since failing to appear for her in-person examination, Plaintiff has raised a number of new objections to the exam and has expressed concern that I have concluded—"without an examination" that she is dishonest. Because I have yet to examine Plaintiff, I have made no such conclusions and my prior declaration did not set forth any conclusions with respect to Plaintiff. The portion of my prior declaration that Plaintiff cites in her affidavit set forth my areas of study and experience, which include scientific publications addressing the scientific validity of repressed and recovered memories. I note that these

publications were listed in my CV, which I understand was provided to Plaintiff and her counsel on July 31, 2026. To be clear, my professional opinions regarding the lack of scientific validity of the theory of repressed and recovered memories do not relate to whether Plaintiff is honest or not. I have formed no opinions regarding Plaintiff's honesty.

4. I also understand that as part of these objections, Plaintiff has requested that her examination take place remotely.

5. My opinion, based on decades of experience and performing dozens of independent medical examinations, is that an in-person forensic psychiatric interview of the Plaintiff is clearly preferable to a remote interview performed via platforms such as Zoom or Microsoft Teams. Peer-reviewed scientific publications have noted that remote forensic evaluations pose a range of problems and limitations, including the examiner's lack of control over the test environment; loss of important behavioral observations that could be obtained by observing the interviewee face-to-face; potential compromises of confidentiality; and the risk of technical difficulties.[1] A remote examination compromises an examiner's ability to see the interviewee's nonverbal behavior (e.g., hands or leg shaking) and to interpret auditory cues (e.g. distinguishing a quivering voice from a normal variation in voice), as well as to rely on other cues that may inform the examiner's assessment of the interviewee.

6. In addition, an examiner evaluating an individual remotely – particularly an individual reporting a history of psychological trauma – has no ability to deal with unanticipated reactions that may arise in the course of the interview. For example, if an interviewee is recounting a traumatic experience, becomes agitated, and engages in self-harming behavior, the

[1] Goldenson, J. & Josefowitz, N. (2021). Remote Forensic Psychological Assessment in Civil Cases: Considerations for Experts Assessing Harms from Early Life Abuse. *Psychological Injury and Law*, 14(2), 89-103, available at https://doi.org/10.1007/s12207-021-09404-2.

examiner, located remotely, is powerless to intervene and help with the situation. Thus, the remote evaluation not only results in a lower quality of information gained, but also places a possibly fragile interviewee in potential danger. Collectively, the scientific literature on psychiatric examinations acknowledges that there are real limitations to remote evaluations, both in terms of the quality of information gained and in compromises to the comfort and safety of the interviewee. A remote examination would substantially impair my ability to conduct a proper examination of Plaintiff and would not be appropriate.

7. In over twenty-five years of performing independent medical examinations of individuals who have reported severe traumatic events, including childhood sexual abuse, and who have reported symptoms of posttraumatic stress disorder (PTSD), I have never been denied the opportunity to perform an in-person examination.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 30, 2026, at Concord, Massachusetts.

James I. Hudson, M.D., Sc.D.