**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANN ALTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:25-cv-00017-ZMB |
| | ) | |
| SAMUEL ALTMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**NOTICE REGARDING DEFENDANT'S MOTION TO DISMISS**

I. INTRODUCTION ....... 1
II. FACTUAL BACKGROUND ....... 2
A. Defense Motion to Dismiss and October 2 Hearing ....... 2
B. Plaintiff's Refusal to Attend IME ....... 4
C. Plaintiff's Refusal to Provide Discovery and Complete List of Medical Providers ....... 6
III. ARGUMENT ....... 7
IV. CONCLUSION ....... 10

## I. INTRODUCTION

At the October 2, 2026 status conference, the Court ordered Plaintiff Ann Altman to attend an in-person IME in Boston or St. Louis by October 16, and warned her "that her failure to attend the IME as ordered will result in dismissal of this case with prejudice, and that any further discovery violations likely will lead to the same result." Dkt. No. 132. Shortly after the hearing, Plaintiff's counsel filed a notice with the Court stating that Plaintiff was aware of this order. Dkt. No. 129.

Plaintiff did not obey the Court's order. Plaintiff made no effort to appear for an in-person IME in Boston or St. Louis on or before October 16, 2026. And her attorney has filed a motion to withdraw, citing (among other reasons) difficulties securing compliance with the October 16 deadline. Plaintiff also did not comply with the Court's order to disclose all medical providers by October 9, instead interposing an untimely and meritless objection. Plaintiff's persistent refusal to comply with her discovery obligations in the face of multiple Court orders warrants dismissal under Federal Rules of Civil Procedure 37(b)(2)(A) and 41(b).

On the morning of October 16—the deadline for Plaintiff's IME—a new lawyer filed a *pro hac vice* application and a motion for an extension of time to request an IME by a "neutral, qualified medical expert" in Maui. Dkt. Nos. 147, 148. The Court should not countenance this effort to further delay the case. If Plaintiff wanted to request an IME performed by a neutral expert, she should have said so months ago—before the defense expert traveled to Maui in September and before Plaintiff disclosed a report based on an IME performed by an expert of her own choosing. At a minimum, Plaintiff should have raised this issue with the Court at the October 2 hearing. Instead, Plaintiff's counsel repeatedly represented to the Court that Plaintiff was not contesting the defense IME. This motion continues Plaintiff's pattern of ignoring Court deadlines and then requesting a windfall based on her non-compliance. And it highlights the concern raised by the

Court at the October 2 hearing—using the appearance of new counsel to create delay and extend deadlines.

If the Court grants the motion to dismiss, then the defense requests that the Court dismiss Defendant's counterclaims without prejudice. The defense further requests seven days from the order of dismissal to file a motion addressing the documents that have previously been filed under seal in this case.

Finally, in light of Plaintiff's recent conduct on social media, her track record of disobeying Court orders, and the motion to withdraw filed by her counsel, the defense requests via a separate motion filed today that the Court issue an order modifying the protective order to ensure that Plaintiff does not misuse any confidential or highly confidential discovery if the case is dismissed.

## II. FACTUAL BACKGROUND

### A. Defense Motion to Dismiss and October 2 Hearing

Plaintiff's repeated and willful discovery failures are described in detail in the defense motion to dismiss and reply. *See* Dkt. Nos. 110, 113-1, 126, 128-1. In brief, Plaintiff did not appear for an in-person IME scheduled for September 16 in Hawaii. *See* Dkt. No. 113-1 at 5–7. She also refused to participate in discovery for extended periods of time, causing repeated delays to the case schedule; failed to comply with written discovery requests, including an interrogatory served in September 2025 asking her to identify her health care providers;[1] and refused to attend a makeup IME offered by the defense, instead offering a shifting series of deceptive and bad-faith excuses. *See id.* at 2–4, 7–8; Dkt. No. 128-1 at 3–8, 10–12.

[1] The interrogatory was also the subject of a joint discovery motion filed the same day as the motion to dismiss. *See* Dkt. No. 133 at 1–2.

On October 2, 2026, the Court held a status hearing to address the motion to dismiss and the pending joint discovery motions. *See* Dkt. No. 132. At that hearing, the Court found that Plaintiff had "engaged in a pattern of intentional delay." Dkt. No. 137 (Tr. of Oct. 2, 2026 Hearing) at 66:20–21. The Court did not find Plaintiff's excuses for skipping the IME "credible." *Id.* at 66:22. With respect to the request for the full list of health care providers, the Court found that the defense is "entitled to th[is] information" because Plaintiff's mental health "is at issue in this case." *Id.* at 72:1–2. The Court instructed Plaintiff's counsel to "find a way to get it done" and "don't drag your feet about certifying that—she should know." *Id.* at 72:3–4. Plaintiff's counsel responded, "I will have to disclose that. We will disclose that." *Id.* at 72:10–11.

At the conclusion of the hearing, the Court took the motion to dismiss under submission, ordering Plaintiff (1) to provide the full list of health care providers by October 9, (2) to address all other outstanding discovery by October 16, and (3) to attend an in-person IME in Boston or St. Louis by October 16. Dkt. No. 137 at 66:9–68:10, 90:21–25. The Court further ordered Plaintiff's counsel to file a notice stating that Plaintiff had been advised that the case would be dismissed if she did not attend the IME. *Id.* at 74:1–75:4. The Court warned, "If any of these deadlines that are being imposed in this [order] are violated, the case will be dismissed, and there will not be a whole lot more fanfare to it." *Id.* at 73:17–20. The minute order entered after the hearing stated, "The Court warned Annie's counsel, and he agreed, that her failure to attend the IME as ordered will result in dismissal of this case with prejudice, and that any further discovery violations likely will lead to the same result." Dkt. No. 132.

On October 5, counsel filed the notice required by the Court, stating that "plaintiff has been advised that her failure to attend the re-schedule defense IME on or before October 16, 2026, will result in dismissal with prejudice of her case." Dkt. No. 129. And on October 7, the Court entered

a scheduling order stating: "The Court orders that, no later than **October 16, 2026**, Plaintiff must attend an in-person IME in St. Louis or Boston. **Her failure to do so will result in the dismissal of this case with prejudice**." Dkt. No. 135 at 2 (emphasis in original).

### B. Plaintiff's Refusal to Attend IME

On Friday, October 2, defense counsel emailed Plaintiff's counsel with five dates when the defense expert would be available to administer an IME in Boston—October 7, 8, 9, 15, and 16. Declaration of Jonathan Kravis ("Kravis Decl."), Ex. 1. At Plaintiff's counsel's request, the defense offered to hold the IME in St. Louis on four of those dates (all but October 15). *Id.* The defense made arrangements for conference rooms and for a female nurse to attend the examination at either location. Kravis Decl. ¶ 3.

On Monday, October 5, during a meet-and-confer regarding Plaintiff's renewed request to extend the discovery deadline, defense counsel asked that Plaintiff pick a date and location for the IME, a request that defense counsel repeated by email several times over the course of the week. Kravis Decl. ¶ 2; *id.* Ex. 2. Every time, Plaintiff's counsel offered vague and non-committal responses. *Id.* Ex. 2. On October 5, Plaintiff's counsel advised that "it is unlikely plaintiff will be able to attend an IME on Oct 7 or 8th. Her non-attendance on those dates has not been explicitly confirmed and all rights are otherwise reserved." *Id.* at 7. The next day, Plaintiff's counsel stated, "The 7th and 8th—and likely the 9th, can be ruled out. I will keep you informed as best as I can." *Id.* at 6. Later that day, in response to a request for a firm commitment by 5:00 p.m. so that the defense expert could book travel, Plaintiff's counsel responded, "[T]he only mandate imposed by the proposed Order is that the IME take place in St. Louis or Boston o[n] or before Oct 16. I will provide you with reasonable notice of the dates she selects—but I cannot at the moment guarantee it will be as per your deadline of today." *Id.* at 4. On Wednesday, October 7, in response to another

defense request for a firm date, Plaintiff's counsel responded, "I have not confirmed explicitly that Annie cannot appear on the 9th—but have no reason to believe she will." *Id.* at 3.

On Friday, October 9, in response to another email from defense counsel requesting a firm commitment on date and location, Plaintiff's counsel responded with a lengthy email that concluded, "I can only confirm that I will speak to my client later today—and that she has absolutely expressed *no intention* to attend the scheduled IME." Kravis Decl., Ex. 2 at 1 (emphasis added). Later that day, Plaintiff's counsel sent another email stating that Plaintiff "*has* expressed a marked **inability** to attend the IME, from which it can be reasonably inferred she cannot form an intent to do so." *Id.* Ex. 3 (emphases in original).

On Monday, October 12, Plaintiff's counsel reported that "[a]ttempts to reach" Plaintiff "and her personal counsel regarding the IME" had been "unsuccessful." Kravis Decl., Ex. 4. Plaintiff's counsel stated that Plaintiff's "position regarding the IME remained the same—she cannot travel." *Id.*

The next day, Plaintiff's counsel filed a motion to withdraw. Dkt. No. 143. In a section titled "Deterioration of Attorney Client Relationship," the motion stated that "circumstances have arisen beyond the undersigned's control that have materially impeded undersigned counsel's efforts to secure timely compliance with the October 16 deadline and continue the representation effectively." *Id.* at 2–3.

Neither Plaintiff nor her counsel ever selected one of the offered dates for an IME in Boston or St. Louis, and so the Court-ordered IME never occurred. Kravis Decl. ¶ 5.

Once again, Plaintiff's refusal or inability to engage with discovery has not stopped her from posting voluminously on social media. Since Friday, October 2, when the Court ordered her to attend the IME, Plaintiff has posted repetitively to her various social media accounts, including

links to her lawyer's YouTube post of the first 42 minutes of her deposition video. Declaration of Hailyn J. Chen in Support of Motion to Modify Protective Order ("Chen Decl."), Exs. 5–11, 13, 15, 17.[2] Plaintiff also herself posted the video to her own YouTube, X, Instagram, TikTok, and Bluesky accounts. *Id.* Exs. 5–9. Plaintiff re-posted the video on X as recently as October 9, 2026. *Id.* Ex. 7 at 2. Across those various platforms, that video has now been viewed over 2 million times and generated thousands of comments and re-posts. Chen Decl. ¶¶ 9–12, Exs. 5–9. The deposition video has also been reposted to Reddit, where it has garnered thousands of comments. *Id.* Ex. 16. Plaintiff has also posted content disparaging defense counsel and the Court to her various social media accounts. *See* Motion to Modify Protective Order at 4–7; Chen Decl. ¶ 4 & Exs. 13–14, 17.

### C. Plaintiff's Refusal to Provide Discovery and Complete List of Medical Providers

At 11:00 p.m. Eastern time on Friday, October 9, Plaintiff's counsel sent defense counsel a verified response disclosing no new medical providers. Kravis Decl., Ex. 5. The response stated that Plaintiff had not been treated by any other provider "prior to litigation," and that Plaintiff "reserve[s] all rights to treat with an undisclosed private provider." *Id.* at 3. The defense understands this response to mean that Plaintiff is refusing to disclose the identity of her current medical providers, a position that she did not raise with the Court in the joint submission or at the October 2 hearing.

In addition to her baseless refusal to identify her current mental health provider, Plaintiff appears not to have provided the defense with a complete list of her prior providers. At a recent

[2] Plaintiff's recent social media posts are discussed in more detail in Defendant's Motion to Modify Protective Order and the Declaration of Hailyn Chen in support thereof, which will also be filed today.

deposition, Plaintiff's counsel asked a witness if it would surprise her to learn that Plaintiff has seen "probably over a dozen" mental health providers over the years, Kravis Decl., Ex. 6 at 89:23–90:14—a far greater number than she has disclosed, *see id.* Exs. 5, 8. A provider seen by Plaintiff between 2019 and 2021 testified that she referred Plaintiff to a psychiatrist and that she believes Plaintiff did see a psychiatrist, *see id.* Ex. 7 at 159:21–160:7, yet there is no psychiatrist from this time period in Plaintiff's disclosures, *id.* Ex. 8 at 1–4. And the disclosed mental health provider who treated Plaintiff most recently testified that she stopped treating Plaintiff in June 2023, six months before this lawsuit was filed. Dkt. No. 128-8 at 30:15–19. This means that, unless Plaintiff went six months without mental health treatment, she was seeing another mental health provider prior to the filing of this lawsuit who has not been disclosed to the defense.

Finally, as of this filing, Plaintiff still has not fulfilled her outstanding discovery obligations. On Monday, October 5, the defense sent Plaintiff's counsel a letter summarizing pending defense discovery requests. Kravis Decl., Exs. 9, 10. Notwithstanding the Court order to address all outstanding discovery by October 16, Plaintiff has not produced the requested documents, including responsive emails, texts, and messaging app messages. Kravis Decl. ¶ 15.

## III. ARGUMENT

The defense motion to dismiss should be granted. Plaintiff's conduct since the October 2 hearing continues a pattern of willful discovery delay and obstruction. Plaintiff failed to comply with the Court's order to attend an in-person IME by October 16. And Plaintiff has also not complied with the Court's order to provide a full list of her medical providers by October 9 and to address all other outstanding discovery requests by October 16.

Plaintiff's excuses for her refusal to comply with the Court-ordered discovery deadlines are baseless. The Court has already found Plaintiff's claim that she cannot travel to be not credible. Dkt. No. 137 at 66:22. And Plaintiff's contention that she has the "right[] to treat with an

undisclosed private provider" and is "ready to seek protective measures" (Kravis Decl., Ex. 5 at 3) is untimely. Indeed, this is precisely what the Court told Plaintiff she could not do—"take matters into [her] own hands" and simply refuse to provide discovery. *See* Dkt. No. 137 at 29:6–7 ("[Y]ou cannot take matters into your own hands if you disagree with something."); *id.* at 34:14–20 ("If the case moves forward, regardless of anything that Sam or the Court or anybody else does, she is required to adhere to any obligations that she has, unless and until I tell her that she is off the hook. So if there is any obligation that she is required to submit to, she does not get to decide; you do not get to decide whether she is going to do that."); *id.* at 60:18–24 ("If you have a valid legal objection to what they are asking for, file it. Barring that, give them what they are asking for.").

If Plaintiff truly believed she had the "right[]" not to disclose her mental health provider(s) since June 2023, Kravis Decl., Ex. 5 at 3, she had every opportunity to seek relief from the Court. The parties filed a joint submission on the request for a full list of Plaintiff's medical providers—but Plaintiff's section of that filing did not ask the Court to excuse her from an obligation to disclose her current providers. Dkt. Nos. 107-1, 108. And when the medical provider request was addressed at the October 2 hearing, Plaintiff's counsel did not ask the Court to limit the request; instead, he acknowledged that "I will have to disclose" the full list of providers. Dkt. No. 137 at 72:10–11.

Plaintiff never asked the Court to narrow this discovery request because she has no basis to do so. As the Court has recognized, Plaintiff's allegations put her mental health at issue in this case, *see* Dkt. Nos. 104, 137 at 7–12, and therefore the records and deposition testimony of her health care providers are directly relevant. Contrary to Plaintiff's contention, the defense has not engaged in "litigation abuse" or "excessive behavior." Kravis Decl., Ex. 5 at 3. Rather, the defense sought reasonable and proportionate discovery based on authorizations signed by Plaintiff

herself. If Plaintiff thought any particular discovery request was excessive, she could have sought relief from the Court, rather than simply refusing to comply. And while Plaintiff's compliance with this interrogatory will become moot if the Court grants the defense motion to dismiss, it bears noting that recent discovery undermines Plaintiff's claim that she has disclosed all pre-litigation mental health providers, as discussed above.

With respect to the other outstanding discovery requests, Plaintiff has not even attempted to justify her refusal to complete her discovery production by the Court-ordered deadline. As of this filing, Plaintiff still has not produced all responsive emails, texts, and messaging app messages; relevant communications with journalists; relevant diary or journal entries; or audio recordings of conversations with family members. *See* Kravis Decl. ¶¶ 14–15.

Finally, the Court should not countenance Plaintiff's most recent delay tactic—a motion filed by new counsel requesting a 28-day extension to litigate the IME. Dkt. No. 148. If Plaintiff wanted to ask the Court for an IME performed by a "neutral, qualified medical expert" (*id.* at 1–2) she should have done so months ago. Instead, Plaintiff chose a different strategy. She opted to consent to an IME performed by the defense expert, while (unsuccessfully) litigating the scope of the defense expert's examination. *See* Dkt. No. 104. At the same time, Plaintiff disclosed an expert of her own choosing who prepared a report based on an IME performed by that expert. Dkt. No. 97. All this happened on a schedule that was compressed because Plaintiff blew the original deadline to disclose her expert and then further compressed because Plaintiff did not appear for the scheduled defense IME. Dkt. No. 113-1 at 2–8; Dkt. No. 137 at 10:7–11:14, 14:3–15:24.

Apparently unhappy with that strategic choice, Plaintiff decided once again to take matters into her own hands by disregarding a clear Court order to attend an in-person IME performed by the defense expert in St. Louis or Boston by October 16. This is not the first time that Plaintiff has

disobeyed a Court order and then sought a windfall based on her non-compliance. *See, e,g.*, Dkt. No. 119 at 9–10 (Plaintiff's opposition to motion to dismiss for failure to attend IME requesting a remote IME performed by a female examiner). Plaintiff's conduct also illustrates the concern raised by the Court at the October 2 hearing: "[W]e can't use rotating attorneys . . . to delay a case," otherwise "any time somebody wanted an extension, they would fire their attorney and get a new attorney." Dkt. No. 137 at 11:11–14.

## IV. **CONCLUSION**

Defendant requests that the Court dismiss this case pursuant to Federal Rules of Civil Procedure 37(b)(2) or 41(b). If the Court grants the motion to dismiss, then the defense requests that the Court dismiss its counterclaims without prejudice. The defense further requests seven days from entry of the dismissal order to address the status of sealed filings. And the defense requests modification of the protective order, as set forth in a separate motion.

DATED: October 16, 2026

HEPLER BROOM LLC

By: *ls/ Thomas J. Magee*

THOMAS J. MAGEE #32871(MO)
thomas.magee@heplerbroom.com
HEPLER BROOM LLC
701 Market Street
Suite 1400
St. Louis, MO 63101
Telephone: (314) 480-4212

DATED: October 16, 2026

LIU SHUR KRAVIS LLP

By: */s/ Jonathan I. Kravis*

JONATHAN I. KRAVIS #973780(DC) (*pro hac vice*)
jonathan.kravis@lskllp.com
LIU SHUR KRAVIS LLP
607 14th Street N.W., Suite 625
Washington, D.C. 20005
Telephone: (202) 240-7100

DATED: October 16, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Hailyn J. Chen*

HAILYN J. CHEN #237436(CA) (*pro hac vice*)
hailyn.chen@mto.com
ADEEL MOHAMMADI #343137(CA) (*pro hac vice*)
adeel.mohammadi@mto.com
CORDELL A. BROWN #356447(CA) (*pro hac vice*)
cordell.brown@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

XIAONAN APRIL HU #1684593(DC) (*pro hac vice*)
april.hu@mto.com
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Ave. NW., Suite 500E
Washington, D.C. 20001-5369
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

DANE P. SHIKMAN #313656(CA) (*pro hac vice*)
dane.shikman@mto.com
MILES W. UNTERREINER #347959(CA) (*pro hac vice*)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission St., 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 16, 2026, the foregoing document was served electronically via ECF on counsel for Plaintiff Ann Altman.

/s/ *Jonathan I. Kravis*